# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH JACKSON, *et al.*,<br><br>Defendants. | Case No. _____ |

## DECLARATION OF GEORGE E. MOOSE

I, George E. Moose, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1.      I am the Acting President and Chief Executive Officer of the United States Institute of Peace (USIP).

2.      USIP is an independent nonprofit corporation established by Congress in 1984. USIP works with the United States Government and other partners around the world to help resolve and prevent violent conflicts.  USIP owns its headquarters building in Washington, D.C. and all of the property located within the building.  USIP also has field offices around the world.

3.      I served as a U.S. Ambassador and Assistant Secretary of State prior to serving on the USIP Board of Directors from 2007 to 2023, first as a member and then as Chair of the Board. In April 2024, the USIP Board of Directors appointed me as the Acting President and Chief Executive Officer of USIP.

4.      On the evening of February 19, 2025, I became aware that President Trump signed an Executive Order intending to effectively eliminate USIP.

5.      On February 24, 2025, Mike Bruhn, Executive Vice President and Chief Operating Officer of USIP, Allison Blotzer, Chief Financial Officer of USIP, three outside legal counsel for USIP, George Foote, Whitney Rolig, and Sophia Lin, and I met virtually with three members of the Department of Government Efficiency (DOGE) team: James Burnham, Jacob Altik, and Nate Cavanaugh.   It is my understanding that Mr. Burnham and Mr. Altik are lawyers, while Mr. Cavanaugh works on technology, including computer systems, and has been named the lead for DOGE's efforts with respect to USIP.

6.      During this meeting, I presented the DOGE team with a description of USIP, its history, and its work.  Mr. Foote then described the legal status of USIP as an independent nonprofit organization and explained other legal background, including that USIP employees are not federal employees, and that the USIP statute contains language for how and when Board members may be removed.

7.      Afterward, the DOGE team presented that they believed USIP's minimum statutory functions pursuant to the February 19 Executive Order were as follows: a Board of Directors and a president, reports to Congress and the Executive branch, and expenses incident to the Board of Directors.  However, Mr. Burnham said that they understood our position and would "regroup."

8.      In cooperation with the February 19 Executive Order, I directed USIP to submit a letter to the Office of Management and Budget on March 5, 2025, which reiterated that USIP is an independent nonprofit organization, not a federal agency.  Att. A, OMB Letter.

9.      On March 8, 2025, I received information that DOGE staff were undertaking reconnaissance efforts with respect to USIP's security operations.  It is my understanding that

DOGE was attempting to determine who USIP's security contractor was, and it is my belief that they aimed to determine if it was an entity that could be ordered or coerced into letting DOGE access the USIP building.

10.    On March 14, 2025, I became aware that various members of the USIP Board of Directors had received emails from the White House stating that they had been terminated from their positions as Board members.

11.    That same day, it is my understanding that staff members of DOGE, including Mr. Altik and Mr. Cavanaugh, attempted to gain entry to the USIP building.  I had previously directed USIP's security staff to not permit DOGE personnel entry to the building without a court order. Following this protocol, USIP security staff denied DOGE staff entry.

12.    Later, it is my understanding that these same people returned to the USIP building with FBI agents.  USIP security staff again denied them entry.

13.    I learned that Mr. Altik and Mr. Cavanaugh then presented Mr. Foote, who had arrived to the building, with a "resolution" purportedly signed by USIP's *ex officio* Board members – Vice Adm. Peter A. Garvin, Marco Rubio, and Pete Hegseth – to remove me as President of USIP and install Kenneth Jackson in my place.  Att. B, *Ex Officio* Resolution.

14.    On March 16, 2025, I understand that two FBI agents visited a senior USIP security official at his home unannounced for the purposes of gaining information on how to gain entrance to the USIP building, potentially through contacting the management of the Institute's security contractor Inter-Con.

15.    It is also my understanding that on the same day, the Chief of the Criminal Division of the U.S. Attorney's Office for the District of Columbia, Johnathan Hornok, and two FBI special agents called USIP's outside counsel, Mr. Foote, stating that they had suspicion of criminal

3

behavior at USIP, and that representatives of Secretaries Rubio and Hegseth required access to USIP's headquarters to inspect USIP's records. Mr. Foote advised that in accordance with the statute, USIP would honor a formal request made for a "proper purpose" at a "reasonable time." Mr. Hornok stated that he would criminally investigate USIP and anyone who obstructed their access to USIP's computer systems.

16.    On March 17, 2025, I was at the USIP headquarters building when four Inter-Con employees entered the USIP building without permission. Not long after, I spoke with USIP's Chief of Security, Colin O'Brien, and approved a building lockdown. It is my understanding that after some time, these employees agreed to leave.

17.    At or around 5:30pm, I was informed that DC police cars had arrived to USIP. Not long after, I received a call from Mr. O'Brien informing me that the DC police had let DOGE personnel and Mr. Jackson into the building. I directed Mr. O'Brien to initiate a full building shutdown and remained in my office. I was informed that shortly thereafter, DC police instructed Mr. O'Brien, along with legal counsel, George Foote and Sophia Lin, to leave the building.

18.    Sometime after, DC police and DOGE arrived at my office. I, along with the Institute's Chief of Staff Anna Dean, were then escorted out of the building.


I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.

Dated this 18th of March, 2025, and executed in Washington, D.C.

Signed: /s/ George E. Moose

Print Name: George E. Moose

# Attachment A



**UNITED STATES INSTITUTE OF PEACE**

March 5th, 2025

The Honorable Russell T. Vought
Director
Office of Management and Budget
725 17th Street NW
Washington, D.C. 20503

Dear Director Vought:

In recognition of President Trump's Executive Order 14217, entitled "Commencing the Reduction of the Federal Bureaucracy," we are pleased to provide the Office of Management and Budget ("OMB") with information regarding the United States Institute of Peace ("USIP" or "the Institute") and the statutory requirements pertaining to its operations.

The Institute advances U.S. national security and seeks to make America safer, stronger and more prosperous, by reducing the risk that the United States will be drawn into costly foreign wars. We believe this mission fully aligns with the President's commitment to peacemaking, as articulated in his second inaugural address, in which he said: "We will measure our success not only by the battles we win but also by the wars that we end – and perhaps most importantly, the wars we never get into."

**Statutory Requirements**

Congress established the Institute over 40 years ago as an independent, nonprofit corporation accountable directly to Congress "to serve the people and the Government through the widest possible range of education and training, basic and applied research opportunities, and peace information services on the means to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence."[1] Although USIP is not an entity of the Executive branch and its officers and employees are not officers or employees of the Federal Government, the Institute provides this response in a spirt of cooperation and comity.

The USIP Act defines the scope of activities in which the Institute is authorized to engage in pursuit of its statutory mandate. These include, but are not limited to, trainings, research, information services, scholarship and grant programs, partnerships with Federal agencies, and publications.[2] The USIP Act states that "[t]he Board shall appoint the president of the Institute and such other

---

[1] 22 U.S.C. § 4601(b).
[2] *See id.* at §§ 4601(b), 4604.

officers as the Board determines to be necessary" to conduct the business of the Institute,[3] and it further directs that "the Board shall" delegate to those officers the power to hire staff, direct Institute programs, and accept and disburse public monies "for the efficient and proper functioning of the Institute."[4]   Therefore, the activities of the Institute are "statutorily required" as set forth in Section 2(b) of the EO.

Under the USIP Act, the Institute is not authorized to engage in regulatory or enforcement activities.  The Act further confirmed the Institute's status as an independent entity by giving it the authority of a District of Columbia nonprofit corporation and by exempting it from federal income tax as a charitable organization.[5]   The only corporate power denied to the Institute is the ability to elect dissolution, a power Congress reserved to itself.

**Accountability**

In the USIP Act, Congress established that "[t]he powers of the Institute shall be vested in [its] Board of Directors."[6]   That Board is comprised of fifteen members, with twelve appointed by the President and confirmed by the Senate, and three *ex officio* members consisting of the Secretaries of State and Defense (or designees) and the President of National Defense University (or designee).[7]   The role that both the Legislative and Executive branches play in the confirmation process, and the Executive branch's ongoing role in Board decision making through the *ex officio* members, reflect Congress's intent that the Institute remain responsive to national policy considerations in the conduct of its programs and operations.  The USIP Act further ensures that both the Board and the Institute remain accountable to the American public by requiring that the Institute rely exclusively on public funding for its programs.  This reflects congressional intent that the Institute's work be guided solely by the interests of the American people.  It also makes the Institute directly responsible to Congress for all of its work, as Congress can withhold funding if it deems that work contradictory or inconsequential to the public's interests.  This relationship constantly informs the Institute's programmatic choices.

The Institute also collaborates closely with the Executive branch with respect to its programmatic priorities. The Institute submits annually to OMB the justification for its annual appropriation request. The four priorities articulated in the Institute's FY2026 OMB submission are:

- Countering the new strategies of threatening behavior used by U.S. strategic competitors to incite conflict and undermine U.S. influence in countries of strategic importance.

- Reducing violence and addressing other factors, including transnational organized crime and climate shocks, that destabilize communities and fuel migration from Central and South America, the Caribbean, and other regions.

---

[3]  *Id.* at § 4606(a).
[4]  *Id.* at § 4606(b).
[5]  *Id.* at §§ 4603(b), 4604(a).
[6]  *Id.* at § 4605(a).
[7]  *Id.* at § 4605(b).

- Promoting democratic transitions and countering violence extremism in strategic regions, including West Africa, the Sahel, and East Africa.

- De-escalating tensions in areas of the Middle East, Europe, Africa, and the Indo-Pacific where deterrence mechanisms are underdeveloped, under stress, or breaking down.

While the USIP Act allows the Institute to submit its budget request directly to Congress, it also authorizes OMB, acting for the Executive, to comment on any and every aspect of that submission.[8] OMB's ability to communicate its views directly to Congress gives the Executive a role in the decisions that lawmakers make when considering our budget.

Finally, Congress requires the Institute to undertake annual outside audits of its books and financial records,[9] which are available for review. These obligations further ensure that the Government can remain fully and currently informed as to the Institute's stewardship of public resources.

**Responsiveness to Administration Priorities**

Since its founding, and pursuant to its congressional mandate, the Institute has collaborated closely with seven presidential administrations to advance peace for the safety and security of the American people. Through the presence on its Board of representatives of the Secretary of State and the Secretary of Defense, as well as its constant communication with a wide spectrum of Executive branch agencies, the Institute has routinely sought to ensure that its work furthers common goals. In its ongoing effort to be responsive to Administration priorities, the Institute has undertaken a number of actions:

- In response to guidance issued by the Administration, under Executive Order 14169 on "Reevaluating and Realigning United States Foreign Aid," the Institute has initiated a review of all its programs and activities to ensure they are helping to make America safer, stronger and more prosperous. This review will be conducted using the guidelines and criteria set out in OMB Budget Data Request No. 25-08. This review will be finalized in accordance with the timeline set out in the EO.
- Although, as mentioned above, USIP is not an entity of the Executive branch, and its officers and employees are not officers or employees of the Federal Government,[10] the USIP Act requires the Institute to follow certain federal policies, practices and procedures to the extent possible, including with respect to finance, personnel and security. Accordingly, the Institute has taken steps to ensure that its administrative policies, practices, and procedures are not inconsistent with those of Federal agencies.
- In view of the Administration's intent to reduce the scale and scope of its foreign affairs programs and activities, the Institute has adjusted and reduced the work it performs under contractual arrangements with the Executive branch agencies, most notably the Department of State. (The common vehicle that executive agencies of the Federal Government have

---

[8] *Id.* at § 4608(a).
[9] *See* 22 U.S.C. at § 4607(g).
[10] *Id.* at § 4606(f).

chosen to contract with USIP is the so-called "inter-agency agreement," with appropriate recognition that USIP is not itself a Federal agency.)

- In complete agreement with the Administration's focus on accountability to the American taxpayer, the Institute will continue to aggressively pursue its ongoing efforts to modernize and make more efficient all aspects of its operations.

As has been the case throughout its 40 years of existence, the Institute is committed to the efficient and responsible deployment of taxpayer funds in cooperation with Congress and the Administration.

The Institute appreciates this opportunity to respond to EO 14217, underscore its desire to align with the Administration's priorities, and clarify its relationship to the United States Government. We look forward to deploying the Institute's resources and expertise in support of the Administration's goal of making America safer, stronger, and more prosperous.

Sincerely,

George Moose
Acting President
United States Institute of Peace

Cc: USIP Board of Directors

4

# Attachment B

 **UNITED STATES INSTITUTE OF PEACE**
Making Peace Possible

## RESOLUTION OF THE BOARD OF DIRECTORS

### REMOVAL OF GEORGE E. MOOSE AS PRESIDENT AND APPOINTMENT OF KENNETH JACKSON AS ACTING PRESIDENT

WHEREAS, the United States Institute for Peace's (USIP) Board of Directors may remove the agency's president under 22 U.S.C. § 4606(a);

WHEREAS, USIP's Board of Directors may appoint the agency's president under 22 U.S.C. § 4606(a);

Be it RESOLVED that as of March 14, 2025, Mr. George E. Moose is removed from his position as USIP's president and Mr. Kenneth Jackson is designated as USIP's acting president with all the powers delegated by the Board of Directors to that role.

CERTIFIED:

Peter A. Garvin
President of the National Defense University
Member of USIP's Board of Directors

Pete B. Hegseth
U.S. Secretary of Defense
Member of USIP's Board of Directors

Marco A. Rubio
U.S. Secretary of State
Member of USIP's Board of Directors

2301 Constitution Ave NW | Washington, D.C. 20037 | Tel: (202) 457-1700 | www.usip.org