# EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *et al.*, <br><br> Defendants. | Case No. _____ |

**DECLARATION OF GEORGE FOOTE**

I, George Foote, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney at the law firm of Picard Kentz & Rowe LLP.

2. I am barred in the District of Columbia.

3. I have been outside legal counsel to the United States Institute of Peace (USIP) since 1987.

4. I have been in contact with the Department of Government Efficiency (DOGE) officials on behalf of USIP on several occasions since Executive Order 14217 was signed on February 19, 2025.

5. I participated in a virtual meeting on February 24, 2025 during which I explained that USIP is an independent nonprofit organization, not an agency under the Executive branch of the government.

6. After I learned that the DOGE team was undertaking efforts to gain more information about USIP's security operations at its headquarters building, I emailed the DOGE team to reiterate the private nonprofit nature of USIP, inform them that USIP owns the headquarters building, and explain that the building is protected by nongovernmental security officers under contract with USIP. I stated that unauthorized persons seeking to enter the USIP building will be refused by USIP's security officers unless presented with a valid warrant. I did not receive a response.

7. On March 14, 2025, I became aware that various members of the USIP Board of Directors received emails from the White House stating that they had been terminated from their positions as Board members. It is my legal opinion that these emails had no legal effect because they violated the for-cause termination clause of the USIP Act. *See* 22 U.S.C. § 4605(f).

8. It is my understanding that staff members of DOGE attempted to gain entry to the USIP building on March 14, 2025. I sent an email to James Burnham, the General Counsel of DOGE, explaining once again that USIP is an independent nonprofit organization outside of the control of the Executive branch, and that DOGE representatives will not be permitted to enter the building without approval from Acting President George Moose or a warrant. I offered to further discuss this matter with him. I also notified him of my advice to the Board members regarding the emails they received that day.

9. Instead of responding to my email, the DOGE team again arrived at the USIP headquarters building and attempted to gain entry. They presented me with a "resolution" signed by the three *ex officio* Board members purporting to remove George Moose from his position as president and install Kenneth Jackson in his place. Att. A, *Ex Officio* Resolution.

10. On Sunday, March 16, 2025, I received notice that two FBI agents, Doug Silk and Christianne Barringer, visited the private residence of USIP's security manager to inquire about USIP's security procedures. This security manager was on medical leave and told me that he was taken off guard by the unannounced visit. After the agents had left, I learned of the FBI visit and called Mr. Silk to inform him that any further inquiries should be directed to me as counsel for USIP. I told Mr. Silk that I believe the "resolution" attempting to change the president of USIP was unlawful and stated that USIP is prepared to resolve the matter in court. Mr. Silk told me that he was "hyper aware" of the issues.

11. Also on March 16, I received a call from Colin O'Brien, Chief of Security for USIP, while he was at work. He told me that he received a call from Mr. Silk who informed Mr. O'Brien that he was a subject of a federal investigation into why USIP refused to permit entry to FBI agents on Friday, March 14, 2025. Mr. O'Brien told me that he was afraid that when he returned home, he would be met by the FBI.

12. I later received a call from Jonathon Hornok, Chief of the Criminal Division of the U.S. Attorney's Office for the District of Columbia. Mr. Hornok sought access to the USIP Building for unnamed individuals and stated that he had suspicion that USIP may be engaging in criminal behavior. He called later to say that he was calling for Secretary Rubio and Secretary Hegseth in their capacity as USIP *ex officio* Board members and requested that representatives for them be permitted to inspect USIP books and records.

13. I told Mr. Hornok that USIP would gladly provide records for inspection by Secretaries Rubio and Hegseth. I asked that they provide a written request for USIP board records and in accordance with the inspection section of the USIP Act because the section allows for the

inspection of defined records by a Board member or his or her agent or attorney "for any proper purpose at any reasonable time."

14. Mr. Hornok would not confirm that he or any other person was acting as agent or attorney for either Secretary.

15. Mr. Hornok closed the call by saying that the unnamed representatives of Secretary Hegseth would be at the USIP headquarters building the next day with computers and would expect access to the USIP information systems. He said that as Chief of the Criminal Division, he would criminally investigate USIP and anyone who "obstructed" their access to USIP's computer systems.

16. On Monday, March 17, 2025, I was at the USIP headquarters building. Around 2:30 p.m., three vehicles pulled up in front of the building, and four people exited the vehicles. I recognized all four as administrative staff from Inter-Con.

17. One of these staff was the individual who had a physical key to the building that USIP had not yet had the opportunity to retrieve. This person and the other three Inter-Con employees approached and entered the USIP building.

18. Discovering them in the building, I informed them that they were trespassing. They ignored this and proceeded to walk toward USIP's gun safe.

19. I called DC Police to report an unlawful intrusion. The DC police asked for my phone number and said they would get back in touch if they needed anything else.

20. In the meantime, the Inter-Con staff moved to the main entrance area. I asked Inter-Con to return the physical key to the building. Inter-Con refused. Eventually, the Inter-Con staff agreed to leave but kept the key.

21. I then received a call from Kenneth Jackson telling me he wanted to talk. Sophia Lin, my co-counsel, and I then walked outside to meet with him. Mr. Jackson was sitting outside of the building in a black SUV with two other individuals. Mr. Jackson asked me to enter the car to speak with him. I refused. Mr. Jackson then suggested a meeting inside of the building. Again, I declined, and instead invited him to have a conversation outside of the building. Mr. Jackson then refused due to there being a "circus" outside of the building, presumably referring to photographers and media that had gathered outside of the building. I then suggested meeting via Zoom and Mr. Jackson agreed to do so. I obtained Mr. Jackson's email and returned to the building.

22. Mr. Jackson's vehicle and the other two vehicles drove away from the USIP building.

23. Soon after, I logged onto the Zoom meeting, but Mr. Jackson did not show up. I called him on the phone, and he told me he needed to meet at another time.

24. At around 5:30 p.m., Mr. O'Brien, Ms. Lin, and I saw that DC police arrived at the building. Mr. O'Brien went down to meet them. Ms. Lin and I received a call from Mr. O'Brien to ask us to come down.

25. Ms. Lin and I discovered that DOGE and Mr. Jackson were in the USIP building with the DC police. DOGE stated that Mr. Jackson was the acting president of USIP and handed us another copy of the "resolution" firing Acting President Moose and a copy of the email that was sent to Board members. Att. A, *Ex Officio* Resolution. A DOGE representative who refused to provide his name then stated that the Board now consisted of the *ex officio* members.

26. DC police reiterated that Kenneth Jackson is the president of USIP, and escorted Ms. Lin, Mr. O'Brien, an employee on the security team, and I out of the building. We asked to retrieve our belongings and automobiles and were instructed that we could retrieve them after they

5

had a meeting in the building. We were not re-admitted to the building and our possessions and cars remain at the building.

27. While I was standing outside of USIP after we were escorted out, I saw four or five DC police vehicles and about fifteen police officers standing outside the building and in front of the USIP door.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.

Dated this 18th of March, 2025, and executed in Washington, D.C.

Signed: /s/ George Foote

Print Name: George Foote