# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *et al.*, <br><br> Defendants. | Case No. _____ |

## DECLARATION OF COLIN O'BRIEN

I, Colin O'Brien, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am Chief Security Officer at the United States Institute of Peace ("USIP"). I have been in this position since August 2023. In my position, I oversee and am responsible for both domestic security operations and international security operations.

2. I, as Chief Security Officer at USIP acting at the direction of the lawful Board and President of USIP, wish to preclude DOGE from accessing or controlling sensitive USIP computer systems, accounts, and other infrastructure (the "Infrastructure"). DOGE has no lawful authority to access the Infrastructure. Only one USIP employee presently possesses the technological capability to access the Infrastructure and to grant others access. On the evening of March 18, 2025, I learned that this USIP employee, acting at the behest of DOGE, was en route from Georgia to Washington, D.C. in order to access the Infrastructure and grant access to DOGE as soon as the evening of March 18, 2025. Attempts to contact this individual in order to direct them to cease

pursuant to the wishes of lawful USIP leadership have been unsuccessful. Further relevant factual background follows.

3. On March 16, 2025, while I was at work, I received a call from a Federal Bureau of Investigation (FBI) agent, Doug Silk, who requested information about USIP's security procedures. Mr. Silk informed me that I am a subject of an investigation by the Department of Justice into the incident that took place at USIP on Friday, March 14, 2025, when USIP denied building entry to DOGE staff and FBI agents. Mr. Silk asked if I could meet him for questioning that afternoon. I asked him for his contact information so I could get back to him. I then called George Moose, President of USIP, and George Foote, outside counsel to USIP to inform them of this development. I was worried when I got home I would be met by FBI agents and questioned. I called my wife and instructed her to lock the doors at our home.

4. That afternoon, in consultation with Amb. Moose and Mr. Foote, I made the recommendation to suspend USIP's security operations contract with Inter-Con. Given the escalation in interest in accessing USIP's building, we were concerned that DOGE or the Department of Justice would coerce Inter-Con into opening USIP's doors for them. The contract was suspended effective at 6:00pm on March 16, and at that time, Inter-Con personnel were removed from the USIP headquarters building, ID card access was revoked, and all keys were accounted for, with the exception of one physical key held by Kevin Simpson, the Inter-Con account manager for USIP. Inter-Con confirmed receipt of this suspension notice through an email. Derrick Hanna, the Vice President of Inter-Con, emailed back to say Inter-Con "will stand down services as requested effective 1800 hours, on Sunday, March 16, 2025." I was copied on all of these emails.

5. On Monday, March 17, 2025, I was at the USIP headquarters building. Around 2:30pm, three cars pulled up in front of the building. Mr. Hanna and another Inter-Con staff exited one of the cars, approached the USIP building, and attempted to enter by swiping badges. Because the badges had been deactivated upon suspension of the Inter-Con contract the day prior, they were unable to access the building.

6. Mr. Simpson, who maintained the remaining physical key, then arrived and used the key to enter the building. Mr. Hanna and two other Inter-Con administrative staff entered the building with him.

7. I, Mr. Foote and Sophia Lin, counsel to USIP, met them inside the building. Mr. Foote informed the Inter-Con personnel that they were trespassing. Mr. Foote used my phone to call DC police at 2:59pm to report the unlawful intrusion.

8. Mr. Hanna said that DOGE threatened to cancel every federal contract Inter-Con held if they did not come to the USIP building and let Kenneth Jackson inside. He also said that Inter-Con guards were en route to the USIP building to resume their shifts.

9. I called Mike Bruhn, USIP's Chief Operating Officer, and advised him to issue a formal cancellation of the Inter-Con contract. I was informed by Allison Blotzer, USIP's Chief Financial Officer, that Inter-Con acknowledged receipt of this cancellation at 3:36pm.

10. Mr. Simpson directed his colleagues to make their way to USIP's arms room, where guards' firearms are stored. I was concerned that these administrative staff were going to remove firearms from the safe.

11. In consultation with Amb. Moose, I initiated a higher-level security of the building (i.e., a building lockdown) to lock all magnetic door locks and elevators in the building for safety purposes.

12. Soon after, I witnessed via live security camera footage Mr. Simpson, Mr. Hanna, and another Inter-Con staff approach the main entrance doors from within the building, possibly to exit or allow others to enter. At the same time, I saw DOGE personnel attempting to open various doors to the building. Because of the building shutdown, no one was able to enter or exit through these doors.

13. Eventually, the Inter-Con personnel agreed to leave the building, but Mr. Simpson maintained the physical key.

14. At or around 5:30pm, the DC police arrived at the USIP building. I went down to meet them with the intention of filing a police report to document the trespass earlier.

15. I let the District Commander and Deputy Captain of DC police into the building and discussed with them what happened earlier with the Inter-Con staff. A patrol officer then arrived to join us, whom I let in. I then closed the door, which then locked.

16. Soon after, the police officers stated that they had another officer that needed to come in. I told them to let him in. This fourth officer held the door open behind him and refused to close the door when I asked him to.

17. A group of police officers, members of the DOGE team, and Kenneth Jackson entered the building through the open door.

18. Under Amb. Moose's direction, I initiated a full building shutdown.

19. The DOGE staff asked me to escort them through the building, however, I explained that I was unable to do so because my electronic key card had been suspended as a result of the building shutdown. I then called Amb. Moose, Mr. Foote, and Ms. Lin to update them on the situation. Mr. Foote and Ms. Lin were able to join us downstairs before the shutdown had fully taken effect.

20. I was told by DC police officers to stay put and not move. I was physically blocked by a DC police officer from moving about the building. Mr. Foote, Ms. Lin, and I, along with a USIP operations employee, were then escorted out of the building. I asked if I could retrieve my car keys and my car, and they said no.

21. While I was outside, I saw the four Inter-Con employees from earlier, which included Mr. Simpson and Mr. Hanna, return and enter the building.

22. I heard a DOGE employee say that they had requested FBI backup and that the FBI was en route to the building.

23. I saw two diplomatic security service special police officers from the Department of State arrive and enter the premises.

24. All additional USIP personnel who were in the building, including Amb. Moose, were eventually escorted from the building by DC police and DOGE.

25. I witnessed DC police retrieve lock picking equipment from a vehicle and proceed toward the USIP building door on Constitution Ave. I was told by a reporter who had followed them that they gained entrance through this door.

26. Before I left, I saw approximately eight DC police officers guarding the front door of the building.

27. In my Uber ride home, I received a call from Mr. Simpson asking me to contact someone who could unlock all of the interior building doors. I told him I was not able to reach this person and could not help him.

28. It is my understanding that later that evening, various USIP staff members received calls from either DOGE personnel or others working with them, during which they requested USIP staff lists and other information and help accessing USIP's computer systems.

29. It is my understanding that late in the evening, Mr. Jackson sent an email to some members of USIP staff requesting that they fill out a form. I did not receive this email as I am locked out of my USIP electronic accounts.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.


Dated this 18th of March, 2025, and executed in Washington, D.C.

Signed: /s/ Colin O'Brien

Print Name: Colin O'Brien