UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE FOR PEACE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, in his official capacity as Assistant to the Administrator for Management and Resources for USAID, et al., <br><br> Defendants. | Civil Action No. 25-0804 (BAH) |

## RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants respectfully submit this response to the Plaintiffs' motion for a temporary restraining order. The Government received Plaintiffs' papers at 9:36 p.m. last evening, and thus, has not had adequate time to prepare a fulsome written response. That said, the Government believes it has acted in accordance with all laws and that Plaintiffs' request for a temporary restraining order is unsupportable.

*First*, there exists significant justiciability concerns with Plaintiffs' suit. Plaintiffs consist of the U.S. Institute for Peace (the "Institute") and five former directors of the Institute, who purport to sue in their official capacities alone. But the Institute is an independent establishment of the Executive Branch, 22 U.S.C. § 4603(b), whose permanent directors are appointed by the President with advice and consent of Senate, 22 U.S.C. § 4605(b)(4), and whose employees may include those specifically appointed by the President, 22 U.S.C. § 4606(d)(1). Accordingly, this dispute, as framed by Plaintiffs, is between an Executive Branch establishment and its former officials in their official capacities and other Executive Branch officers and employees. Absent rare circumstances, the Judicial Branch's authority typically does not extend to resolve such

intra-Article II disputes. *See, e.g.*, *U.S. Postal Serv. v. Postal Regul. Comm'n*, 963 F.3d 137, 143 (D.C. Cir. 2020) (Rao, J., concurring) ("because agencies involved in intra-Executive Branch disputes are not adverse to one another (rather, they are both subordinate parts of a single organization headed by one CEO), such disputes do not appear to constitute a case or controversy for purposes of Article III" (quoting *SEC v. Fed. Lab. Rels. Auth.*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

*Second*, the statute that Plaintiffs cite suggesting that Institute directors were improperly removed, 22 U.S.C. § 4605(f), does not purport to restrict the President's Article II powers to remove Executive Branch officers and employees performing executive actions. Instead, it provides a removal procedure in addition to the President's constitutional power to remove the directors at will. Indeed, when President Reagan signed the Defense Authorization Act of 1985, which created the Institute, he included a signing statement noting: "The act establishes the United States Institute of Peace. I have been advised by the Attorney General that section 1706(f), relating to the President's power to remove members of the Board of Directors of the Institute, is neither intended to, nor has the effect of, restricting the President's constitutional power to remove those officers." Statement on Signing the Department of Defense Authorization Act, 1985 (Oct. 19, 1984), available at: https://www.reaganlibrary.gov/archives/speech/statement-signing-department-defense-authorization-act-1985. While Congress may limit the grounds upon which the President may remove officers of the United States who perform quasi-judicial or quasi-legislative functions, *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), it may not do so with respect to executive officers who do not perform such functions, *Myers v. United States*, 272 U.S. 52 (1926).

*Third*, the Institute is an improper Plaintiff in this suit.  As Plaintiffs themselves note, the remaining directors of the Institute appointed Mr. Kenneth Jackson as the Institute's president.  *See* Board Resolution (ECF No. 1-7).  Mr. Jackson has not authorized the Institute to file this suit, and the former acting president, Mr. George E. Moose, no longer has any authority to do so.  *See generally* 22 U.S.C. § 4606.  Whether Moose's removal was proper, or not, is not at issue in this suit as Moose is not a party, and no plaintiff purports to assert claims based on supposed injuries to him.

*Fourth*, the plaintiff directors in their official capacities have suffered no irreparable harm.  The D.C. Circuit recently confirmed as much in *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025) (granting Government request for a stay pending appeal), slip op. at 8.  In *Dellinger*, the former Director of the Office of Special Counsel challenges the President's removal of him.  The D.C. Circuit held that plaintiff had not demonstrated irreparable harm based on his statutory rights to function as the Director, even "[a]ssuming he is correct that his removal is statutorily ultra vires, and assuming that his removal constitutes a cognizable injury." *Id*. at 8.  The Court elaborated that at worst, the harm to plaintiff would be that he "would remain out of office for a short period of time."  *Id*.  In contrast, "potential injury to the government of both having its designated Acting Special Counsel sidelined and unable to act while also having to try and unravel [plaintiff's] actions is substantial."  *Id*.  The Plaintiff directors here are plainly in same situation as the director in *Dellinger* (as would any claim by Moose were he a party).  Accordingly, they cannot demonstrate irreparable harm necessary for a temporary restraining order.

*Lastly*, while Plaintiffs reference a request for an administrative stay in their papers, TRO Mem. (ECF No. 2-1) at 3, they recognize they must demonstrate a likelihood of success on the

merits and irreparable harm in the absence of an injunction to obtain such a stay. *See id.* This is for a good reason. The Court lacks jurisdiction and has no authority as a district court to enter proscriptive or mandatory administrative stays effectively operating as injunctions, especially against a co-equal branch of the federal government, without establishing these elements.

The Federal Rules of Civil Procedure ("Rules") provide for only two forms of provisional injunctive relief: (1) preliminary injunctions, which operate to enjoin parties during the pendency of an action, and (2) temporary restraining orders, which operate to enjoin parties until the Court has the opportunity to consider a request for a preliminary injunction and which may be sought on an ex parte basis. *See* Fed. R. Civ. P. 65(a), (b); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2941 (3d ed. June 2024 update) ("A temporary-restraining order typically is sought and issued on an ex parte basis and operates to prevent immediate irreparable injury until a hearing can be held to determine the need for a preliminary injunction. A preliminary injunction is effective until a decision has been reached at a trial on the merits."). Before either a preliminary injunction or a temporary restraining order may issue, a movant must establish a likelihood of success on the merits and irreparable harm (among other showings). *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008).

While a temporary restraining order cannot be immediately appealed, the issuance of a preliminary injunction can. This is because a temporary restraining order can only last for a short period of time and comes with "general principles imposing strict limitations on the scope of temporary restraining orders." *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974). And courts cannot characterize provisional relief exceeding those strict limitations as a temporary restraining orders. As the Supreme Court has noted: "A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as

preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding." *Sampson*, 415 U.S. at 86–87; *see also In re Dist. No. 1 – Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 74 (D.C. Cir. 1983) (deeming characterization of provisional relief as temporary restraining order "to be patently erroneous").

There is no third tool available to district courts—e.g., an "administrative stay"—subject to some unidentified standard short of the requirements set forth in *Winter* and providing unknown appellate rights that permits a district court to enjoin a party (and, in particular, the Executive) before it can consider a request for a temporary restraining order (which itself is an urgent, emergency request for provisional relief until a preliminary injunction can be considered). Indeed, as its name indicates, an "administrative stay" is solely used by appellate courts to halt (or "stay") the effectiveness of judicial commands, not place binding obligations on the parties to a suit in the first instance.

The sources often cited by district courts for administrative stays provide no authority for a district court to issue provisional injunctive relief without a finding of both a likelihood of success on the merits and irreparable harm. For example, Justice Barrett in *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring), discussed administrative stays available to appellate courts, which are used by them to halt (or "stay") the effectiveness of an order or judgment until an appellate court can consider the merits of a stay pending appeal. *Id.* at 799 ("When entered, an administrative stay is supposed to be a short-lived prelude to the main event: a ruling on the motion for a stay pending appeal."). Nothing in that concurrence suggests that a trial court can use that appellate apparatus to enjoin the Executive Branch or others without a requisite showing of a likelihood of success on the merits and irreparable harm.

As to the All Writs Act, courts of appeals have rejected its use to create remedies when sources of law already provide parallel ones. *Fla. Med. Ass'n, Inc. v. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979) ("While the All Writs Act empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules proves inconvenient."). Others have held that Rule 65 governs the issuance of temporary restraining orders and preliminary injunction orders, and thus is controlling even under the All Writs Act. *Ben David v. Travisono*, 495 F.2d 562, 563 (1st Cir. 1974) ("[w]hether proceeding under the [All Writs Act] or not, a district court has no license to ignore [Rule 65]"); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("[W]here the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely [Rule] 65, which provides for temporary restraining orders and preliminary injunctions."). At bottom, however viewed, the All Writs Act provides no authority to dispense with the requirements of *Winter* to obtain provisional injunctive relief.

The same goes for other commonly cited authorities—they all concern the availability of administrative stays to appellate courts to halt (or "stay") the operation of a district court order. None suggests the mechanism exists at the trial court level to enjoin parties in the first instance. *See, e.g.*, Rachel Bayefsky, Administrative Stays: Power and Procedure, 97 Notre Dame L. Rev. 1941, 1941 (2022) ("This Article explores a little examined device that federal courts employ to freeze legal proceedings until they are able to rule on a party's request for a *stay pending appeal*: the 'administrative' or 'temporary' stay." (emphasis added)).

Lastly, the D.C. Circuit's holding in *Human Rights Defense Center v. U.S. Park Police*, --- F.4th ---, 2025 WL 286516 (D.C. Cir. Jan. 24, 2025), further underscores the limits on district

courts to fashion remedies under its inherent authority absent a statutory or rules-sanctioned basis for doing so.  A "court's invocation of an inherent power must [ ] 'either be documented by historical practice' or 'supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught.'"  *Id.* at *6 (quoting *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003)).  That authority is cabined to enforce rules necessary to protect the integrity of courts "and prevent abuses of the judicial process[.]" *Human Rts.*, 2025 WL 286516, at *6 (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)).  As such, that authority is typically deployed "to admit members to the bar, discipline bar members, punish contempt of court, vacate judgments based on fraud on the court, and punish bad-faith or vexatious conduct." *Human Rts.*, 2025 WL 286516, at *6.

Ultimately, district courts enjoy no inherent authority to enjoin the Executive (or other parties) without finding that a litigant has demonstrated a likelihood of success on the merits and irreparable harm, among the other factors set forth in *Winter*, and the Court here is without jurisdiction to issue an administrative stay without making those determinations.

\*    \*    \*

The Government will be prepared at today's hearing to address other issues and the Court's questions about this matter.

Dated: March 19, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     */s/ Brian P. Hudak*
    BRIAN P. HUDAK
    Chief, Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2549

*Attorneys for the United States of America*