**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES INSTITUTE OF PEACE**, 2301 Constitution Avenue, NW, Washington, DC 20037, | Civil Case No. 25-00804 |
| **AMBASSADOR JOHN J. SULLIVAN**, in his official capacity as Chair of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in his individual capacity, | |
| **NANCY ZIRKIN**, in her official capacity as a member of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in her individual capacity, | **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **JUDY ANSLEY**, in her official capacity as a member of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in her individual capacity, | |
| **JOSEPH L. FALK**, in his official capacity as a member of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in his individual capacity, | |
| **KERRY KENNEDY,** in her official capacity as a member of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in her individual capacity, | |
| **MARY SWIG**, in her official capacity as a member of the Board of Directors of the United States Institute of Peace, 2301 Constitution Avenue, NW, Washington, DC 20037, and in her individual capacity, and | |
| **AMBASSADOR GEORGE E. MOOSE**, in his official capacities as Acting President of the United States Institute of Peace and as an *ex officio* member of the Board of Directors of the | |

United States Institute of Peace, 2301
Constitution Avenue, NW, Washington, DC
20037, and in his individual capacity,

                Plaintiffs,

      v.

**KENNETH JACKSON**, in his official capacity
as Assistant to the Administrator for
Management and Resources for USAID and in
his purported capacity as acting president of the
United States Institute of Peace, 1300
Pennsylvania Avenue, NW, Washington, DC
20004,

**U.S. DOGE SERVICE**, 736 Jackson Place,
NW, Washington, DC 20503,

**U.S. DOGE SERVICE TEMPORARY
ORGANIZATION**, 736 Jackson Place, NW,
Washington, DC 20503,

**AMY GLEASON**, in her official capacity as the
Acting Administrator of U.S. DOGE Service and
U.S. DOGE Service Temporary Organization,
736 Jackson Place, NW, Washington, DC 20503,

**JAMES BURNHAM**, in his official capacity as
an employee of the U.S. DOGE Service or the
U.S. DOGE Service Temporary Organization,
736 Jackson Place, NW, Washington, DC 20503,

**JACOB ALTIK**, in his official capacity as an
employee of the U.S. DOGE Service or the U.S.
DOGE Service Temporary Organization, 736
Jackson Place, NW, Washington, DC 20503,

**NATE CAVANAUGH**, in his official capacity
as an employee of the U.S. DOGE Service or the
U.S. DOGE Service Temporary Organization,
736 Jackson Place, NW, Washington, DC 20503,

**MARCO RUBIO**, in his official capacity as the
U.S. Secretary of State and in his official
capacity as an *ex officio* member of the USIP

Board of Directors, 2201 C Street, NW,
Washington, DC 20451,

**PETE HEGSETH**, in his official capacity as the
U.S. Secretary of Defense and in his official
capacity as an *ex officio* member of the USIP
Board of Directors, 1000 Defense Pentagon,
Washington, DC 20301

**VICE ADMIRAL PETER A. GARVIN**, in his
official capacity as President of the National
Defense University and in his official capacity as
an *ex officio* member of the USIP Board of
Directors, 300 5th Ave SW, Building 62, Fort
Lesley J. McNair, Washington, DC 20319,

**TRENT MORSE**, in his official capacity as
Deputy Director of Presidential Personnel in the
White House Presidential Personnel Office, the
White House Office, and the Executive Office of
the President of the United States, 1600
Pennsylvania Avenue, NW, Washington, DC
20500, 1650 17th Street, NW, Washington, DC
20006, and

**DONALD J. TRUMP**, in his official capacity
as President of the United States of America,
1600 Pennsylvania Avenue, NW Washington,
DC 20500,

      Defendants.

## AMENDED COMPLAINT

1.     Defendants' lawless, forcible attempt to dismantle Plaintiff United States Institute

of Peace ("the Institute" or "USIP")—an independent nonprofit corporation established by

Congress in 1984 to work with the United States Government and other partners around the world

to help resolve and prevent violent conflicts— and the duly appointed members of its Board of

Directors began on February 19, 2025, with the issuance of an Executive Order titled

"Commencing the Reduction of the Federal Bureaucracy."[1] That Order incorrectly labeled the Institute a part of the "Federal bureaucracy." And contrary to Congress's finding that the Institute represents "the most efficient and immediate means" and "an appropriate investment by" the United States to promote peace and the peaceful resolution of conflicts, 22 U.S.C. § 4601(a), the President declared the Institute "unnecessary" and directed steps to curtail its vital work.

2.      Since then, the attacks on the Institute have escalated to include the unlawful purported firing of all of the Institute's Board members who were presidentially appointed and confirmed by the Senate, including Plaintiffs Ambassador John J. Sullivan, Judy Ansley, Joseph L. Falk, Kerry Kennedy, Mary Swig, and Nancy Zirkin (the "Board Member Plaintiffs" and together with the Institute, "Plaintiffs"); the unlawful purported firing of the Institute's Acting President, Plaintiff Ambassador George Moose, by *ex officio* board members Marco Rubio, Pete Hegseth, and Vice Admiral Peter A. Garvin; and the unlawful attempt to install Defendant Kenneth Jackson as the acting President.

3.      On March 17, 2025, the attacks culminated in the literal trespass and takeover by force by Defendants, including representatives of DOGE, of the Institute's headquarters building on Constitution Avenue. Once physically inside the Institute's headquarters, DOGE personnel and other representatives of Defendants caused physical destruction to the building—including tearing the USIP seal off of the wall—and moved aggressively to gain control of the Institute's infrastructure, including sensitive computer systems.

---

[1] Exec. Order No. 14,217, 90 Fed. Reg. 10,577 (Feb. 25, 2025).

4.     Plaintiffs seek the  intervention of this Court to stop Defendants from completing the unlawful dismantling of the Institute and irreparably impairing Plaintiffs' ability to perform their vital peace promotion and conflict resolution work as tasked by Congress.

5.     Specifically, Plaintiffs seek preliminary and permanent equitable relief (1) declaring Defendants' efforts purporting to remove the Institute's Board members duly appointed under 22 U.S.C. § 4605(b)(4) and the Institute's Acting President Ambassador George Moose, unlawful, null and void, and without legal effect; (2) ordering that the Institute's Board members duly appointed under 22 U.S.C. § 4605(b)(4) and the Institute's Acting President Ambassador George Moose may not be removed or in any way be treated as having been removed, or otherwise be obstructed from their ability to carry out their respective duties; (3) enjoining further trespass by Defendants against real and personal property belonging to the Institute and ejecting Defendants from such property, and (4) enjoining Defendants, or any other person acting in concert with Defendants, from maintaining, retaining, gaining, or exercising any access or control over the Institute's offices, facilities, computer systems, or any other records, files, or resources, and from acting or purporting to act in the name of Institute, and from using the Institute's name, emblem, badge, seal and any other mark of recognition of the Institute until the Court has an opportunity to fully consider and decide upon the issues raised in this Complaint.

## PARTIES

6.     Plaintiff United States Institute of Peace is an "independent nonprofit corporation" established by Congress in 1984. 22 U.S.C. § 4604(b).  The Institute works with partners around the world to help resolve and prevent violent conflicts.  The Institute is headquartered in Washington, D.C., at 2301 Constitution Avenue, NW, Washington, DC 20037. The building (the "USIP headquarters building") is owned by the Institute and sits on land over which the Institute

has administrative jurisdiction.  Ex. A, Amended Declaration of George Moose; Ex. B, Navy Transfer of Admin Jurisdiction; Ex. C, Potomac Annex Transfer of Jurisdiction.  The Institute also has presence in twenty-six countries around the world, including seven field offices.  The Institute employs 414 employees and personal services contractors to carry out its statutory mandate.  Under the USIP ACT, the Institute is authorized to institute civil actions in any court of competent jurisdiction. 22 U.S.C. § 4604(k).

7.      Plaintiff Ambassador John J. Sullivan is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in his official capacity as Chair of the Institute's Board of Directors, as well as in his individual capacity.

8.      Plaintiff Nancy Zirkin is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in her official capacity as a member of the Institute's Board, as well as in her individual capacity. Ms. Zirkin is the Vice Chair of the Board of Directors.

9.      Plaintiff Judy Ansley is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in her official capacity as a member of the Institute's Board, as well as in her individual capacity.

10.      Plaintiff Joseph L. Falk is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in his official capacity as a member of the Institute's Board, as well as in his individual capacity.

11.      Plaintiff Kerry Kennedy is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in her official capacity as a member of the Institute's Board, as well as in her individual capacity.

12.     Plaintiff Mary Swig is a duly appointed member of the Institute's Board of Directors under 22 U.S.C. § 4605(b)(4) and brings this action in her official capacity as a member of the Institute's Board, as well as in her individual capacity.

13.     The Board Member Plaintiffs include both Republicans and Democrats.

14.     Plaintiff Ambassador George Moose is the duly appointed Acting President of the Institute under 22 U.S.C. § 4606(a) and brings this action in his official capacity as the Institute's President and in his capacity as an *ex officio* member of the Board of Directors, as well as in his individual capacity. Ambassador Moose began serving as duly appointed Acting President and Chief Executive Officer of the Institute on April 25, 2024.

15.     Defendant Kenneth Jackson is the Assistant to the Administrator for Management and Resources at USAID and, as explained in this Complaint, purports to be the acting president of the United States Institute of Peace.

16.     Defendant U.S. DOGE Service is an entity that was created within the Executive Office of the President by Executive Order 14158.

17.     Defendant U.S. DOGE Service Temporary Organization is an entity that was created within the Executive Office of the President by Executive Order 14158.

18.     Defendant Amy Gleason is the Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization.

19.     Defendant James Burnham is an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization.

20.     Defendant Jacob Altik is an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization.

21.     Defendant Nate Cavanaugh is an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization.

22.     Defendant Marco Rubio is the U.S. Secretary of State and is an *ex officio* member of the USIP Board of Directors.

23.     Defendant Pete Hegseth is the U.S. Secretary of Defense and is an *ex officio* member of the USIP Board of Directors.

24.     Defendant Vice Admiral Peter A. Garvin is the President of the National Defense University and is an *ex officio* member of the USIP Board of Directors.

25.     Defendant Trent Morse is Deputy Director of Presidential Personnel in the White House Presidential Personnel Office, the White House Office, and the Executive Office of the President.

26.     Defendant Donald J. Trump is the President of the United States.

## JURISDICTION AND VENUE

27.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202, and because Plaintiffs allege violations of the United States Institute of Peace Act, 22 U.S.C. § 4601 *et seq.*

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because at least one of Defendants is headquartered in Washington, D.C., and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Columbia.

## LEGAL FRAMEWORK

29.     In 1984, under the leadership of two World War II veterans, Senators Mark Hatfield, a Republican, and Spark Matsunaga a Democrat, Congress enacted the United States

Institute of Peace Act (the "USIP Act"), which was signed into law by President Ronald Reagan.[2] That Act of Congress established "an independent, nonprofit, national institute to serve the people and the Government through the widest possible range of education and training, basic and applied research opportunities, and peace information services on the means to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence." 22 U.S.C. § 4601(b).

30.    Congress confirmed the Institute's status as an independent nonprofit corporation outside of the Executive branch throughout the USIP Act. 22 U.S.C. § 4603(b). Consistent with that, Congress exempted the Institute from federal income tax. 22 U.S.C. § 4603(b). Congress granted the corporation all the powers of a nonprofit corporation under the District of Columbia Nonprofit Corporation Act except the power to dissolve itself, a power reserved to Congress. 22 U.S.C. § 4604(a).

31.    Congress vested "[t]he powers of the Institute" in a Board of Directors. All of the Board's fifteen members (including the Secretaries of State and Defense and the President of the National Defense University as *ex officio* members) must be "appointed by the President, by and with the advice and consent of the Senate." 22 U.S.C. § 4605(b). "Not more than eight voting members of the Board . . . may be members of the same political party." *Id.* at § 4605(c). The three *ex officio* members serve at the pleasure of the President, while the twelve remaining members may not be officers or employees of the United States Government. 22 U.S.C. § 4605(d)(2).

---

[2] United States Institute of Peace Act, Pub. L. No. 98-525, tit. XVII, § 1701, 98 Stat. 2492, 2649 (1984), 22 U.S.C. § 4601-4611, as amended.

32.    Critically for this action, the twelve board members appointed under 22 U.S.C. § 4605(b)(4) may only be removed by the President "(1) in consultation with the Board, for conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties;  (2) upon the recommendation of eight voting members of the Board; or (3) upon the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the Committee on Labor and Human Resources of the Senate." *Id.* at §§ 4605(b), (d), (f).  None of the three exclusive methods for removal of a Board member under § 4605(f) was followed here.

33.    Third, Congress protected the independence of the Institute's officers and employees by providing that the president of the Institute is appointed by the Institute's Board, and that "[a]ll officers shall serve at the pleasure of the Board."  22 U.S.C. § 4606(a).  In addition, Congress explicitly provided that officers and employees of the Institute are not officers or employees of the Federal Government except as related to liability and compensation levels.  22 U.S.C. § 4606(f).

34.    Congress prohibited the use of political tests or political qualifications with respect to personnel actions and the selection of grantees, contractors, or other recipients of Institute funds. 22 U.S.C. § 4608(b).

35.    Congress established various transparency requirements regarding the Institute's activities and use of Federal funds, including requiring the Institute to provide to the President of the United States and each House of Congress an audit report that examines "[a]ll books, accounts, financial records, files, and other papers, things, and property belonging to or in use by the Institute," 22 U.S.C. § 4607(h).  The only Executive oversight authorized by Congress with respect

to the Institute's financial activities is "the authority of the Office of Management and Budget to review and submit comments on the Institute's budget request at the time it is transmitted to Congress."  22 U.S.C. § 4608(a).

**FACTUAL ALLEGATIONS**

**A.    Executive Order 14217**

36.    On February 19, 2025, President Trump signed Executive Order 14217.

37.    The stated purpose of the Executive Order is to "reduce the size of the Federal Government," with "a reduction in the elements . . . that the President has determined are unnecessary."

38.    The Executive Order lists entities that "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law."

39.    The Executive Order names the Institute as one of the entities purportedly covered by the order.

40.    The Executive Order gave "the head of each unnecessary governmental entity" 14 days to submit a report to the Director of the Office of Management and Budget "confirming compliance with this order and stating whether the governmental entity, or any components thereof, are statutorily required and to what extent."

41.    The Executive Order further provided that, in response to those reports, "the OMB Director or the head of any executive department or agency charged with reviewing grant requests by such entities shall, to the extent consistent with applicable law and except insofar as necessary to effectuate an expected termination, reject funding requests for such governmental entities to the extent they are inconsistent with this order."

42.    The Executive Order "shall be implemented consistent with applicable law and subject to the availability of appropriations."

**B.    DOGE Takes Action**

43.    On February 20, 2025, the day after the Executive Order was issued, Chris Young, a representative of the U.S. DOGE Service, contacted the Institute.

44.    The Institute agreed to hold a virtual meeting with DOGE representatives on February 24, 2025.  Ex. A, Amended Declaration of George Moose; Ex. D, Declaration of George Foote.

45.    In that February 24 meeting, the Institute Acting President, Ambassador Moose, and outside counsel for the Institute, George Foote, explained to DOGE representatives Cavanaugh, Burnham, and Altik that the Institute is an independent nonprofit corporation outside of the Executive branch.   Ex. A, Amended Declaration of George Moose; Ex. D, Declaration of George Foote.

46.    On March 5, 2025, the Institute submitted a courtesy letter to OMB responding to the requests made in the Executive Order.  The letter explained the Institute's establishment by Congress and its status as an independent nonprofit that is not an Executive branch entity and reiterated the Institute's willingness to maintain its longstanding cooperation with the Executive branch with regard to the foreign policy agenda of the President of the United States.  Ex. D, OMB Letter.

47.    On or about March 8, 2025, Mr. Moose received word that DOGE was making inquiries into the status of the Institute's security operations.  These inquiries were intended to facilitate DOGE's access to the Institute's headquarters, just as DOGE had done with respect to numerous executive agencies. Ex. A, Amended Declaration of George Moose.

48.     On or about March 9, 2025, USIP outside counsel George Foote emailed Defendants Burnham, Altik, and Cavanaugh with information about the private nature of the Institute's security and the Institute's ownership of its headquarters building.  Mr. Foote again confirmed that the Institute is an independent nonprofit corporation and stated that unauthorized personnel would only be admitted with a valid warrant issued by a court.  Ex. D., Declaration of George Foote.

**C.      The Administration's Unlawful Purported Removal of Board Members**

49.     On or about March 14, 2025, the Institute's Board of Directors had 13 members: the three *ex officio* members under 22 U.S.C. § 4605(b)(1)-(3), and 10 members (five Republicans and five Democrats) who had been duly appointed with the advice and consent of the Senate pursuant to 22 U.S.C. § 4605(b)(4).  The six Board Member Plaintiffs were among the 10 duly appointed Institute Board members.

50.     On or about March 14, 2025, Trent Morse of the White House Presidential Personnel Office emailed certain members of the Board, including the Board Member Plaintiffs, claiming to inform them of their termination from the Board by President Trump.  Those emails did not state any justification for the purported terminations. *See* Ex. D, Declaration of George Foote.

51.     Shortly thereafter, on March 14, 2025, representatives from DOGE and Defendant Jackson appeared at USIP headquarters building requesting access.  Because the Institute has administrative jurisdiction over the parcel of land on which its headquarters sits and the USIP building is owned by the Institute, those representatives were denied entry.

52.     Later that same evening, Defendants Altik and Cavanaugh returned to the Institute's headquarters accompanied by FBI Special Agents and presented Mr. Foote with a

"resolution" signed by the three *ex officio* members of the Board purporting to remove Mr. Moose from his position as Acting President of the Institute. Ex. F, *Ex Officio* Resolution.

53.     The resolution of the *ex officio* Board members also purported to install Defendant Jackson as the acting president of the Institute.

**D.     Trespass by DOGE Representatives on and against Institute Property**

54.     As noted, the Institute owns, occupies, possesses, and controls its headquarters building, which is located at 2301 Constitution Avenue, NW, Washington, DC 20037 ("USIP headquarters building"). Ex. A, Amended Declaration of George Moose. The USIP headquarters building was built by private contractors engaged by USIP and paid by a combination of special appropriations and private gifts, as authorized by 22 U.S.C. § 4604(h)(3)(A).The Institute owns, possesses, and controls personal property, including but not limited to records, files, computer equipment, other office equipment, furniture, and miscellaneous items, located within the USIP headquarters building and at other locations. Ex. A, Amended Declaration of George Moose.

55.     While the USIP headquarters building is situated on a parcel of land owned by the United States of America, the U.S. Department of the Navy transferred administrative jurisdiction of that parcel of real property to the Institute on November 21, 1996, following congressional enactment into law of, and consistent with, Section 2831 of the National Defense Authorization Act for Fiscal Year 1997 ("USIP parcel of land").

56.     On March 17, 2025, at approximately 2:30 p.m., four employees of Inter-Con Security Systems Inc. ("Inter-Con"), USIP's former security contractor, arrived at USIP headquarters.[3] Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien. They

---

[3] In light of Inter-Con's efforts to coordinate with Defendants and facilitate access to the USIP headquarters building by the DOGE Defendants and Defendant Jackson, USIP suspended

were unable to enter the building because their badges had been deactivated upon suspension of USIP's contract with Inter-Con.  Ex. G, Declaration of Colin O'Brien.

57.    Upon their failed entry, another Inter-Con employee, Mr. Kevin Simpson, arrived with a physical key that USIP had not yet confiscated after the suspension of the Inter-Con contract.  Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.  Mr. Simpson used his key to gain entrance into the USIP headquarters building and let the other Inter-Con employees in.  Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.

58.    After entering the headquarters building, the Inter-Con employees were advised by Mr. Foote that they were trespassing.  Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.  Mr. Simpson and the staffers ignored Mr. Foote and proceeded to walk toward the Institute's gun safe.  Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.  Mr. Foote subsequently called the Washington, D.C. Metropolitan Police Department ("the MPD") to report the unlawful intrusion.  Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.  As the Inter-Con staff made their way to the gun safe, a building lockdown was initiated by Mr. O'Brien after consultation with Mr. Moose.  Ex. G, Declaration of Colin O'Brien.

59.    Inter-Con and DOGE personnel engaged in additional attempts to unlawfully access the USIP headquarters building, but were eventually able to enter the building, forcibly occupy it, and expel  the duly appointed USIP Acting President, other USIP personnel, and outside counsel.  *See* Ex. G, Declaration of Colin O'Brien.

---

its contract with Inter-Con on March 16 and terminated that contract on March 17. Ex. D, Declaration of George Foote; Ex. G, Declaration of Colin O'Brien.

60.     In the days after the March 17 takeover of the USIP headquarters building, Defendants' aggressive efforts to gain control of USIP property and systems and to paralyze the organization continued, including ordering a cut-off of USIP funds.

61.     On or about March 21, 2025, Defendant Jackson purported to fire at least six USIP employees based on their "at-will-employment status." Ex. A, Amended Declaration of George Moose.

**E.  Defendants' Actions Are Causing Irreparable Harm to Plaintiffs**

62.     Unless Defendants are permanently enjoined from continuing their attacks on USIP, Plaintiffs will suffer irreparable harm.

63.     Defendants have made clear that their goal is to reduce the Institute to what is, in Defendants' view, the "statutory minimums."  Such reduction would entail permanently shutting down all functions and activities of the Institute except for the maintenance of its Board, the appointment of a president, the payment of incidental expenses for the Board, and the submission of certain reports to Congress and the Executive branch.

64.     Anticipated imminent activities by Defendants almost certainly include, *inter alia*, cancelling most, if not all, of the Institute's personal service contracts; cancelling contracts with vendors; cancelling agreements with the Institute's partners; freezing payments to vendors, grantees, and employees; placing Institute staff on administrative leave or terminating their employment; accessing computer systems; modifying and deleting electronic files, records, including studies, analyses, and underlying data, and deleting databases that contain information of USIP contacts and partners; destroying physical files; disposing of other Institute property.  Ex. H, Declaration of Shira Lowringer. As noted above, the firing of USIP staff has begun.

65.     Consistent with the Executive Order's stated goal and DOGE's prior practice, Defendants will likely cancel most, if not all, of the Institute's contracts with vendors and partners. The cancellation of all existing contracts threatens two irreparable injuries for the Institute. The first irreparable injury facing the Institute is potential liability for breach of contract. If the Defendants were to cancel the Institute's existing contracts with its vendors and partners, the Institute would be in breach of said contracts and, therefore, vulnerable to lawsuits from its vendors and partners.

66.     Typically, the threat of a breach of contract claim would not be considered an irreparable harm because the injured party could recover in a subsequent lawsuit. Here, however, the Institute would have no guarantee of recovering monetary damages from the Defendants because the Defendants are protected by sovereign immunity. *Wages and White Lion Investments, L.L.C., v. United States Food and Drug Administration*, 16 F.4th 1130, 1142 (5th Cir. 2021) (citing *Alabama-Coushatta Tribe of Texas v. Unted States*, 757 F.3d 484, 488 (5th Cir. 2014)) (stating "Federal agencies generally enjoy sovereign immunity for any monetary damages."). Irreparable harm exists when a party has "no guarantee of eventual recovery." *Alabama Association of Realtors v. Department of Health and Human Services*, 594 U.S. 758, 765 (2021).

67.     Moreover, cancelling the Institute's contracts threatens irreparable harm to the Institute's goodwill and reputation. This court has held that "[i]njury to reputation and goodwill is not easily measured in monetary terms," and is therefore "often viewed as irreparable." *Jones v. District of Columbia*, 177 F.Supp.3d 542, 547 (D.D.C. 2016) (citing 11A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2948.1 (3d ed. 2013 & 2015 Supp.). This court has been explicit that "harm to reputation has been recognized repeatedly as a type of irreparable injury."

*Brodie v. U.S. Dep't of Health and Human Services*, 715 F. Supp. 2d 74, 84 (D.D.C. 2010) (citing *Alf v. Donley*, 666 F.Supp.2d 60, 69 (D.D.C. 2009)).

68.    Further, all duly appointed USIP Board members are suffering irreparable harm as long as they are deprived of their statutory entitlement to serve as members of the Institute's Board.

69.    The duly appointed USIP Board members have fiduciary duties to act in the best interests of USIP. Consistent with these duties, they must take action to halt Defendants' unlawful, unauthorized attempts to dismantle the organization.

70.    This Court has recognized that even if the deprivation of a Senate-confirmed appointee's "statutory right to function" is temporary, the injury to them and their organization is both significant and irreparable. *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983) (granting preliminary injunction against removal of plaintiffs as members of the U.S. Commission on Civil Rights), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam). Certainly, a damages remedy after a final judgment and all appeals have been exhausted is ordinarily inadequate. *See Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993) (granting TRO against removal of plaintiff members of Postal Service Board of Governors), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam).

## CAUSES OF ACTION

### Count I
### *Ultra Vires* Action
### 28 U.S.C. § 1361
### (All Defendants)

71.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

72.    Plaintiffs have a right of action to enjoin and declare unlawful official action that is *ultra vires*.

73.    The Constitution vests executive power in the President.  U.S. Const., art. II, and imposes on the President a duty to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

74.    Federal legislation must be passed by both chambers of Congress before it may be presented to the President, and, if signed, become law.  U.S. Const., art. I. The executive power vested in the President in art. II, § 1 to faithfully execute law does not include the authority to amend or disregard acts of Congress.

75.    Under the USIP Act, Congress established the Institute as an independent nonprofit corporation.  22 U.S.C. § 4603(b).

76.    "Insofar as Congress has made explicit statutory requirements, they must be observed." *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296 (1945).

77.    Defendants' actions to exert control over USIP exceed executive authority, usurp legislative authority conferred upon Congress by the Constitution, violate the separation of powers, are *ultra vires*, and should be enjoined.

**Count II**
**Violation of the USIP Act**
**22 U.S.C. § 4605(f)**
**28 U.S.C. § 1361**
**(All Defendants)**

78.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

79.    Under the USIP Act, Congress established the Institute as an independent nonprofit corporation.  22 U.S.C. § 4603(b).  Per the statute, "[t]he Institute may exercise the powers conferred upon a nonprofit corporation by the District of Columbia Nonprofit Corporation Act." 22 U.S.C. § 4604(a).  The USIP Act further establishes the governance structure of the Institute,

mandating that "[t]he powers of the Institute shall be vested in a Board of Directors."  22 U.S.C. § 4605(a).

80.     The statute sets out the exclusive methods and circumstances under which a member of the Board appointed with the advice and consent of the Senate under 22 U.S.C. § 4605(b)(4) may be removed.  22 U.S.C. § 4605(f).

81.     The notices emailed to such Board members purporting to terminate them did not satisfy any of the methods or bases for removal in 22 U.S.C. § 4605(f).

82.     President Trump failed to comply with 22 U.S.C. § 4605(f)(1) by purporting to terminate members of the Board without "consult[ing] with the Board" and without identifying any "conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties."  22 U.S.C. § 4605(f)(1).

83.     President Trump failed to comply with 22 U.S.C. § 4605(f)(2) by purporting to remove the members of the Board without "the recommendation of eight voting members of the Board."

84.     President Trump failed to comply with 22 U.S.C. § 4605(f)(3) by purporting to remove the members of the Board without "the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the Committee on Labor and Human Resources of the Senate [now the HELP Committee]".

85.     Accordingly, President Trump's actions to remove the members of the Institute's Board are unlawful and without legal effect.

**Count III**
***Ultra Vires* Action**
**22 U.S.C. § 4605**
**28 U.S.C. § 1361**
**(Defendants Rubio, Hegseth, Garvin)**

86.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

87.    The purported Board resolution attempting to remove George Moose as Acting President of the Institute, which resolution was adopted by the three *ex officio* members of the Board, was *ultra vires* because the purported removal of the Institute's Board members duly appointed pursuant to 22 U.S.C. § 4605(b)(4) was in violation of the USIP Act and without legal effect, as discussed in Count II.

88.    Under the USIP Act, "the Board shall appoint the president of the Institute and such other officers as the Board determines to be necessary."  22 U.S.C. § 4606(a).  The Act requires Board meetings to be conducted "at any time pursuant to the call of the Chairman, or as required in writing to the Chairman by at least five members of the Board."  22. U.S.C. § 4605(h)(2). Further, "[a] majority of the members of the Board shall constitute a quorum for any Board meeting." *Id.*

89.    As discussed in Count II, President Trump's purported termination of the Board members, including the Chairman, John Sullivan, violated the USIP Act and thus has no legal effect.  Thus, the Institute's Board members, including Chairman Sullivan, continued to be duly appointed, lawful members of the Institutes' Board at the time of the purported meeting of the three *ex officio* Board members that resulted in the "resolution" to remove Mr. Moose.

90.    Accordingly, the purported meeting of the *ex officio* Board members was not conducted "pursuant to the call of the Chairman." 22 U.S.C. § 4605(h)(2). That purported meeting

was not "requested in writing to the Chairman by at least five members of the Board." *Id.* Nor did the meeting have the quorum required for official Board action. *Id.* Thus, any purported meeting of the *ex officio* members that occurred was not an authorized meeting of the Institute's Board.

91.     The purported termination of Plaintiff Ambassador Moose as Acting President was undertaken inconsistently with the Institute's bylaws and provisions of the USIP Act governing Board procedure.

92.     As a result, the purported termination of Mr. Moose as Acting President of the Institute was *ultra vires* and without legal effect.

**Count IV**
***Ultra Vires* Action**
**22 U.S.C. § 4605**
**28 U.S.C. § 1361**
**(Defendants Jackson, Rubio, Hegseth, Garvin)**

93.     Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

94.     The purported Board resolution attempting to designate Defendant Jackson as acting president of the Institute, which resolution was adopted by the three *ex officio* members of the Board, was *ultra vires* because the purported removal of the Institute's Board members duly appointed pursuant to 22 U.S.C. § 4605(b)(4) was in violation of the USIP Act and without legal effect, as discussed in Counts II and III.

95.     Under the USIP Act, "the Board shall appoint the president of the Institute and such other officers as the Board determines to be necessary." 22 U.S.C. § 4606(a). The Act requires Board meetings to be conducted "at any time pursuant to the call of the Chairman, or as required in writing to the Chairman by at least five members of the Board." 22. U.S.C. § 4605(h)(2).

22

Further, "[a] majority of the members of the Board shall constitute a quorum for any Board meeting." *Id.*

96.    As discussed in Counts I and II, President Trump's purported termination of the Board members, including Chairman John Sullivan, violated the USIP Act and thus has no legal effect.  Thus, the Institute's Board members, including Chairman Sullivan, continued to be duly appointed, lawful members of the Institutes' Board at the time of the purported meeting of the three *ex officio* Board members that resulted in the "resolution" to install Mr. Jackson as acting president.

97.    Accordingly, the purported meeting of the *ex officio* Board members was not conducted "pursuant to the call of the Chairman." 22 U.S.C. § 4605(h)(2). That purported meeting was not "requested in writing to the Chairman by at least five members of the Board." *Id.*  Nor did the meeting have the quorum required for official Board action.  *Id.*  Thus, any purported meeting of the *ex officio* members that occurred was not an authorized meeting of the Institute's Board.

98.    The purported designation of Mr. Jackson as acting president of the Institute was undertaken inconsistently with the Institute's bylaws and provisions of the USIP Act governing Board procedure.

99.    As a result, the purported designation of Mr. Jackson as acting president of the Institute was *ultra vires* and without legal effect.

**Count V**
**Administrative Procedure Act**
**5 U.S.C. § 701, et seq.**
**(Defendants Jackson, Rubio, Hegseth, Garvin)**

100.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

101.    To the extent Defendants Rubio, Hegseth, and Garvin were acting in their official capacities as Secretary of State, Secretary of Defense, and President of the National Defense University, respectively, their actions are reviewable under the Administrative Procedure Act. 5 U.S.C. § 702.

102.    The actions of Defendants Rubio, Hegseth, and Garvin set forth herein should be held unlawful and set aside because they were and are arbitrary; capricious; abuses of discretion; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; and otherwise not in accordance with law." 5 U.S.C. § 706.

## Count VI
### Ejectment for Trespass, Attempted Trespass, and Threatened Trespass to Real and Personal Property
### (Defendants Jackson, U.S. DOGE Service, U.S. DOGE Service Temporary Organization)

103.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

104.    Plaintiff USIP is, and at all times mentioned in this Complaint was, the owner, occupier, possessor, and controller of the USIP headquarters building.

105.    Plaintiff USIP is, and at all times mentioned in this Complaint was, the owner, possessor, and controller of personal property, including but not limited to records, files, computer equipment, other office equipment, furniture, and miscellaneous items, located within the USIP headquarters building and at other locations.

106.    At all times relevant to this Complaint, Plaintiff USIP is, and was, the occupier, possessor, controller, and steward of the USIP parcel of land located at 2301 Constitution Avenue, NW, Washington, DC 20037.

107.    At all times relevant to this Complaint, Plaintiff USIP has and had administrative jurisdiction over the USIP parcel of land.

108.    Defendants, including DOGE and its representatives, have willfully and repeatedly trespassed upon and obstructed Plaintiff USIP's use and enjoyment of its real property as described in this Complaint.  Defendants, including DOGE and its representatives, have willfully and repeatedly attempted to further trespass upon and obstruct Plaintiff USIP's use and enjoyment of its real property as described in this Complaint.  Defendants, including DOGE and its representatives, have willfully and repeatedly threatened to, in the future, trespass upon and obstruct Plaintiff USIP's use and enjoyment of its real property as described in this Complaint.

109.    Defendants who trespassed on USIP headquarters property did so in their official capacity as representatives of DOGE.

110.    Plaintiff USIP repeatedly advised Defendants in writing and otherwise that DOGE representatives, and other persons not authorized by the Institute, were not permitted to enter the USIP headquarters building and were not permitted to enter onto the USIP parcel of land.

111.    Accordingly, Defendants knew or should have known that such trespass was in violation of Plaintiff's USIP's right to free enjoyment and use of its property.

112.    Defendants have threatened future trespass to personal property of Plaintiff USIP, with the intention of, *inter alia*, accessing and modifying Institute computer systems and disposing of or destroying other personal property owned by the Institute.  The statements and actions by DOGE representatives evidence their intention to impair the operations of the Institute by, *inter alia*, freezing payments to vendors and grantees, terminating contracts, deleting or destroying electronic and physical files and records, and otherwise disposing of or destroying personal property belonging to the Institute.

113.     Unless Defendants are enjoined, Plaintiff USIP will suffer irreparable injury.

114.     Injunctions to remove unlawful occupants from real property have long been recognized in common law as ejectment.  *See* D.C. Code 16-1101.

**Count VII**
**Declaratory Judgment Act**
**28 U.S.C. §§ 2201 and 2202**
**(All Defendants)**

115.     Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as if fully set forth here.

116.     Plaintiffs are entitled to declaratory relief on the basis of all claims identified.  There is substantial and ongoing controversy between Plaintiffs and Defendants, which creates confusion among the Institute's staff, external partners, and the public regarding who has the authority to control and direct actions of the Institute.  A declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Institute's Board members, whom the President of the United States has illegally attempted to remove, lawfully remain members of the Institute's Board of Directors, and that Ambassador Moose lawfully remains the Acting President of the Institute.  Plaintiffs further request declaratory relief to make clear that Defendant Jackson has not been lawfully appointed to any position within the Institute.

## DEMAND FOR JUDGMENT AND RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that this Court:

(1) Sustain Plaintiffs' Complaint herein;

(2) Enter a preliminary and permanent injunction[4] ordering that the Institute's Board members duly appointed under 22 U.S.C. § 4605(b)(4), including the Board Member Plaintiffs, may not be removed from the Board or in any way be treated as having been removed, denied, or otherwise be obstructed from their ability to carry out their duties as Board members;

(3) Enter a preliminary and permanent injunction ordering that George Moose may not be removed as USIP Acting President or in any way be treated as having been removed, denied, or obstructed in accessing any of the benefits or resources of his office or otherwise be obstructed from his ability to carry out his duties as Acting President;

(4) Enter a preliminary and permanent injunction compelling that the emails purporting to terminate the Institute's Board members duly appointed under 22 U.S.C. § 4605(b)(4) and the notice purporting to terminate Plaintiff Moose be withdrawn and rescinded as null and void,

---

[4] To the extent that the Government intends to seek a security under Rule 65(c), Plaintiffs request that the security be waived in this case. District courts enjoy broad discretion to determine the security amount or to waive the security requirement altogether. *See Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) ("Courts in this Circuit have found the Rule 'vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all.") (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)); *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995). There is a longstanding exception to the security requirement in public-interest cases like these. *See City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) ("[P]ublic-interest litigation [constitutes] an area in which the courts have recognized an exception to the Rule 65 security requirement."); *Natural Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 169 (D.D.C. 1971) ("The purpose of the security given under Rule 65(c) is to cover the costs and damages suffered by the party wrongfully enjoined. It would be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party.").

27

(5) Enter a preliminary and permanent injunction ejecting Defendants from the USIP parcel of land and USIP headquarters building and prohibiting trespass by Defendants against real and personal property belonging to the Institute;

(6) Enter a preliminary and permanent injunction prohibiting Defendants, or any other person acting in concert with Defendants, from maintaining, retaining, gaining, or exercising any access or control over Plaintiffs' offices, facilities, computer systems, accounts, or any other records, files, or resources, and from acting or purporting to act in the name of Institute, and from using the Institute's name, emblem, badge, seal, and any other mark of recognition of the Institute;

(7) Declare that the Institute's Board members duly appointed under 22 U.S.C. § 4605(b)(4), including the Board Member Plaintiffs, lawfully remain members of the Institute's Board of Directors;

(8) Declare that Ambassador George Moose lawfully remains the Acting President of the Institute;

(9) Declare that Mr. Kenneth Jackson has not been lawfully appointed to any position within the Institute;

(10)     Provide any such further relief as this Court deems just and proper.


Respectfully submitted,

Dated: March 24, 2025

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb (D.C. Bar 455751)
J. Benjamin Jernigan (D.C. Bar 9000865)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800

Fax: (202) 822-8106
agoldfarb@zuckerman.com
bjernigan@zuckerman.com


*Counsel to Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of March, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using CM/ECF, which will then send a notification of such filing to all counsel of record.


<u>*/s/ Andrew N. Goldfarb*</u>
Andrew N. Goldfarb
*Counsel for Plaintiffs*