# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, et al., | |
| Plaintiffs, | Civil Action No. 25-804 (BAH) |
| v. | |
| KENNETH JACKSON, et al., | |
| Defendants. | |

**AMENDED DECLARATION OF GEORGE E. MOOSE**

I, George E. Moose, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1.  I am the Acting President and Chief Executive Officer of the United States Institute of Peace (USIP).

2.  USIP is an independent nonprofit corporation established by Congress in 1984. USIP works with the United States Government and other partners around the world to help resolve and prevent violent conflicts. USIP owns its headquarters building in Washington, D.C. and all of the property located within the building. USIP also has field offices around the world.

3.  I served as a U.S. Ambassador and Assistant Secretary of State prior to serving on the USIP Board of Directors from 2007 to 2023, first as a member and then as Vice Chair and, from October 2022, as Chair of the Board. In April 2024, the USIP Board of Directors appointed me as the Acting President and Chief Executive Officer of USIP.

Access to Computer Systems

4. I have been made aware that since DOGE and Kenneth Jackson gained access to the building on the afternoon of March 17, they have been conducting a series of rapid actions with the apparent intent to destroy and erase USIP, including its identity and property.

5. Mr. Jackson and members of his team have been actively reaching out to USIP staff, including IT staff, in order to gain access to USIP networks, which contains personnel information, contract information, and financial information.

6. On March 18, I learned that DOGE was able to recruit USIP's Senior Expert of Cybersecurity, Marshall Rich, to facilitate access to the network. He is USIP's seniormost cybersecurity staff. I was informed that Mr. Rich drove from his residence in Georgia to Washington, D.C. that day and arrived that night.

7. Mr. Rich manages external traffic to USIP's network, including cyber threats. He is responsible in his job for protecting UISP's network from cyber attacks from bad actors, including China, Russia, and others.

8. Mr. Rich was the key architect of USIP's computer system lockdown procedure when USIP was preparing for potential intrusion from DOGE. He has the ability to provide full access of the system to DOGE.

9. I was informed by staff that at approximately 2:00 a.m. on March 19, USIP's network system was turned back on, presumably by Mr. Rich.

10. On March 19, I learned that DOGE had also been able to recruit Mr. Carter Farmer, Senior Manager for IT Systems and Solutions, who is USIP's network administrator. Mr. Farmer

controls all of the applications on USIP's network, including Microsoft accounts, the Financial and Accounting SharePoint site, and network accounts.

11. Mr. Farmer has the ability to provide all of this access to DOGE, allowing them to deactivate personnel accounts, access sensitive information, and send emails and other communications on behalf of USIP. He will also be able to provide DOGE with USIP accounts, including email addresses. Mr. Farmer can see every email that sits on the system, as well as all proprietary and confidential information regarding individuals on the network. I have reason to believe that he will likely pass that ability to DOGE, exposing information of private, non-federal employee personnel. Once Mr. Farmer provides this access to DOGE, they will have full control of everything with respect to USIP's electronic systems and will not need to request access from anyone else.

Financial Accounts and Documents

12. I am aware that on March 18, USIP's Chief Financial Officer, Allison Blotzer, received a call from a USIP Systems Accountant, concerning actions taken by DOGE representative Nate Cavanaugh to effectively cut off USIP's access to its funds and its ability to make payments.

13. If DOGE cut off USIP's access to funds, it would effectively terminate all USIP operations. Additionally, cutting USIP's payment mechanism would cut off USIP's ability to make payments to contractors and staff overseas, including Global Guardian.

14. On the evening of March 18, I learned that DOGE staff inside the USIP building had begun occupying and searching the offices of USIP's financial staff. I was shown a photo of financial files that had been dumped into a bin marked "SHRED."

Property Destruction

15.   I have been shown photographic evidence that DOGE has also taken action to erase USIP's identity.  For example, on the evening of March 18, I learned that DOGE staff inside the USIP building stripped USIP logos and monikers from the walls inside the building, including those that were bolted down.

Irreparable Harm to USIP

16.   USIP employees and contractors work around the world in high-risk areas.  Critical to the safety of these employees and contractors is remaining unknown to the dangerous regimes and non-state actors that control many of the areas in which they work.  DOGE's latest efforts to seize control of all USIP databases put these employees and contractors at grave risk of serious and irreparable bodily harm.

17.   Additionally, DOGE has stated that its goal is to reduce USIP to its "statutory minimums," which in its view would reduce the organization to a Board of Directors and a CEO. This would effectively eliminate all USIP programs and activities, to include the cancellation of all USIP contracts.  These contracts are likewise critical to the safety of those working in high-risk areas.  USIP contracts with security forces on the ground in these dangerous areas to protects its employees and contractors.  DOGE's goal of immediately cancelling these security contracts puts the lives of these employees and contractors at serious risk.  By accessing the computer systems in full, DOGE will have the ability to immediately cancel these contracts.

18.   Some concrete examples of how this would severely harm USIP staff and contractors follow.

19. USIP maintains field offices and staff in Libya. These staffers work in a highly volatile security context researching terrorist groups and armed militias. In the past, USIP field staff have been arrested by these armed militias and Libyan intelligence. The loss of security protection and exposure of confidential information could lead to arrests, intense and prolonged questions, and potentially worse.

20. USIP maintains personal service contractors in Haiti who work to bring peace to the highly volatile regions of the country. If local militias learned of the known financial support provided by USIP, our contractors would be especially vulnerable to extortion, kidnapping, and violence in an already volatile environment.

21. USIP maintains field offices and employs staff in Pakistan. USIP researchers focus on counterterrorism efforts in the Balochistan, Khyber, and Pakhtunkhwa provinces. Additionally, USIP staff work on sensitive matters regarding Pakistan's nuclear program. If the contact and personal information of the staff is compromised, the staff will face significant threats from the Islamic State Khorasan Province and other terrorist organizations like the Pakistani Taliban.

22. In the Philippines, USIP works in the sensitive Bangsamoro Autonomous Region in Muslim Mindanao, and access to USIP's computer systems would risk exposing the work of the field teams as much of their work is not publicly known. Exposure of this information would also open the country program director to immediate risk of violence from Islamic State affiliates, armed Moro Liberation Front factions, and political parties who could order hits on these workers.

23. Some of USIP's workers in Thailand had fled from Burma. If USIP contracts in Thailand are cancelled, certain team members will lose visa status in Thailand and could be forcibly repatriated to Burma, where they may be subject to violence as a result of their work.

Their family members remaining in Burma would also be at risk if information of their work became publicly available.

24. USIP maintains field offices and staff in Colombia. The Colombian team has a retired general working full time to manage security in the Bogota office and serving as a liaison with local security forces to protect USIP's team that operates within the remote areas of the country. If the identities of the USIP staff are compromised or the contract with the general is cancelled, the team would be exceptionally vulnerable to kidnapping and other violent attacks.

25. In many sensitive regions in which USIP has staff and contractors, USIP's contractor, Global Guardian, provides security services to protect these personnel. If DOGE cancels the contract with Global Guardian, this immediately endangers the lives of many USIP staff who may be otherwise subject to violence or intimidation.

26. In sum, the access to USIP's computer systems and highly sensitive information greatly increases the risk of inadvertent release of such information, which may lead to kidnapping, attacks, extortion, and death of USIP's staff around the world. DOGE's access also gives them the ability to cancel contracts immediately, which may have the same consequences for USIP staff. This kind of harm that will be caused by DOGE's computer access cannot be repaired.

27. On or about March 21, 2025, I learned that Defendant Jackson purported to fire at least six USIP employees based on their "at-will-employment status."

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.

Dated this 24th of March, 2025, and executed in Washington, D.C.

Signed: /s/ George E. Moose

Print Name: George E. Moose