# EXHIBIT H

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00804 |

**DECLARATION OF SHIRA LOWINGER**

I, Shira Lowinger, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Director of Grants and Contracts Administration for the United States Institute of Peace (USIP).

2. I have a tenure of fourteen (14) years at USIP, having first served from 2006 to 2011 in the Grants and Fellows Office, and then returning in 2015 to work with the Grants and Contracts Administration team in Finance.

3. In September 2016, I was promoted to Director of Grants and Contracts Administration and have been in that role since then. In that role, my responsibilities include managing contractual agreements between USIP and vendors and other contractors. I also manage the Memoranda of Understanding with government entities and other organizations and oversee the procurement process and policies for USIP. In my capacity as Director of Grants and Contracts Administration, I oversee all the work that USIP does with regard to grants and contracts.

4. USIP's computer system contains its grant management system and its financial management system, which includes vendor and contract information. USIP maintains contracts both domestically and abroad for its operations in different countries.

5. If DOGE were to access this information, take action to cancel contracts and grants, delete information from USIP's computer system, and/or terminate USIP employees or put them on administrative leave, there would be severe and irreparable harm caused to USIP and its staff.

6. USIP has contracts domestically with a variety of vendors. This includes a facilities and engineering contract for building maintenance, catering contracts, and building security contracts.

7. USIP is legally bound by these contracts, and the sudden cancellation of such contracts without cause would result in USIP breaching the contracts. Outside of the potential legal repercussions, USIP's relationship with these vendors would be harmed, rendering it difficult to reestablish such contracts in the future in order to restart work. Further, canceling the facilities and engineering contract would result in the loss of key personnel with pertinent and specialized knowledge about the USIP headquarters building and systems, rendering it difficult to safely maintain the building and restart work in the future.

8. USIP maintains a presence (i.e., leases space, has support staff, or contractors on the ground) in twenty-six (26) countries outside of the U.S. USIP has seven (7) field offices where it both leases space and maintains staff on the ground. These offices are located in Nigeria, Thailand, Colombia, El Salvador, Pakistan, Tunisia, and Libya and contain federal assets, USIP assets, and computers with sensitive information about USIP workers and operations.

9. If such leases are terminated without guidance for how to shut down an office, especially in insecure areas, all of USIP's property and information is at risk of being taken and used to harm USIP and its staff.

10. USIP's computer systems contain sensitive, important, and legally necessary information. For example, this includes employee information, vendor information, all of USIP's research and educational materials, including those developed and used in USIP's online global academy, documentation for intellectual property purposes, and documentation to support Institutional Review Board standards for research using human subjects.

11. Any release of employee information, which includes names, personal information, and banking information, would harm and even endanger USIP's staff, especially those located abroad in insecure areas, who may be targeted by terrorist groups or other bad actors.

12. Further, the deletion of all current and historical employee and vendor information would render it extremely difficult to restart work in the future, as all records are kept electronically.

13. USIP's computer system contains decades of research and educational materials which are USIP's intellectual property and documentation supporting this claim of intellectual property, such as author agreements. This includes but is not limited to educational courses and other materials used in USIP's online global academy, and student lists. The loss of this intellectual property documentation would render USIP unable to use, distribute, or sell these texts in the future, which would harm USIP's ability to carry out part of its core mission, which is education and training.

14. USIP carries out extensive research that often contains human subjects. In order to publish its research, USIP must have approval from an Institutional Review Board (IRB). This

approval is contingent upon USIP's maintenance of documentation proving that human subjects were not harmed in the course of the research. The deletion of this documentation from USIP's computer systems would cause USIP to be in violation of the IRB's human subject standards and would not only result in an inability to publish and use its research in the future but would open USIP up to litigation risk from these human subjects, all of which would forever damage USIP's reputation as a research institution.

15. USIP maintains documentation regarding its operations and use of funds in its computer systems, which are required for audits of the organization. Loss of access to these materials, which are only kept electronically, would prevent USIP from fulfilling its tax reporting obligations as well as its statutorily mandated requirement to report its annual audits to Congress and the President of the United States.

16. Finally, the sudden termination of USIP employees and contractor staff would cause significant harm to both USIP and these personnel. Many of these personnel work in insecure areas of the world. Some are third-country nationals who were asked to leave their country of residence and relocate to a new country to perform work for USIP. If their contracts are canceled without proper notice or assistance, these staff could be stranded and trapped in that insecure country or kicked out or prosecuted for lack of proper work documentation.

17. It is my strong belief that based on DOGE's actions taken with respect to other organizations, DOGE's access to USIP's computer systems would be extremely harmful to USIP and its personnel, and would result in irreparable consequences for USIP's operations, legal protections, and the safety of USIP's employees and contractor staff.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.

5

Dated this 18th of March, 2025, and executed in Washington, D.C.

Signed: /s/ Shira Lowinger

Print Name: Shira Lowinger