UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE FOR PEACE, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>KENNETH JACKSON, in his official capacity as Assistant to the Administrator for Management and Resources for USAID, et al.,<br><br>       Defendants. | Civil Action No. 25-0804 (BAH) |

## OPPOSITION TO MOTION PURSUANT TO THE ALL WRITS ACT

Defendants respectfully submit this response to the Plaintiffs' motion pursuant to the All Writs Act for a status conference and to suspend transfer of institute property to the General Services Administration ("GSA") (ECF No. 14, "Motion"). Plaintiffs' Motion is devoid of merit, and the Court should swiftly deny it.

When initially filing this suit, Plaintiffs pursued the procedural route available to them to seek to enjoin the Government from replacing the board of directors (the "board") of the U.S. Institute of Peace (the "Institute") and proceeding with its directives under Executive Order 14,217 to reduce the Institute to its "minimum presence and function required by law[.]" Exec. Order 14,217 § 2, 90 Fed. Reg. 10577 (Feb. 19, 2025). This Court denied Plaintiffs' request for provisional relief, refusing to reinstate the former board members and Ambassador George E. Moose as the Institute's president. The Court's order allowed the Institute's new leadership to perform their duties, including complying with the President's Executive Order, and the United States remains under no judicial command to halt its activities in that regard.

Plaintiffs now complain that the Institute and its new leadership are taking those very steps to implement the President's Executive Order.  In so doing, Plaintiffs present an intra-Executive Branch dispute or a dispute for which they lack standing to pursue.  Also, Plaintiffs tee-up this dispute without even attempting to demonstrate a likelihood of success on the merits or the other requirements necessary for provisional injunctive relief.  Lastly, on the merits, the Institute and its new leadership have complied fully with all laws regarding the transfer of excess property between executive agencies.  For these reasons, Plaintiffs' new Motion finds no legal footing, and the Court should swiftly deny it.

I. **Plaintiffs Have No Legal Authority to Sue as the Institute or in Their Official Capacities.**

As an initial matter, the Amended Complaint puzzlingly continues to list the Institute and its former board members in their official capacities as plaintiffs.  Am. Compl. (ECF No. 12) at 1.  But the Amended Complaint makes clear that the plaintiff former board members were removed from their positions by the President, *id.* ¶ 50, and Moose is no longer the president of the Institute, having been removed by the board as it was constituted on March 14, 2025, *id.* ¶¶ 52–53.  While Moose and the former board members may contest their removals through this action, they have no authority to pretend that they were not in-fact removed from their positions.  The Institute's new leadership has not authorized the filing of the Amended Complaint, and the former board members no longer hold the offices they purport to sue under.  Accordingly, the undersigned is aware of no legal basis for the Amended Complaint continuing to name the Institute and the former board members in their official capacities as plaintiffs.

To the extent the Court believes the Institute and the former board members in their official capacities are proper plaintiffs and the current Motion is brought by those plaintiffs, there exist significant justiciability concerns.  The Institute is a wholly owned government corporation

and, thus, an "executive agency" as a matter of law. *See* 22 U.S.C. § 4603(b); 5 U.S.C. §§ 103, 105. Accordingly, any dispute between, on the one hand, the Institute and its directors in their official capacities and, on the other, other Executive Branch officers and employees, is a dispute between components of the Executive Branch. Absent rare circumstances, the Judicial Branch's authority typically does not extend to resolve such intra-Article II disputes. *See, e.g.*, *U.S. Postal Serv. v. Postal Regul. Comm'n*, 963 F.3d 137, 143 (D.C. Cir. 2020) (Rao, J., concurring) ("because agencies involved in intra-Executive Branch disputes are not adverse to one another (rather, they are both subordinate parts of a single organization headed by one CEO), such disputes do not appear to constitute a case or controversy for purposes of Article III" (quoting *SEC v. Fed. Lab. Rels. Auth.*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

To the extent Plaintiffs bring their new Motion solely in their individual capacities, the Motion equally fails at the threshold. Plaintiffs in their individual capacities may have an interest in being reinstated to their former positions, but they are currently not being injured in that capacity by the Government operating an executive agency without them. *Harris v. Trump*, No. 25-5037, 2025 U.S. App. LEXIS 7301, at *48 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring), *pet. for en banc consideration filed* (dismissed officials' interests in being deprived of fulfilling mandates of their former offices were "institutional interests, not personal interests, so we may take them into account only as they relate to the public interest"). The public interest here is permitting the President to carry out his policies as he promised the electorate he would do. Although Plaintiffs' policy views may differ from those of the current administration, "only through the President can the Executive Branch and its millions of personnel be held democratically accountable. Allowing another branch of government to insulate executive officers from presidential control—whether by congressional statute or judicial injunction—

would sever a key constitutional link between the People and their government." *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *17 (D.C. Cir. Feb. 15, 2025); *see also Harris*, 2025 U.S. App. LEXIS 7301, at *60 (Henderson, J., concurring) ("[I]t is far from clear that [the dismissed officials] may assert rights against the executive branch on behalf of their offices or agencies as opposed to themselves personally[.]").

Under any formulation, Plaintiffs' Motion raises substantial justiciability concerns at the threshold, which should prompt the Court to deny it.

## II.     The All Writs Act Does Not Obviate the Need for Plaintiffs to Demonstrate a Likelihood of Irreparable Harm

It is well-established that before either a preliminary injunction or a temporary restraining order may issue, a movant must establish a likelihood of success on the merits and irreparable harm (among other showings). *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). Plaintiffs' new Motion makes no attempt to demonstrate any likelihood of succeeding on their claims.[1] Instead, Plaintiffs appear to argue that the Judicial Branch can enjoin the Executive Branch under the All Writs Act without making such a showing here. Plaintiffs are mistaken.

---

[1]     The D.C. Circuit's order from Friday in *Harris*, 2025 U.S. App. LEXIS 7301, *pet. for en banc consideration filed*, further underscores the lack of any likelihood for plaintiffs to succeed in this action. In that matter, dismissed members of the Merit Systems Protection Board ("MSPB") and the National Labor Relations Board ("NLRB") sued the Government contending their terminations were unlawful under the "for cause" removal provisions of the relevant statutes and *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). A panel of the D.C. Circuit stayed district court injunctions that reinstated the officials on the grounds that *Myers v. United States*, 272 U.S. 52 (1926), and its progeny, rather *Humphrey's Executor* controlled. This is so despite the MSPB and NLRB exercising rulemaking and adjudication functions, which appellees argued were akin to the "quasi-judicial and quasi-legislative" functions on which the Court in *Humphrey's Executor* rested its opinion. The Institute has no such functions, and thus, the merits here are clear. If the for-cause removal provisions for MSPB and NLRB members cannot insulate them from presidential removal, the Institute's statutory provisions plainly provide no protections for the plaintiff board members here.

Courts of appeals have consistently rejected the use of the All Writs Act to create remedies when sources of law already provide parallel ones. *Fla. Med. Ass'n, Inc. v. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979) ("While the All Writs Act empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules proves inconvenient."). Others have held that Rule 65 governs the issuance of temporary restraining orders and preliminary injunction orders, and thus is controlling even under the All Writs Act. *Ben David v. Travisono*, 495 F.2d 562, 563 (1st Cir. 1974) ("Whether proceeding under the [All Writs Act] or not, a district court has no license to ignore [Rule 65.]"); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("[W]here the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely [Rule] 65, which provides for temporary restraining orders and preliminary injunctions.").

Against this well-established law, Plaintiffs' Motion cites a series of inapposite cases. *See* Mot. (ECF No. 14) at 4–5. For example, Plaintiffs cite *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 (D.D.C. 2005) (Bates, J.), a habeas case, in support of their request for interim relief. But *Al-Anazi* concerned a motion for preliminary injunction where the Court considered all the *Winter* factors and ultimately denied the motion. In so doing, Judge Bates rejected the use of the All Writs Act as an alternative to the requested preliminary injunction. *Id.* at 196 ("[T]here is no justification for issuance of an injunction pursuant to the All Writs Act[.]"). *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), is also far removed from the situation here. In *Klay*, a class of physicians sued insurance companies, and the parties disputed at the threshold whether the claims were arbitrable. *Id.* at 1095. The district court determined that some claims

were arbitrable and others were not and issued an injunction under the All Writs Act enjoining the parties from arbitrating the non-arbitrable claims. *Id.* The Eleventh Circuit reversed on the merits but, in so doing, held that the All Writs Act was an appropriate authority to use in issuing an injunction against arbitration. It did so recognizing that the arbitrable dispute was not a form of preliminary injunction, but instead, an order to protect its ruling that the claims were not arbitrable. The court went out of its way, however, to distinguish its circumstance from typical motions for preliminary injunctions, confirming the rule "that a district court may not evade the traditional requirements of an injunction by purporting to issue what is, in effect, a preliminary injunction under the All Writs Act." *Id.* at 1101 n.13.

Here, Plaintiffs ask not for an injunction to enforce a prior order of the court or to ward off competing proceedings that would endanger its jurisdiction. Instead, Plaintiffs ask the Court to enjoin the Executive Branch's operation of the Institute based on their belief that they should be reinstated as the board and president of the Institute. That is classic preliminary injunctive relief, which requires the Court to find in Plaintiffs' favor on the *Winter* factors. Plaintiffs have not attempted to make that showing in their Motion, and thus, their Motion should be denied.

### III. Plaintiffs' Terminations Were Lawful

As Defendants will demonstrate in their forthcoming motion for summary judgment, the President acted comfortably within his authority to remove the former board members, and the current board members acted comfortably within their discretion to remove Moose as president of the Institute. That is, Plaintiffs' claims are all premised on them being improperly terminated—a premise that fails a as a matter of law. As such, Plaintiffs are entitled to no relief in this action, preliminarily or otherwise.

As Defendants noted in opposing Plaintiffs' motion for a temporary restraining, the statute that Plaintiffs cite suggesting that Institute directors were improperly removed, 22 U.S.C.

§ 4605(f), does not purport to restrict the President's Article II powers to remove Executive Branch officers and employees performing executive actions. Instead, it provides a removal procedure in addition to the President's constitutional power to remove the directors at will. Indeed, when President Reagan signed the Defense Authorization Act of 1985, which created the Institute, he included a signing statement noting: "The act establishes the United States Institute of Peace. I have been advised by the Attorney General that section 1706(f), relating to the President's power to remove members of the Board of Directors of the Institute, is neither intended to, nor has the effect of, restricting the President's constitutional power to remove those officers." Statement on Signing the Department of Defense Authorization Act, 1985 (Oct. 19, 1984), available at: https://www.reaganlibrary.gov/archives/speech/statement-signing-department-defense-authorization-act-1985.

While Congress may limit the grounds upon which the President may remove officers of the United States who perform quasi-judicial and quasi-legislative functions, *Humphrey's Executor*, 295 U.S. at 602, it may not do so with respect to executive officers who do not perform such functions, *Myers*, 272 U.S. at 52. Defendants direct the court to Judge Walker's analysis of this issue from last Friday in *Harris*, 2025 U.S. App. LEXIS 7301, at *6–49, which dispels the notion that the former board members here were improperly removed by the Executive.

IV. **The Transfer of Property Here Was Lawful.**

The Institute's actions to transfer its excess property to another executive agency are entirely consistent with the law. As discussed above, the Institute is a wholly owned corporation of the United States. That is, its organic statute identifies it to be a corporation established by the United States. 22 U.S.C. §§ 4603(a), (b). Its organic statute also makes clear it is owned by the United States—the United States created it, *id.*, the United States controls its board, *id.* § 4605,

the Institute is prohibited from issuing any other shares, *id.* § 4603(b), the Institute is prohibited from receiving non-governmental sums to fund it operations, *id.* § 4604(h)(3), and the United States retains title to the Institute's assets upon its dissolution, *id.* § 4610.  Because it is a government corporation, the Institute is an "executive agency."  5 U.S.C. § 105; 40 U.S.C. § 621(4)(B); 40 U.S.C. § 524(c).

Accordingly, under the Federal Property Act, 40 U.S.C. § 524(a)(5), the Institute is authorized directed to "transfer or dispose of excess property as promptly as possible in accordance with authority delegated and regulations prescribed by the Administrator" of GSA. *Id.*  Under that authority, and consistent with the Executive Order, the Institute has transferred its real property located 2301 Constitution Avenue, NW, Washington, DC 20037, to GSA.  *See* Request for Transfer Form 1334, Exhibit 1 hereto ("Opp'n Ex. 1").  That transfer was approved by the Institute's board.  Board Resolution of Mar. 25, 2025, Opp'n Ex. 2.  The Institute's current president authorized the transfer.  Cavanaugh Letter, Opp'n Ex. 3.  And the Office of Management and Budget approved the terms of the transfer consistent with 40 U.S.C. § 522 and 41 C.F.R. §§ 102-75.205(b) and 102-75.225.  Vought Letter, Opp'n Ex. 4.

In short, the Institute is an executive agency and has decided consistent with the Executive Order and its statutory authority to transfer its excess property to GSA.  The Institute did so lawfully and with the full authorization of its board, its president, the Director of the Office of Management and Budget, and GSA.  Plaintiffs' attempt to set aside that transfer after-the-fact should be rejected by the Court.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: March 31, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     /s/ Brian P. Hudak
BRIAN P. HUDAK
Chief, Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for the United States of America*