# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00804-BAH |

**DECLARATION OF PAUL HUGHES**

I, Paul Hughes, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I was employed by the United States Institute of Peace (USIP) from 2005 until my retirement in 2022.

2. During this time, I created and led USIP's Iraq Program, served as the Secretary of the Military and Security Working Group of the Iraq Study Group (ISG) in 2006, served as the Executive Director of the Strategic Posture Review Commission from 2009 to 2010 and three quadrennial National Defense Strategy Reviews in 2010, 2014, and 2018.

3. During each of these commissions, I was an employee of USIP and provided logistical and administrative support to the commissions.

4. No participant in or observer in these commissions—not USIP, not foreign governmental or nongovernmental participants, and not the United States Executive Branch—understood USIP to be representing the interests of the United States in any way.

**Iraq Study Group**

5. The ISG was a bipartisan, Congressionally requested external working group created to assess the U.S.'s involvement in the Iraq War and publish policy suggestions.

6. The ISG was formed in March 2006 and concluded its work in December 2006 after issuing the ISG Report.

7. Although USIP was not part of the government, the members of the ISG hailed from all parts of the federal government: former Secretary of State James A. Baker, III; Congressman Lee Hamilton; Lawrence S. Eagleburger, former Secretary of State; Vernon E. Jordan, Jr., Senior Managing Director, Lazard, Freres & Co. LLC; Edwin Meese, III, former U.S. Attorney General; Sandra Day O'Connor, former U.S. Supreme Court Associate Justice; Leon E. Panetta, former White House Chief of Staff; William J. Perry, former U.S. Secretary of Defense; Charles S. Robb, former U.S. Senator; and Alan K. Simpson, former U.S. Senator.

8. USIP, with support from the Center for the Study of the Presidency, the Center for Strategic and International Studies (CSIS), and the James A. Baker III Institute for Public Policy at Rice University (Baker Institute), served the ISG by convening expert working groups, writing briefing papers, providing analysis, and coordinating ISG meetings.

9. The ISG was funded by Congressional appropriations, specifically funding USIP to facilitate and support the ISG.

10. Congress turned to USIP to facilitate the ISG's work precisely because it is an independent, non-partisan institution—operating outside of the Executive Branch and the

President's control—making it a trusted vehicle for impartial analysis beyond the influence of any Presidential administration.

11. I understand that Congress selected USIP to facilitate the ISG due to its subject matter expertise, capacity to meet the demands of the ISG, and its political neutrality — Republicans and Democrats in Congress viewed USIP as a politically neutral facilitator of the ISG's work.

12. I understand that the White House understood the ISG was created as an independent body. It cooperated with the ISG by providing ISG members access to people, documents, and travel to Iraq.

13. The ISG ultimately developed a number of policy suggestions. These suggestions came from ISG members—not from USIP which only facilitated the working group. The White House initially did not welcome the ISG's policy suggestions, but ultimately chose to adopt the vast majority of them.

14. The ISG operated entirely independently from the Executive Branch.

15. The President or members of the Executive Branch had no input on the work of the ISG or the ISG Report.

**USIP's Work in Iraq**

16. In addition to facilitating the ISG, USIP also maintained its own programmatic work in Iraq.

17. In 2003 and 2004, USIP members in Iraq worked outside the security bubble, known as the Green Zone, to facilitate reconciliation between Iraqi tribes.

18. To preserve credibility as a non-government organization entirely separate from the military or State Department, USIP's offices were located outside of the Green Zone.

19. This allowed USIP to maintain credibility with local Iraqi stakeholders and to function in a way that U.S. Government officials would not be able to.

20. It was only once security risks became so severe, that USIP offices relocated within the Green Zone, even then it operated in a separate building from the U.S. embassy.

21. Furthermore, USIP staff did not work or live on the embassy compound, unlike Embassy staff.

22. As non-executive branch employees, we had to find our own accommodations.

23. USIP's independence allowed it to conduct objective research that informed U.S. policy and programming, to engage parties in training and problem-solving dialogue, and to engage with diverse stakeholders necessary for preventing and resolving conflict.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing declaration is true and correct.

Dated this 4th of April, 2025, and executed in Washington, D.C.

Signed: /s/ Paul Hughes

Print Name: Paul Hughes