# Exhibit 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> KENNETH JACKSON, et al., <br><br> *Defendants*. | Civil Action No. 25-0804-BAH |

**DECLARATION OF NICOLE COCHRAN**

I, Nicole Cochran, declare as follows:

1. I am offering this declaration in support of the motion for summary judgment filed by Plaintiffs in the above matter.

2. I have been involved with the United States Institute of Peace (USIP) in various capacities since May 2017. Initially, I joined the institute as a summer research assistant and independent contractor. In this role, I provided research support on foreign law issues of relevance to a team that implemented community-based dialogues in five communities across West Africa. Between 2018 and 2019, I later helped this team develop a toolkit for the community dialogue process to facilitate training and implementation of the initiative elsewhere. Such toolkits are a common mechanism for nongovernmental peacebuilding organizations, like Search for Common Ground and Youth4Peace, to share peacebuilding knowledge and approaches. USIP hired me as a Senior Program Specialist in April 2020, and in December 2022 I was promoted to Program Officer. For five years, I supported several study groups to develop peer-reviewed research on various policy issues; developed and implemented training efforts;

supported Track 1.5 dialogues; and developed and implemented local capacity building initiatives until I was terminated on March 28, 2025 at 9:38 pm. I understood all of these initiatives as supporting USIP's congressional mandate to provide international peace and conflict resolution research, education, and training to a variety of audiences, from peacebuilders abroad to the American public.

3.   Throughout my employment, my teams have implemented programs that are fundamentally nongovernmental in character and function and that are similar to programs operated by other nongovernmental entities. For example, in Myanmar my team implements several programs with stakeholders in the pro-democracy movement that is resisting a military dictatorship. These stakeholders include ethnic armed organizations (EAOs) that the US government designated terrorist organizations for many years and for whom trust in the US government is limited. Our programs utilize research, training, and other learning opportunities to build capacity across a wide range of stakeholders and skill sets. One of these programs, which operated from 2016 until 2025, trained grade school teachers in basic, interpersonal conflict resolution skills such as active listening, fostering empathy, and understanding responses and reactions to interpersonal conflict. Teachers were then equipped to teach these skills to their young students and to foster a culture of nonviolent, interpersonal conflict resolution. The training provided in this program was very similar to a mediation training that I attended in June 2024 from Northern Virginia Mediation Service, a nonprofit organization in the United States. Another program trained local public safety actors in Myanmar with the skills needed to provide responsive, democratic community security services to their communities. The Cambodia-based nonprofit organization, Center for Peace & Conflict Studies, provided supplementary training to this same group.

4.      My work at USIP has also involved supporting the research of three study groups convened by the Institute. These groups consisted of private individuals who were subject matter experts in their respective fields. Often participants were academics, researchers, former government officials, or worked for nonprofit organizations. Groups convened to examine the peace implications of particular policy issues - like transnational crime or security sector reform - and to develop peer-reviewed analysis of those issues to better educate the policy community and the general public. This work - in terms of how it is conducted and its capacity to influence the policy priorities and decisions of the US government - is similar to that of other think tanks like the Stimson Center and the Center for Strategic and International Studies.

5.      In my experience implementing track 1.5 dialogues, which bring together government officials with nongovernmental entities to discuss policy issues, USIP's role was as a convener or a subject matter expert. Often, a neutral, nongovernmental entity is needed to successfully serve as the host of such dialogues, as the involvement of government entities in this role can color and unduly influence the content, tone, and outcomes of the discussions. After supporting several Track 1.5 dialogues throughout my tenure at USIP, I believe that USIP's nongovernmental status was critical to perceptions of USIP as a neutral and credible convener.

6.      The actions taken at USIP since March 17, 2025 have serious implications not only for me as a soon-to-be first-time mother in her eighth month of pregnancy, but also for my colleagues who work for the Myanmar Country Office based in Thailand. Although these colleagues remain employed as of this filing, I fear that they will soon be terminated in a cessation of USIP's overseas operations. These colleagues were forced to flee their homes in Myanmar and relocate to Thailand following a military coup in 2021. Most depend on their employment with USIP to maintain their visas in Thailand. If terminated, they could be forced to

return to Myanmar, where they would face the risk of arrest, detention, forced conscription, torture, and/or death for their work with USIP.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April 3, 2025

Nicole Cochran