# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00804-BAH |

**PLAINTIFFS' (I) REPLY IN SUPPORT OF STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE, (II) RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS, AND (III) ADDITIONAL UNDISPUTED MATERIAL FACTS IN REPONSE TO THE CROSS-MOTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiffs respectfully submit the following reply in support of its statement of undisputed material facts in support of its motion for summary judgment, Plaintiffs' response to Defendants' statement of facts for the cross-motion/opposition, and Plaintiffs' additional undisputed facts in response to the cross-motion.

For the Court's convenience, Plaintiffs have also included their original undisputed material facts (from ECF 20) and Defendants' responses thereto (from ECF 32-1).

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 1 | In 1984, Congress established the United States Institute of Peace ("USIP" or "the Institute") as an independent nonprofit corporation pursuant to the United States Institute of Peace Act (the "USIP Act"). Pub. L. No. 98-525, tit. XVII, § 1701, 98 Stat. 2492, 2649 (1984), 22 U.S.C. §§ 4601-4611, as amended. | Undisputed except the proper name of the full enactment that established the Institute was the Department of Defense Authorization Act of 1985. | |
| 2 | The Institute's creation followed the 1980 formation of the Commission on Proposals for the National Academy of Peace and Conflict Resolution ("the Commission"). Pub. L. No. 95-561, 92 Stat. 2143, 2376 (1980). The Commission published its final report on the creation of a United States Peace Academy in 1981. *See* Commission on Proposals for the National Academy of Peace & Conflict Resolution, *To Establish the United States Academy of Peace: Report to the President and Congress* (1981) ("Matsunaga Commission Report"). | Undisputed | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 3 | Congress found that "there is a need for Federal leadership to expand and support the existing international peace and conflict resolution efforts of the Nation and to develop new comprehensive peace education and training programs, basic and applied research projects, and programs providing peace information," and that the Institute represents "the most efficient and immediate means" and "an appropriate investment by" the United States to promote peace and the peaceful resolution of conflicts. 22 U.S.C. § 4601(a). | Undisputed | |
| 4 | Congress designed the Institute to "carry out its activities outside the day-to-day policymaking pressures and constraints which might impinge upon that freedom were [the Institute] to be part of an existing agency or department." S. Rep. No. 98-244, at 23 (1983) (favorably reporting S. 564 to establish the U.S. Academy of Peace) (Ex. 26). *See also* 130 Cong. Rec. 17,504 (1984) (proposing S. 564 as Hatfield Amendment No. 3270 to the | Disputed. Congress did not include this language in its enactment and the Institute's organic statute reveals different purposes. 22 U.S.C. § 4601. | Defendants do not dispute that the Senate report contains the quoted statement. *See also* Resp. to Defs. SOF ¶ 8. Nor do Defendants present any facts showing that Congress intended the Institute to be subject to policymaking pressures or constraints, or to carry out its activities as part of an existing agency or department. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Department of Defense Authorization Act, 1985, H.R. 5167, 98th Cong. (1984)). | | |
| 5 | Congress stressed the Institute's role as a resource for both the legislative and executive branches. *Id.* (stating importance of an entity "whose only role is to explore alternatives to international violence and to bring those alternatives to the attention of those in a position of trust, within both the legislative and executive branches."). | Disputed. Congress did not include this language in its enactment and the Institute's organic statute reveals different purposes. 22 U.S.C. § 4601. | Defendants do not dispute the fact or that the Senate report contains the quoted statement. The statement in 22 USC § 4601(a)(5) that the Institute, as an institution "devoted to international peace research, education and training, and information services," could strengthen "the peacemaking activities of people in such institutions, ***government***, private enterprise, and voluntary associations" (emphasis added) reflects the same legislative intent. |
| 6 | The Institute's headquarters building is located at 2301 Constitution Avenue, NW, Washington, DC 20037. | Undisputed in part. The Institute's former headquarters was located at that address. That building has subsequently been transferred to the General Services Administration. *See* GSA Form 1334, ECF No. 15-1; Institute Request Letter, ECF No. 15-3; OMB Approval Letter, ECF No. 15-4. Moreover, this statement is immaterial to the cross-motions for summary judgment. | Defendants do not dispute that USIP owned its headquarters building at least until March 29, 2025, when Defendants purported to transfer it to GSA for no consideration. Plaintiffs contend the purported transfer was ultra vires and unlawful and thus dispute Defendants' use of the term "former." Defendants' statement about materiality is legal argument. |
| 7 | The land on which the USIP headquarters sits is owned by the United States; however, Congress | Undisputed in part. This statement is undisputed as to the Institute's former headquarters building. Moreover, this | Defendants do not dispute that USIP owned its headquarters building at least until March 29, 2025, when Defendants |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
|  | authorized the transfer of administrative jurisdiction over that land from the U.S. Department of the Navy to the Institute pursuant to Section 2831 of the National Defense Authorization Act for Fiscal Year 1997. The U.S. Navy completed that transfer on November 21, 1996. Amended Compl. Ex. B (ECF No. 12-2). | statement is immaterial to the cross-motions for summary judgment. | purported to transfer it to GSA for no consideration, or that USIP has administrative jurisdiction over the land on which it sits, which gives USIP the right to control entry onto the land. Plaintiffs contend the purported transfer was ultra vires and unlawful and thus dispute Defendants' use of the term "former." Defendants' statement about materiality is legal argument. |
| 8 | Congress authorized the transfer of administrative jurisdiction over an adjacent parcel of land pursuant to Section 2842 of the John Warner National Defense Authorization Act for Fiscal Year 2007. The U.S. Navy completed that transfer on August 29, 2012. Amended Compl. Ex. C (ECF No. 12-3). | Undisputed in part. This statement is undisputed as to the Institute's former headquarters building. Moreover, this statement is immaterial to the cross-motions for summary judgment. | Defendants do not dispute that USIP has administrative jurisdiction over the adjacent parcel of land. Plaintiffs contend the purported transfer was ultra vires and unlawful and thus dispute Defendants' use of the term "former." Defendants' statement about materiality is legal argument. |
| 9 | The Institute constructed its headquarters building beginning in 2008. The building was initially funded with about $70 million of private contributions and $99 million of funds specially appropriated by Congress. See Pub. L. No. 108-447, div. J, §§ 118, 122, 118 Stat. 2809, 3347-48 (Dec. 8, | Undisputed in part for purposes of the pending cross-motions. This statement is undisputed as to the Institute's former headquarters building. Moreover, this statement is immaterial to the cross-motions for summary judgment. | Plaintiffs contend the purported transfer was ultra vires and unlawful and thus dispute Defendants' use of the term "former." Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | 2004). After an additional appropriation of $15 million and completion of the building, see Pub. L. No. 111-117, div. F, tit. I, 123 Stat. 3034, 3319 (Dec. 16, 2009), Congress prohibited further use of appropriated funds for construction. See, e.g., Pub. L. No. 112-10, § 2103, 125 Stat. 38, 177 (Apr. 15, 2011); Pub. L. No. 118-47, div. F, tit. I, 138 Stat. 460, 736 (Mar. 23, 2024). USIP has used private funds for building maintenance and renovation. Ex. 3, Decl. of Allison Blotzer ¶ 5 | | |
| 10 | Pursuant to Congressional authority, § 4603(c), in 1986 the Institute created a separate nonprofit legal entity, the "Endowment of the United States Institute of Peace," under District of Columbia law. Ex. 17, Endowment of the US Institute of Peace Form 990 (2022). | Undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants' statement about materiality is legal argument. |
| 11 | The Endowment has held significant assets for the Institute, including bank accounts holding yet-unexpended appropriated funds pursuant to § 4609(b), as well as | Undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | contributions from private sources for the limited purposes permitted by § 4604(h)(3). As of March 14, 2025, the Endowment's accounts held approximately $15 million in private contributions for the limited purposes permitted by § 4604(h)(3), and approximately $10 million in unexpended appropriated funds pursuant to § 4609(b). Exhibit 3, Decl. of Allison Blotzer, ¶¶ 3-4. | | |
| 12 | USIP's computer systems contain sensitive, important, and legally necessary information. For example, this includes employee information, vendor information, all of USIP's research and educational materials, including those developed and used in USIP's online global academy, documentation for intellectual property purposes, and documentation to support Institutional Review Board standards for research using human subjects. Amended Compl. Ex. H Decl. of Shira Lowinger ¶ 10 (ECF No. 12-8). | Undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 13 | USIP's computer systems contain decades of research and educational materials which are USIP's intellectual property and documentation supporting this claim of intellectual property, such as author agreements. This includes but is not limited to educational courses and other materials used in USIP's online global academy, and student lists. The loss of control of intellectual property documentation renders USIP unable to use, distribute, or sell these texts in the future, which would harm USIP's ability to carry out a core part of its mission, which is education and training. *Id.* ¶ 13. | The first two sentences are undisputed for purposes of the pending cross- motions, but those sentences are immaterial to those motions. The third sentence is disputed, and the cited source does not support the notion that the Institute has lost control of or will lose control of these intellectual property rights, which appear to be speculative assertions from Plaintiffs. | Defendants' statement about materiality is legal argument. |
| 14 | USIP electronically maintains documentation regarding its operations and use of funds in its computer systems, which are required for audits, tax reporting obligations, and its statutorily mandated requirement to report its annual audits to Congress and the President of the United States. *Id.* ¶ 16. | Undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions | Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 15 | As provided in the USIP Act, 22 U.S.C. § 4605(b), the Institute's Board of Directors (the "USIP Board"), consists of three *ex officio* members (the Secretary of State, the Secretary of Defense, and the president of the National Defense University) and twelve members appointed by the President with the advice and consent of the Senate. *See also* Ex. 37, USIP Bylaws. | Undisputed | |
| 16 | As of March 13, 2014, the USIP Board had 14 members: the three *ex officio* members plus 11 individuals duly appointed pursuant to § 4605(b)(4). One of the (b)(4) Board members resigned on March 14, leaving 10 (b)(4) Board members. | Undisputed | |
| 17 | *Ex officio* member Secretary of State Marco Rubio was confirmed by the U.S. Senate as the Secretary of State on January 20, 2025. 171 Cong. Rec. S259 (daily ed. Jan. 20, 2025) (confirmation). | Undisputed | |
| 18 | *Ex officio* member Secretary of State Pete Hegseth was confirmed by the U.S. Senate as the Secretary of | Undisputed | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Defense on January 24, 2025. 171 Cong. Rec. S374 (daily ed. Jan. 24, 2025) (confirmation). | | |
| 19 | *Ex officio* member Vice Admiral Garvin assumed command as the president of the National Defense University on October 11, 2024. Ex. 18, National Defense University, "VADM Peter A. Garvin, USN," (*available at* https://www.ndu.edu/About/Leadership/Article-View/Article/2492624/vadm-peter-a-garvin-usn/). | Undisputed | |
| 20 | Ambassador John Sullivan was confirmed by the U.S. Senate as a member of the USIP Board on May 2, 2024. 170 Cong. Rec. S3369 (daily ed. May 2, 2024) (confirmations). His term began on July 20, 2024. He fills one of the Republican slots. Ex. 19, Sullivan Appointment Affidavit (2024). | Undisputed except that Sullivan no longer "fills one of the Republican slots" after the President of the United States exercised his Article II powers to remove Sullivan. *See* Emails, ECF No. 21-1 at 4. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 21 | Nancy Zirkin was confirmed by the U.S. Senate as a member of the USIP Board on June 4, 2008. 154 CONG. REC. S5124 (daily ed. June | Undisputed except that Zirkin no longer "fills one of the Democratic slots" after the President of the United States exercised his Article II powers to remove Zirkin. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | 4, 2008) (confirmations). Her term began on October 16, 2008. She fills one of the Democratic slots. Ex. 20, USIP, "New Board Members Begin Tenure at U.S. Institute of Peace" (Oct. 16, 2008). | | |
| 22 | Judy Ansley was simultaneously nominated to complete a prior USIP Board member's term and for reappointment as a member of the USIP Board. 157 Cong. Rec. S293 (daily ed. Jan. 26, 2011). She was confirmed by the U.S. Senate for both terms on May 26, 2011. 157 Cong. Rec. S3468 (daily ed. May 26, 2011) (confirmations). She was sworn in on June 6, 2011. She fills one of the Republican slots. Ex. 21, USIP, "New Members for USIP Board of Directors Sworn In" (June 7, 2011). | Undisputed except that Ansley no longer "fills one of the Republican slots" after the President of the United States exercised his Article II powers to remove Ansley. *See* Emails, ECF No. 21-1 at 2. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 23 | Joseph Falk was confirmed by the U.S. Senate as a member of the USIP Board on February 2, 2023. 169 Cong. Rec. S242 (daily ed. Feb. 2, 2023) (confirmations). His term began on April 29, 2023. He fills one | Undisputed except that Falk no longer "fills one of the Democratic slots" after the President of the United States exercised his Article II powers to remove Falk. *See* Emails, ECF No. 21-1 at 3. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | of the Democratic slots. Ex. 6, Decl. of Joseph Falk, ¶ 3 (Apr. 3, 2025). | | |
| 24 | Kerry Kennedy was confirmed by the U.S. Senate as a member of the USIP Board on June 4, 2008. 154 Cong. Rec. S5124 (daily ed. June 4, 2008) (confirmations). Her term began on October 16, 2008. She fills one of the Democratic slots. Ex. 20, USIP, "New Board Members Begin Tenure at U.S. Institute of Peace" (Oct. 16, 2008). | Undisputed except that Kennedy no longer "fills one of the Democratic slots" after the President of the United States exercised his Article II powers to remove Kennedy. *See* Emails, ECF No. 21-1 at 6. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 25 | Mary Swig was confirmed by the U.S. Senate as a member of the USIP Board on August 4, 2022. 168 Cong. Rec. S4048 (daily ed. Aug. 4, 2022) (confirmations). Her term began on October 19, 2022. She fills one of the Democratic slots. Ex. 5, Decl. of Mary Swig, ¶ 3 (Apr. 3, 2025). | Undisputed except that Swig no longer "fills one of the Democratic slots" after the President of the United States exercised his Article II powers to remove Swig. *See* Emails, ECF No. 21-1 at 5 | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 26 | Jonathan Burks was confirmed by the U.S. Senate as a member of the USIP Board on August 4, 2022. 168 Cong. Rec. S4049 (daily ed. Aug. 4, 2022) (confirmations). His term began on October 19, 2022. He fills | Undisputed except that Burks no longer "fills one of the Republican slots" after the President of the United States exercised his Article II powers to remove Burks | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
|  | one of the Republican slots. Ex. 5, Decl. of Mary Swig, ¶ 3. |  |  |
| 27 | Edward M. Gabriel was confirmed by the U.S. Senate as a member of the USIP Board on August 4, 2022. 168 Cong. Rec. S4048 (daily ed. Aug. 4, 2022) (confirmations). His term began on October 19, 2022. He fills one of the Democratic slots. Ex. 5, Decl. of Mary Swig, ¶ 3. | Undisputed except that Gabriel no longer "fills one of the Democratic slots" after the President of the United States exercised his Article II powers to remove Gabriel. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 28 | Michael Singh was confirmed by the U.S. Senate as a member of the USIP Board on August 4, 2022. 168 Cong. Rec. S4049 (daily ed. Aug. 4, 2022) (confirmations). His term began on October 19, 2022. He fills one of the Republican slots. Ex. 5, Decl. of Mary Swig, ¶ 3 | Undisputed except that Singh no longer "fills one of the Republican slots" after the President of the United States exercised his Article II powers to remove Singh. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |
| 29 | Roger Zakheim was confirmed by the U.S. Senate as a member of the USIP Board on January 30, 2023. 169 Cong. Rec. S152 (daily ed. Jan. 30, 2023) (confirmation). His term began on April 29, 2023. He fills one of the Republican slots. Ex. 6, | Undisputed except that Zakheim no longer "fills one of the Republican slots" after the President of the United States exercised his Article II powers to remove Zakheim. | Defendants' statement that the purportedly removed Board member "no longer" fills a board slot is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Decl. of Joseph Falk, ¶ 3 (Apr. 3, 2025) | | |
| 30 | The remaining two appointed positions on the Board are vacant. | Disputed. The Board has twelve vacancies after the President of the United States exercised his Article II powers to remove the prior members | Defendants' statement about the number of vacancies on the Institute's Board is legal argument. |
| 31 | The USIP Board appointed Ambassador George E. Moose as the Acting President of the Institute in April 2024. Ambassador Moose served on the USIP Board from 2007 to 2023, first as a member, then as Vice Chair and from October 2022 until a few months before his appointment to Acting President, as Chair. Amended Compl. Ex. A, Amended Decl. of George Moose ¶ 3 (ECF No. 12-1). Prior to joining the USIP Board, Ambassador Moose served in many governmental roles, including as Ambassador to the Republics of Benin and Senegal in the 1980s and 1990s and Assistant Secretary of State for African Affairs from 1993 to 1997. | Undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 32 | Pursuant to its status as an independent nonprofit, USIP may sue and be sued in its own name. *Id.* § 4604(k). Accordingly, USIP is not represented in litigation by the Department of Justice. Indeed, USIP must, and does, hire private counsel for legal representation. For example, in 2022 USIP hired a private firm in in Omaha, Nebraska to pursue payment recovery from a defaulting contractor. *See United States Institute of Peace v. Safiullah Rauf et. al.*, No. CI-1023 (Douglas County Ct. NEB); *see also* Amended Compl. Ex. D, Decl. of George Foote ¶ 3 (ECF No. 12-4) (declarant stating that he has served as USIP outside counsel since 1987). | Defendants do not dispute that the Institute may sue and be sued in its own name. 22 U.S.C. § 4604(k). That said, Defendants dispute any suggestion that the Institute is not a part of the Executive Branch, as elaborated in Defendants' brief.<br><br>Defendants further dispute the assertion that the Institute is not represented in litigation by the Department of Justice and that it "must . . . hire private counsel for legal representation." For example, the Department of Justice has represented the Institute in Freedom of Information Act cases in the past. *See, e.g.*, *Schwarz v. Dep't of Health & Hum. Servs.*, Civ. A. No. 00-1610 (D.D.C.); *Schwarz v. Dep't of Energy*, No. 01-5413 (D.C. Cir.); *see also* 22 U.S.C. § 4607(i) ("The Institute and its directors, officers, employees, and agents shall be subject to the provisions of section 552 of Title 5 (relating to freedom of information).").<br><br>Officers and employees of the Institute are also subject to the Federal Tort Claims Act. See 22 U.S.C. § 4606(f)(1). "The Attorney General shall defend any civil | Defendants' quotation of a provision of the USIP Act is not a fact. Fed. R. Civ. P. 56(c); LCR 7(h).<br><br>Defendants' dispute about whether the Institute is part of the Executive Branch is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | | action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury" under the Federal Tort Claims Act. 28 U.S.C. § 2679(c). | |
| 33 | Pursuant to the USIP Act's requirement that USIP accounts be audited annually by an accredited, certified public accounting firm according to generally accepted auditing standards, § 4607(g), USIP has retained KPMG to conduct the annual audits. Ex. 3, Decl. of Allison Blotzer ¶¶ 6-7. | Undisputed but Defendants add that the "Institute shall provide a report of the audit to the President and to each House of Congress no later than six months following the close of the fiscal year for which the audit is made." 22 U.S.C. § 4607(h). | Defendants' added quotation of a statutory provision is irrelevant to SUMF 33 and is not a fact. Fed. R. Civ. P. 56(c); LCR 7(h). |
| 34 | On February 19, 2025, President Trump signed Executive Order 14217, entitled "Commencing the Reduction of the Federal Bureaucracy." Exec. Order No. 14217, 90 Fed. Reg. 10,577 (Feb. 25, 2025) ("EO 14217"). EO 14217 directs USIP to eliminate its "non-statutory components and functions . . . to the maximum extent consistent with applicable law" and to "reduce the performance of [its] statutory functions and associated | Undisputed | |

16

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
|  | personnel to the minimum presence and function required by law." *Id.* |  |  |
| 35 | EO 14217 further directed any official review of budget requests be rejected "to the extent consistent with applicable law and except insofar as necessary to effectuate an expected termination." EO 14217 required that it be implemented "consistent with applicable law and subject to the availability of appropriations." *Id.* | Undisputed |  |
| 36 | On February 20, the day after issuance of EO 14217, a representative of the DOGE Service contacted the Institute. On February 24, Ambassador Moose and USIP's outside counsel met virtually with DOGE representatives Defendants Nate Cavanaugh, James Burnham, and Jacob Altik. Ambassador Moose and USIP counsel explained the Institute's legal status as an independent nonprofit corporation outside of the Executive branch of the Federal government. The DOGE representatives asserted that the only statutory requirements of the | Defendants dispute that the identified officials are "DOGE representatives," a vague and inaccurate term. For example, Cavanaugh is an employee of the General Services Administration ("GSA") who works on various government efficiency projects in the administration. Defendants also dispute that the Institute is "an independent nonprofit corporation outside of the Executive branch of the Federal government" for the reasons stated in their brief. The remainder of the statement is undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants do not provide evidence for their statement that Cavanaugh, Burnham, and Altik were not acting as representatives of DOGE, or that Cavanaugh is a GSA employee. On April 12, Cavanaugh stated in an email that he was "a member of the DOGE team working at the General Services Administration." Pl. Opp. Ex. 6 (Apr. 12, 2025 Cavanaugh email).

Defendants do not dispute the fact that USIP's outside counsel explained to Cavanaugh, Burnham, and Altik the Institute's legal status as an independent nonprofit corporation outside of the |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Institute are the existence of its Board, the appointment of a president, the payment of incidental expenses for the Board, and the submission of certain reports to Congress and the Executive branch. Amended Compl. Ex. D, Decl. of George Foote ¶ 5 (ECF No. 12-4). | | Executive branch of the Federal government.<br><br>Defendants' statement about materiality is legal argument. |
| 37 | On March 9, 2025, after the Institute received word that DOGE staff was making inquiries into the status of the Institute's security operations, George Foote emailed DOGE representatives James Burnham, Jacob Altik, and Nate Cavanaugh with information about the nature of the Institute's privately contracted security firm, and the Institute's ownership of its headquarters building. Mr. Foote reiterated the Institute's status as an independent nonprofit organization and stated that uninvited persons would only be admitted to the property with a valid warrant issued by a court. Mr. Foote did not receive a response from Mr. Burnham. *Id.* ¶ 6. | Defendants dispute that the identified officials are "DOGE representatives," a vague and inaccurate term. For example, Cavanaugh is an employee of GSA who works on various government efficiency projects in the administration. Defendants also dispute that the Institute is an independent nonprofit corporation outside of the Executive Branch of the federal government for the reasons stated in their brief. The remainder of the statement is undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | Defendants do not provide evidence for their statement that Cavanaugh, Burnham, and Altik were not acting as representatives of DOGE, or that Cavanaugh is a GSA employee. On April 12, Cavanaugh stated in an email that he was "a member of the DOGE team working at the General Services Administration." Pl. Opp. Ex. 6 (Apr. 12, 2025 Cavanaugh email).<br><br>Defendants do not dispute the fact that USIP's outside counsel (again) told Cavanaugh, Burnham, and Altik that USIP is an independent nonprofit corporation outside of the Executive branch of the Federal government and told them that uninvited persons would not be admitted to the USIP-controlled property without a warrant. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | | | Defendants' statement about materiality is legal argument. |
| 38 | On March 14, 2025, Trent Morse of the White House Presidential Personnel Office emailed certain members of the USIP Board "on behalf of" President Trump. Ex. 12 (compilation of termination notices). The email stated that the Board members' "position on the United States Institute of Peace {sic} is hereby terminated, effective immediately." *Id.* | Undisputed | |
| 39 | By such emails President Trump purported to remove all 11 USIP Board members duly appointed pursuant to 22 U.S.C. § 4605(b)(4). | Defendants do not dispute that the President of the United States removed the Board members pursuant to his authority under Article II of the United States Constitution. Defendants dispute the characterization that the President "purported" to remove the Board members. | |
| 40 | The email did not identify a conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties on the part of any of the USIP Board members. Ex. 12 (compilation of termination notices). | Undisputed, but this statement is immaterial to the parties' cross-motions. | Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 41 | The email did not indicate or claim that President Trump removed any of the USIP Board members pursuant to the recommendation of eight voting members of the USIP Board. *Id.* | Undisputed, but this statement is immaterial to the parties' cross-motions. | Defendants' statement about materiality is legal argument. |
| 42 | The email did not indicate or claim that President Trump removed any of the USIP Board members pursuant to the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the HELP Committee of the Senate. *Id.* | Undisputed, but this statement is immaterial to the parties' cross-motions. | Defendants' statement about materiality is legal argument. |
| 43 | On March 14, 2025, USIP's outside counsel was presented with a document labeled "Resolution of the Board of Directors" stating that "as of March 14, 2025, Mr. George E. Moose is removed from his position as USIP's president and Mr. Kenneth Jackson is designated as USIP's acting president with all the powers delegated by the Board of | Undisputed except that when this document was presented, the President of the United States had removed the former board members pursuant to his Article II removal powers; thus, there were no other Board members to agree or participate in the decision to designate Mr. Kenneth Jackson as the Acting President of the Institute. *See* Am. Compl. (ECF No. 12) ¶¶ 50, 52-53. | Defendants' response after "[u]ndisputed" is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Directors to that role." Amended Compl. Ex. F (ECF No. 12-6). The document did not reflect the agreement or participation of any Board member other than the three *ex officio* members. | | |
| 44 | On March 14, a majority of the Board members duly appointed under 22 U.S.C. § 4605(b)(4) plus Ambassador Moose as an ex officio Board member convened a call with the Institute's outside counsel to discuss the termination notices. Counsel communicated his view that the notices have no legal effect because they do not comply with the for-cause termination clause of the USIP Act. Amended Compl. Ex. D, Decl. of George Foote ¶¶ 7-8 (ECF No. 12-4). | Defendants dispute that the board members on the call were duly appointed members of the board as they had been removed by the President under his Article II powers. *See* Emails, ECF No. 21-1. The remainder of the statement is undisputed for purposes of the pending cross-motions, but this statement is immaterial to those motions. | The first sentence of Defendants' response and Defendants' statement about materiality are legal argument. |
| 45 | On March 14, at two different points in time, Defendant Jackson and representatives from DOGE, including Defendants Altik and Cavanaugh, entered onto the USIP parcel of land accompanied by FBI agents and requested access to the USIP headquarters building. They | Defendants dispute that the identified officials are "DOGE representatives," a vague and inaccurate term. For example, Cavanaugh is an employee of GSA who works on various government efficiency projects in the administration. Defendants do not dispute that Jackson, in his capacity as Acting President of the Institute, and | Defendants do not provide evidence for their statement that Cavanaugh, Burnham, and Altik were not acting as representatives of DOGE, or that Cavanaugh is a GSA employee. On April 12, Cavanaugh stated in an email that he was "a member of the DOGE team working at the General Services |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | presented no warrant and were denied entry to the USIP headquarters building. *Id.* ¶¶ 8-9. | others permitted by him, attempted to gain entry to the Institute's headquarters on March 14, 2025, but were denied entry, without authority, by Moose and others acting at his best [sic]. | Administration." Pl. Opp. Ex. 6 (Apr. 12, 2025 Cavanaugh email).<br><br>The third sentence of Defendants' response is legal argument. |
| 46 | On Sunday, March 16, two FBI agents visited a senior USIP security official at his home unannounced for the purposes of gaining information on how to gain entrance to the USIP building. *Id.* ¶ 10. | This statement is immaterial to the pending cross-motions | Defendants do not dispute, and therefore concede, SUMF 46. Defendants' statement about materiality is legal argument. |
| 47 | That same Sunday, the Institute's outside counsel received multiple calls from Jonathan Hornok, Chief of the Criminal Division of the U.S. Attorney's Office for the District of Columbia. Hornok sought access to the USIP building for unnamed individuals and stated that he had suspicion that USIP may be engaging in criminal behavior. In one call, Hornok sought access to USIP records for *ex officio* Board member Hegseth as provided in 22 U.S.C. § 4607(f). Hornok demanded access to the building and USIP computer systems for an unnamed representative of Defendant Hegseth | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 47. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | at 2:00 p.m. the following day. USIP counsel offered to arrange access as provided in the statute but refused Hornok's demand as outside the statutory requirements of reasonableness. Hornok told USIP counsel that he would criminally investigate USIP and anyone who "obstructed" access to USIP's computer systems. *Id.* ¶¶ 12-15. | | |
| 48 | On March 16, the Institute suspended its contract with its security firm, Inter-Con Security Systems Inc. ("Inter-Con"), based on Inter-Con's efforts to coordinate with Defendants and facilitate access to the USIP headquarters building by the DOGE Defendants and Defendant Jackson. USIP cancelled the Inter-Con contract on March 17. Amended Compl. Ex. G, Decl. of Colin O'Brien ¶¶ 4, 9 (ECF No. 12-7). | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 48. Defendants' statement about materiality is legal argument. |
| 49 | The following day, March 17, four employees of Inter-Con arrived at USIP headquarters at approximately 2:30 p.m. After they were initially unable to enter the building because | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 49. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | their badges had been deactivated upon the suspension of Inter-Con's contract, another Inter-Con employee, Kevin Simpson, arrived with a physical key that USIP had not yet recovered from Inter-Con. Simpson used the key to gain entrance into the USIP headquarters building and let in the other Inter-Con employees. *Id.* ¶¶ 5-6. | | |
| 50 | In response, Institute counsel called the Washington, D.C. Metropolitan Police Department ("MPD") to report Inter-Con's entry without consent to the Institute's land and headquarters building. *Id.* ¶ 7. | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 50. Defendants' statement about materiality is legal argument. |
| 51 | When MPD officers arrived to receive the report, they assisted DOGE personnel, who were present outside the building, to gain physical entry to the Institute's building. MPD officers escorted Ambassador Moose, other USIP personnel, and outside counsel from the building, leaving the DOGE Defendants and Defendant Jackson in physical | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 51. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | possession and control of USIP's headquarters. *Id.* ¶¶ 14-17, 20, 24 | | |
| 52 | As of March 14, 2025, the Institute employed over 400 employees and personal services contractors to carry out its statutory mandate. Ex. 4, Decl. of Terry Jones ¶ 3. | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 52. Defendants' statement about materiality is legal argument. |
| 53 | On March 21, 2025, Defendant Jackson fired six USIP employees. The termination letters referred to the employees' "at-will-employment-status." *See, e.g.*, Ex. 13 ("Termination of Colin O'Brien's At-Will Employment with USIP"). | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 53. Defendants' statement about materiality is legal argument. |
| 54 | On March 28, 2025, one or more Defendants caused termination notices to be sent to virtually all of the Institute's employees. Ex. 4, Decl. of Terry Jones ¶ 5; *See* Abigail Hauslohner & Derek Hawkins, *DOGE Fires Nearly All Staff at U.S. Institute of Peace Headquarters*, Washington Post (Mar. 29, 2025), https://www.washingtonpost.com/ — national- | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 54. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | security/2025/03/29/doge-usip-peace-institute-fired/. | | |
| 55 | On March 31, 2025, Plaintiffs learned of an undated document titled "Resolution of the Board of Directors" signed by two of the ex officio directors (Defendants Hegseth and Rubio). The document purports, as of March 25, 2025, to remove Defendant Jackson as Acting President of the Institute and appoint Defendant Cavanaugh in his stead. The resolution also purports to fire USIP's Chief Financial Officer and Chief Operating Officer. The document further directs Cavanaugh "to transfer USIP's assets, including USIP's real property and rights thereof, including all assets recently received from the Endowment, to the General Services Administration (GSA)." Ex. 2 to Defs' Opp. To Motion pursuant to the All Writs Act (ECF No. 15-2). | Undisputed except that Defendants dispute Plaintiffs' characterizations that the ex officio board members "purported" to do the actions above. As explained throughout these filings, Defendants had actual authority to perform the actions in this paragraph and took the indicated actions under that authority. *See* Bd. Resolution, ECF No. 15-2. | Defendants' response after "[u]ndisputed" is legal argument. |
| 56 | On March 31, 2025, Plaintiffs learned of additional documents that purported to execute the transfer of USIP's headquarters building to | Undisputed except that Defendants dispute Plaintiffs' characterizations that the ex officio board members "purported" to do the actions above. As explained | The second sentence of Defendants' response is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | GSA on Saturday, March 29, 2025. Exs. 1, 3, 4 to Defs' Opp. to Motion pursuant to the All Writs Act (ECF No. 15-1, 15-3, 15-4). | throughout these filings, Defendants had actual authority to perform the actions in this paragraph and took the indicated actions under that authority | |
| 57 | On March 31, 2025, Plaintiffs learned of a purported board resolution by two *ex officio* board members (Secretaries Rubio and Hegseth) firing all officers of the USIP Endowment, appointing Adam Amar as new president of the Endowment, and directing Amar to transfer all of the Endowment's assets to USIP. Ex. 2 to Defs' Opp. to Motion pursuant to the All Writs Act (ECF No. 15-2). | Undisputed except that Defendants dispute Plaintiffs' characterizations that the ex officio board members "purported" to do the actions above. As explained throughout these filings, Defendants had actual authority to perform the actions in this paragraph and took the indicated actions under that authority | The second sentence of Defendants' response is legal argument. |
| 58 | On April 1, 2025, Defendants' counsel informed this Court that GSA had leased, or was in the process of leasing, the USIP building to the Department of Labor. | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 58. Defendants' statement about materiality is legal argument. |
| 59 | The Institute has field offices, staff, and/or contractors in 26 countries around the world, including seven field offices in Nigeria, Libya, Thailand, El Salvador, Pakistan, | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 59. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Tunisia, and Colombia. Amended Compl. Ex. H, Decl. of Shira Lowinger ¶ 8 (ECF No. 12-8). These offices have maintained computer systems with sensitive information about USIP workers and operations. *Id.* | | |
| 60 | USIP frequently serves as a resource to Congress. It regularly briefs Members and their staffs upon request and holds briefings on Capitol Hill. Such briefings have concerned transnational criminal networks with links to China, crime and mass migration in Central America, and critical minerals in Africa. The Institute has long facilitated congressionally mandated commissions and regularly convenes senior expert groups to analyze pressing issues. For example:<br><br>a.    Iraq Study Group. In 2006, a bipartisan group of Members of Congress requested USIP to act as the facilitator for the Iraq Study Group (ISG), which was set up to provide a "'fresh eyes' assessment | Undisputed, but the Institute's response to congressional inquiries does nothing to take it out of the Executive Branch of the federal government and the Institute's congressional interactions are ancillary to its statutory purposes, which are plainly executive functions. 22 U.S.C. § 4601. | Defendants' response after "[u]ndisputed" is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | of the situation in Iraq." Ex. 2 (Iraq Study Group Fact Sheet). The members of the ISG hailed from all parts of the federal government: former Secretary of State James<br><br>A. Baker, III; Congressman Lee Hamilton; Lawrence S. Eagleburger, former Secretary of State; Vernon E. Jordan, Jr., Senior Managing Director, Lazard, Freres & Co. LLC; Edwin Meese, III, former U.S. Attorney General; Sandra Day O'Connor, former U.S. Supreme Court Associate Justice; Leon E. Panetta, former White House Chief of Staff; William J. Perry, former U.S. Secretary of Defense; Charles S. Robb, former U.S. Senator; and Alan K. Simpson, former U.S. Senator. Ex. 1, Decl. of Paul Hughes ¶¶ 5-7.<br><br>The Institute, with support from the Center for the Study of the Presidency, the Center for Strategic and International Studies, and the James A. Baker III Institute for Public Policy at Rice University, served the ISG by convening expert | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | working groups, writing briefing papers, providing analysis, and coordinating meetings. Ex. 1, Decl. of Paul Hughes ¶ 8.<br><br>b.  Afghanistan Study Group. The Afghan Study Group (ASG) was established by Congress in December 2019. S. Rept. No. 116-126, at 43 (2019). Congress tasked the ASG to "consider the implications of a peace settlement or the failure to reach a settlement on U.S. policy, resources, and commitments in Afghanistan." Id. The group was co-chaired by former Senator Kelly Ayotte, former Chairman of the Joint Chiefs of Staff, General Joe Dunford, USMC, as well as Nancy Lindborg, former Assistant Administrator for the Bureau for Democracy, Conflict, and Humanitarian Assistance at USAID. Ex. 14, Decl. of Michael Phelan ¶ 3.<br><br>USIP served the ASG by providing administrative and logistical support, convening working groups and stakeholder meetings, writing | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | briefing papers, providing analysis, and coordinating ASG meetings. Ex. 14, Decl. of Michael Phelan ¶ 4.<br><br>c.    Gandhi-King    Global Academy.  In  2020,  Congress directed the Institute to create the "Gandhi-King Global Academy," a professional development training initiative to develop and make publicly available a curriculum on conflict resolution tools based on the principles of nonviolence. Pub. L. No. 116-260, div. FF, § 334, 134 Stat. 1182, 3115 (Dec. 27, 2020). Congress<br><br>directed the Institute to report every six months to four congressional committees  (two  House,  two Senate)  on  its  progress  on  the initiative. Id. § 336(a)(2). See Ex. 31, Decl. of Alli Aloudes Phillips (describing role in the Gandhi-King Global    Academy's    conflict resolution education and training programs); Ex. 32, Decl. of Maria Antonia Montes (describing work as | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Senior Program Officer for Gandhi-King Global Academy). | | |
| 61 | Other nonprofit organizations and think tanks perform the same type of research, education, training, and dialogue facilitation activities as USIP in communities around the world. *See, e.g.*, Ex. 27, Decl. of Andrew Wells-Dang (explaining the similarity between USIP and other international nonprofits he has worked with); Ex. 29, Decl. of Mary Glantz (describing other nonprofits and think tanks that broadly offer expert advice and analysis, including to Congress and government agencies); Ex. 30, Decl. of Nicole Cochran (describing research and training efforts, as well as work convening expert study groups similar to how the Stimson Center and Center for Strategic and International Studies function). | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 61. Defendants' statement about materiality is legal argument. |
| 62 | USIP's research, training, and conflict resolution efforts often occurs "on the ground" in communities in conflict and involves a wide range of partners | Defendants dispute the assertions in this statement about the Institute being "able to gain access and trust because of its independence from official U.S. Government institutions," and the | Defendants' rhetorical characterization of the sworn declarations of USIP employees who at other times in their careers have served as federal employees, describing factual |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | and stakeholders to which USIP is able to gain access and trust because of its independence from official U.S. Government institutions. The substance, approach, and type of work is very different from that undertaken by Executive branch agencies. Ex. 29, Decl. of Mary Glantz (contrasting USIP work with her prior work as a Foreign Service Officer); Ex. 32, Decl. of Maria Antonia Montes (describing ability to travel to areas where U.S. Government personnel were not authorized to go, and to meet with grassroots civil society members to gather information, and describing her lack of access to official files or discussions around State Department's Executive or Foreign Policy Objectives); Ex. 36, Decl. of Frank Aum (explaining differences between nature and substance of work at USIP compared to the Office of the Secretary of Defense at the Pentagon, where he previously worked); Ex. 34, Decl. of Scott Worden (explaining how work for USIP is "fundamentally different" | Institute's work being "very different from that undertaken by Executive branch agencies." These assertions are not factual but are, instead, opinions. Ultimately, whether the Institute sits outside the Executive Branch is a matter of law for the Court to decide. For the reasons explained in Defendants' brief, the Institute is properly under the Executive Branch of the United States government. | differences between their work for USIP and their work as federal employees, as "opinions" does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). *See also* ECF 30 (brief of 113 USIP employees) and ECF 31 (brief of 128 former executive branch officials). Defendants do not dispute any of the statements in any of the factual declarations. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | from his work at a federal agency (USAID) and for the Special Inspector General for Afghanistan Reconstruction); Ex. 28, Decl. of Christopher Bosley (former U.S. Navy intelligence officer contrasting work on USIP's Countering Violent Extremism team, which involved engaging "local, on-the-ground partners and communities dealing with violent extremism issues and root causes," conducting "immediate-term piloting of programs to stop violent extremism," and "longitudinal convening and scholarship to study and address these issues over time" with "the workstreams in which agencies of the official U.S. government operate"); Ex. 33, Decl. of Mary Speck (describing how her work in Guatemala on USIP's Latin America Program is "unlike that of any Executive Branch entity" and how USIP's "status as an independent non-profit entity was crucial to [its] work. Our goal is to build trust between authorities -- especially police -- and local citizen | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | groups, including businesspeople, indigenous authorities, activists, and religious leaders. These partners trust us because we do not represent the U.S. government or any ideological group that is advocating for specific policies. We can be honest interlocutors, able to reach out to Evangelical leaders, human rights activists and business owners alike." | | |
| 63 | USIP is able to perform conflict-resolution research and conduct trainings, convene and facilitate communications and dialogue between groups in conflict because it assiduously maintains its independence from official U.S. Government diplomatic and policymaking activities, and because its partners recognize (and rely upon) that independence. Indeed, USIP provides research briefing analysis, and conflict-resolution training services, training and advisory services to a variety of different partners: educational institutions, foreign governments, other nonprofit think | Defendants dispute the assertions in the paragraph above about the Institute's "independence from official U.S. Government diplomatic and policymaking activities," and the assertion that "its partners recognize (and rely upon) that independence." These assertions are not factual but are, instead, opinions. Ultimately, whether the Institute sits outside the Executive Branch is a matter of law for the Court to decide. For the reasons explained in Defendants' brief, the Institute is properly under the Executive Branch of the United States government. | Defendants do not dispute that the Institute "assiduously maintains its independence from official U.S. Government diplomatic and policymaking activities" or that "USIP provides research briefing analysis, and conflict-resolution training services, training, and advisory services to a variety of different partners: educational institutions, foreign governments, other nonprofit think tanks, and agencies within the United States Executive Branch. The United States government has no say over what projects USIP undertakes for foreign and NGO groups." Moreover, Defendants do not dispute any of the statements in any of the factual declarations. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | tanks, and agencies within the United States Executive Branch. The United States government has no say over what projects USIP undertakes for foreign and NGO groups. *See* Ex. 31, Decl. of Alli Aloudes Phillips (describing importance of USIP's independence from the Executive Branch to the nongovernmental peacebuilding organizations with which USIP works in Africa, Latin America, and Asia); Ex. 34, Decl. of Scott Worden ("USIP was able to convene a variety of Afghan and international stakeholders at USIP's [private office space in Kabul] because we were viewed as non-governmental and created a neutral space for peacebuilders to engage in open dialogue that would not have been possible at a U.S. government facility."); Ex. 35, Decl. of Tegan Blaine (former USAID official explaining work on USIP's "climate, environment, and conflict" project in Africa performing "deep research and analysis" of information derived from "on-the-ground" dialogue with | | Defendants' rhetorical characterization of the sworn declarations of USIP employees describing the factual independence of USIP from Executive Branch entities and the importance of that independence to USIP's work as "opinions," does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). *See also* ECF 30 (brief of 113 USIP employees) and 31 (brief of 128 former executive branch officials). |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | communities inaccessible to US Government, and describing clear lines between USIP and involvement or awareness of decisionmaking or strategic priorities of U.S. Africa Command); Ex. 11, Decl. of Samantha Robinson (describing USIP's ability to perform humanitarian peacebuilding work in the Middle East and other places because it operates independently from U.S. government agencies and is not subject to work free of governmental restrictions and protocols). | | |
| 64 | USIP does not engage or participate in "Track 1" diplomacy, which is reserved for official governmental representatives. *See* Ex. 16, Lisa Sokol, "Multi-Track Diplomacy Explained," Nuclear Threat Initiative, at https://www.nti.org/risky-business/multi-track-diplomacy-explained/ ("Track 1 Diplomacy refers to official diplomacy, where communication is directly between or among governments. These | Disputed, and the cited materials fail to support the statement. | Defendants provide no evidence to support its response, which does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). Defendants ignore the substance of the sworn declarations establishing that USIP employees who engage in "track" dialogues never represent that they are "part of the U.S. Government" or "implementing U.S. government policy." *See* Ex. 36 (declaration of USIP employee who has convened and moderated "dozens" of |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | formal discussions are conducted by diplomats, heads of state, and other official authorities."). | | Track 2 (i.e., nongovernmental) dialogues); Ex. 30 (declaration of USIP employee who has participated multiple times in USIP's support of Track 1.5 dialogues where USIP has served as a "nongovernmental" host). |
| 65 | USIP engages in "Track 1.5" diplomacy. E.g., Ex. 30, Decl. of Nicole Cochran (USIP implemented and supported Track 1.5 dialogues as a "neutral and credible convener"). The distinctive feature of Track 1.5 diplomacy is that it involves the participation of "nongovernmental experts." Ex. 16. *See* Jeffrey Mapendere et al., *Track One and a Half Diplomacy and the Complementarity of Tracks*, 2 Culture of Peace Online J. 66, 69 (2006) (Ex. 15). Independent nongovernmental entities similarly convene Track 1.5 meetings. One example is the Carter Center's involvement in mediating the conflict between Uganda and Sudan. "By operating at a Track One and a Half level, The Carter Center has the advantage of applying an eclectic approach to international and ethnic | Defendants dispute the first sentence, and the cited materials fail to support the statement. The remainder of the statement is immaterial to the pending cross-motions. | Defendants' response as to the first sentence ignores the cited declaration of a USIP employee describing the Institute's participation in Track 1.5 dialogues as a "neutral and credible convener." *See* Ex. 30. Defendants do not dispute, and therefore concede, the remainder of SUMF 65. Defendants' response as to the first sentence does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | conflict, such as the use of high-level diplomacy, private problemsolving workshops, direct mediation, interactive conflict resolution, and other confidencebuilding interventions." Ex. 15 at 70. Another example was the China-U.S. Strategic Nuclear Dynamics Dialogue, which was convened and run by the nonprofit, private think tanks Center for Strategic and International Studies and Pacific Forum. Ex 16 | | |
| 66 | USIP also engages in "Track 2" diplomacy, which denotes "a purely unofficial channel for dialogue between *non-governmental experts*, without direct governmental involvement." *Id.* (emphasis added). Scholars have defined it as "unofficial, informal interaction between members of adversary groups or nations that aim to develop strategies, to influence public opinion, organize human and material resources in ways that might help resolve their conflict." Ex. 15 at 68. | Disputed, and the cited materials fail to support the statement. | Defendants' response simply ignores the cited declaration of a USIP employee in SUMF 67 describing the Institute's participation in Track 2 dialogues. *See* SUMF 67 (citing Ex. 36). Defendants' response as to the first sentence does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 67 | When USIP engages on these fronts, parties on all sides understand it to be an independent forum, and not to speak for the United States (just like the Center for Strategic and International Studies in the China-U.S. Strategic Nuclear Dynamics Dialogue or the Carter Center when mediating the conflict between Uganda and Sudan in the late 1990s). *See* Exs. 15, 16. In the example of the Center for Strategic and International Studies, the dialogue "provided an avenue for what officials often describe as 'frank and candid' discussions with Chinese counterparts on nuclear issues. By bringing together think tank experts, retired officials, and active government and military officials, the dialogue led to a unique series of conversations where both sides could exchange views and build trust, even in the face of broader tensions." Ex. 16; Ex. 36, Decl. of Frank Aum (describing research on the Korean Peninsula and efforts "convening and moderating dozens of Track 2 | Defendants dispute the assertions in the paragraph above about "parties on all sides understand it to be an independent forum, and not to speak for the United States[.]" These assertions are not factual but are, instead, opinions, as well as speculative as to what "parties on all sides understand[.]" The Institute, for example, "may use 'United States' or 'U.S.' or any other reference to the United States Government or Nation" in the course of its work, 22 U.S.C. § 4603(e)(2), and was created "to serve the people and the Government[,]" 22 U.S.C. § 4601(b). Thus, it could just as easily be that "parties on all sides understand [the Institute not] to be an independent forum," but one that serves the United States' interests. Ultimately, whether the Institute is independent from the federal government is a matter of law for the Court to decide. For the reasons explained in Defendants' brief, the Institute is properly under the Executive Branch of the United States government | Defendants' rhetorical characterization in the first two sentences of the sworn declaration of a USIP employee describing his participation in Track 2 dialogues as "opinions" and "speculative" does not create a genuine disputed issue of material fact. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). Defendants do not dispute any of the statements in the factual declaration. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | (nongovernmental) dialogues, seminars, and roundtables"). | | |
| 68 | When USIP participates in conflict resolution initiatives, it draws on developed regional expertise to give it credibility among the parties to the dialogue. At times, USIP's independence facilitates access to certain communities, networks, or stakeholders that federal officers with formal governmental or diplomatic status channels lack. USIP's experience, expertise and long-term relationships of trust with key stakeholders help it craft effective agendas, convene the right participants, and facilitate discussion that can generate new insights to inform congressional and Executive branch policy evaluation and development efforts. For example:<br><br>•    In connection with a border dispute between Kyrgyzstan and Tajikistan, USIP sponsored a Track 2 dialogue between an influential group of former advisors and policy experts to discuss initiatives to | Defendants dispute the repeated assertions in the paragraphs above about the Institute's "independence" and "independent status." These assertions are not factual but are, instead, opinions and speculation. The Institute, for example, "may use 'United States' or 'U.S.' or any other reference to the United States Government or Nation" in the course of its work, 22 U.S.C. § 4603(e)(2), and it was created "to serve the people and the Government[,]" 22 U.S.C. § 4601(b). It could just as easily be that the Institute's status as a United States agency influenced the description of events in the paragraphs above, despite the assertions about the Institute's "independence." Whether the Institute sits outside the Executive Branch is a matter of law for the Court to decide. For the reasons explained in Defendants' brief, the Institute is properly under the Executive Branch of the United States government | Defendants do not actually dispute any of the first three sentences of SUMF 68, let alone cite to record evidence sufficient to create a genuine disputed issue of material fact. With respect to the first two sentences of their Response, Defendants' rhetorical characterization of the sworn declarations of USIP employees describing specialized training, expertise, and access to communities and conflicting groups that formal executive branch officials lack, as "opinions" and "speculation" does not create a "genuine" issue of material fact under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 56(c); LCR 7.1(h). Moreover, Defendants do not dispute any of the statements in any of the factual declarations.<br><br>Defendants' response after the first two sentences is unsupported speculation and legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | reconcile the divided and hostile communities. The governments' representatives focused on difficult border demarcation and access issues. The USIP-related dialogue worked on initiatives that more broadly addressed how to reestablish normal interaction between communities on both sides of the border. The dialogue thawed relations and paved the way for a historic official border demarcation deal. Ex. 10, Decl. of Gavin Helf ¶ 5.<br><br>• In 2003 and 2004, USIP members in Iraq worked outside the official U.S. security bubble, known as the Green Zone, to facilitate reconciliation between Iraqi tribes. USIP's independence allowed it to conduct objective research, which it shared with US officials to consider as part of their policy and programming activities, to engage parties in training and problem-solving dialogue, and to engage with diverse stakeholders necessary for preventing and resolving conflict. | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | Ex. 1, Decl. of Paul Hughes ¶¶ 17-18, 23.<br><br>• In the Middle East, USIP has leveraged its independent status and its peacebuilding tools, including its Peace Game strategic exercise tool, and its deep networks of trusted local contacts, to bring together trusted Palestinian, Israeli, and regional interlocutors to work together on problem- solving related to post-conflict recovery and stabilization in Gaza. The work yielded valuable information, which USIP shared at the request of U.S. government representatives. Ex. 11, Decl. of Samantha Robinson ¶ 6.<br><br>• Ahead of local elections in the autonomous Bangsamoro region in the southern Philippines in October 2023, USIP was asked by both the Philippines government and the Moro Islamic Liberation Front—not by the US government—to discreetly facilitate ceasefire efforts between the two sides. USIP's independent status made it possible to engage both | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
|  | sides directly as a third party and create joint Quick Response Teams of Philippine Army, National Police, and Moro Islamic Liberation Front former combatants. The ceasefire did not break down and the peace process remained intact. Ex. 8, Decl. of Brian Harding ¶ 6.<br><br>•    USIP facilitated informal conversations with the Azerbaijani and Armenian Embassies about what would be needed by both sides to reach a peace agreement ending their 30-plus year war. The talks created the opportunity for both parties to float ideas and talk about concerns they did not want to provide in official channels. These conversations helped narrow the gap between their war aims and concerns, leading to a peace agreement in mid- March 2025. Ex. 9, Decl. of Catherine Dale ¶ 6. |  |  |
| 69 | The United States Government Manual (the "Manual") is a publication of the Office of the Federal Register of the National Archives and Records | Disputed in part: The publishers of the Manual are the Office of the Federal Register, the National Archives and Records Administration, and the U.S. Government Publishing Office (not the | Defendants do not actually dispute, and therefore concede, the substance of SUMF 69, including that the Manual is |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
|  | Administration ("NARA") within the Executive branch. It is published by the Government Publishing Office, an office within the Legislative branch. *See* Ex. 22, Manual, "About Us" (*available at* https://www.usgovernmentmanual.gov/About). *See also* Ex. 23, U.S. Government Manual (published Jan 13, 2025) (*available at* https://www.govinfo.gov/app/collection/govman/2025/03executive_United%20States%20Government%20Manual) (excerpted). The Manual is the "official handbook of the Federal Government." *See id.* | Office of Legal Counsel, the Attorney General, or the President). U.S. Government Manual, About Us, available at: https://usgovernmentmanual.gov/About. Those publishers merely "review and edit the submissions to produce organized and concise descriptions of Federal agency programs and activities" and nothing in the Manual describes it as a legal document or a definitive expression of the Executive's view on the law. *Id.* As the Manual makes clear, its contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations[.]" Id. The information in the Manual about the Institute was presumably submitted by the Institute's former leadership as the Institute's page on the Manual is outdated, reflecting Moose as the board's chairperson and Lisa Grande as its president, among other prior office holders. U.S. Government Manual, U.S. Institute of Peace, available at: https://perma.cc/DX7M-4XNH. The remainder of this statement is undisputed. | the "official handbook of the Federal Government." |
| 70 | The current organizational chart of the federal government in the Government Manual does not | Disputed in part: The publishers of the Manual are the Office of the Federal Register, the National Archives and | Defendants do not actually dispute, and therefore concede, the substance of SUMF 70, including that the Manual is |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | include USIP at all. *See* Ex. 23. Under the Executive Branch, the Manual identifies 15 agencies and 58 "independent establishments and government corporations." *Id.* USIP is not listed among them. *See id.* The Manual also classifies entities within the Executive Branch (in addition to the White House) as "Executive Branch: Departments" and "Executive Branch: Independent Agencies and Government Corporations." Again, USIP is not listed. *Id.* | Records Administration, and the U.S. Government Publishing Office (not the Office of Legal Counsel, the Attorney General, or the President). U.S. Government Manual, About Us, available at: https://usgovernmentmanual.gov/About. Those publishers merely "review and edit the submissions to produce organized and concise descriptions of Federal agency programs and activities" and nothing in the Manual describes it as a legal document or a definitive expression of the Executive's view on the law. Id. As the Manual makes clear, its contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations[.]" Id. The information in the Manual about the Institute was presumably submitted by the Institute's former leadership as the Institute's page on the Manual is outdated, reflecting Moose as the board's chairperson and Lisa Grande as its president, among other prior office holders. U.S. Government Manual, U.S. Institute of Peace, available at: https://perma.cc/DX7M-4XNH. The remainder of this statement is undisputed. | responsible for identifying and classifying whether an entity is part of the federal government and whether it is part of a particular branch of the federal government, and that the Manual does not list USIP among any of the "agencies" or "independent establishments and government corporations" within the Executive Branch, or that that the Manual does not classify USIP within the Executive Branch. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 71 | The Manual lists USIP as a "Quasi-Official Agency," along with Legal Services Corporation ("LSC"), Smithsonian Institution, State Justice Institute, and the United States Holocaust Memorial Museum. *Id.* | Disputed in part: The publishers of the Manual are the Office of the Federal Register, the National Archives and Records Administration, and the U.S. Government Publishing Office (not the Office of Legal Counsel, the Attorney General, or the President). U.S. Government Manual, About Us, available at: https://usgovernmentmanual.gov/About. Those publishers merely "review and edit the submissions to produce organized and concise descriptions of Federal agency programs and activities" and nothing in the Manual describes it as a legal document or a definitive expression of the Executive's view on the law. Id. As the Manual makes clear, its contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations[.]" Id. The information in the Manual about the Institute was presumably submitted by the Institute's former leadership as the Institute's page on the Manual is outdated, reflecting Moose as the board's chairperson and Lisa Grande as its president, among other prior office holders. U.S. Government Manual, U.S. | Defendants do not actually dispute, and therefore concede, the substance of SUMF 71. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | | Institute of Peace, available at: https://perma.cc/DX7M-4XNH. The remainder of this statement is undisputed. | |
| 72 | Since USIP first appeared in the Manual in 1988, the Manual has listed it as a "Quasi-Official Agency." Ex. 24, U.S. Office of the Federal Register, NARA, *United States Government Manual*, 1988/89, p. 767 (Rev. June 1, 1988) (excerpted). NARA defines "quasi-official agencies" as "***organizations that are not agencies under the definition of 5 U.S.C. 105*** but that are required by statute to publish certain information on their programs and activities in the Federal Register." *Id.* at 747 (emphasis added); *see also* Ex. 25, U.S. Office of the Federal Register, NARA, *United States Government Manual*, 2009- 2010, p. 543 (Washington: GPO, 2010) (excerpted) (defining quasi-official agencies as ***organizations that are not executive agencies under the definition in 5 U.S.C. 105***…") (emphasis added). | Disputed in part: The publishers of the Manual are the Office of the Federal Register, the National Archives and Records Administration, and the U.S. Government Publishing Office (not the Office of Legal Counsel, the Attorney General, or the President). U.S. Government Manual, About Us, available at: https://usgovernmentmanual.gov/About. Those publishers merely "review and edit the submissions to produce organized and concise descriptions of Federal agency programs and activities" and nothing in the Manual describes it as a legal document or a definitive expression of the Executive's view on the law. Id. As the Manual makes clear, its contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations[.]" Id. The information in the Manual about the Institute was presumably submitted by the Institute's former leadership as the Institute's page on the Manual is outdated, reflecting Moose as the board's chairperson and Lisa Grande as its | Defendants do not actually dispute, and therefore concede, the substance of SUMF 72, including that the Manual classifies USIP as ***not*** an "agency" or an "executive agency" under the definition of 5 U.S.C. 105. *See also* Pl. Opp. Ex. 4 (1987 letter from OPM counsel stating that "the Institute is not an executive agency either under the definition in 5 U.S.C. 105 or in 5 U.S.C. Chapter 51."). |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | | president, among other prior office holders. U.S. Government Manual, U.S. Institute of Peace, available at: https://perma.cc/DX7M-4XNH. The remainder of this statement is undisputed | |
| 73 | Actions taken to date since March 14, 2025 that individually and collectively impair the Institute's ability to function and fulfill its mission as provided by Congress include:<br><br>a.      Removal of eleven duly-appointed Board members;<br><br>b.      Purported installation by the ex officio Board members of acting presidents (Ken Jackson and Nate Cavanaugh) who were committed not to the mission and activities of the Institute but to halting and eliminating all USIP staff and programs;<br><br>c.      Firing all but a handful of the Institute's over 400 employees, many with extensive experience and expertise in all areas of the field of peaceful conflict resolution; | While Defendants do not dispute that, factually, some of the events above occurred, as explained throughout these filings, Defendants dispute that Plaintiffs have authority to speak to the Institute's alleged harms rather than their own individual harms.  Assuming without conceding that Plaintiffs do have such authority, whether the Institute would be irreparably harmed by the events above is not a fact but, instead, is Plaintiffs' legal conclusion.  To the contrary, the United States government is harmed by not being able to promote the President's policy of dramatically reducing the size of the Federal Government, while increasing its accountability to the American people, among other purposes outlined in Executive Order 14,217. | Defendants do not dispute, and therefore concede, SUMF 73, including that Defendants purported to remove the eleven (b)(4) Board members and undertook to transfer all of USIP's assets to GSA, including "the USIP-owned headquarters building," and that the actions "individually and collectively impair the Institute's ability to function and fulfill its mission as provided by Congress." Defendants' response is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | d.      Shutting down the Institute's administrative and communication systems, leaving employees without adequate resources to understand their employment status, access to personnel records, or health insurance coverage status;<br><br>e.      Undertaking to close USIP's field offices and cancel contracts concerning ongoing projects;<br><br>f.      Instructing and taking actions to transfer of all of USIP's assets to GSA, including (i) the USIP-owned headquarters building, valued at $500 million, for zero dollars, and (ii) all USIP property in the building;<br><br>g.      Undertaking to lease USIP's headquarters building to the Department of Labor;<br><br>h.      Terminating all of the USIP Endowment's officers, appointing a new president of the Endowment, and instructing him to transfer all of the Endowment's assets, including | | |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | bank accounts holding at least $25 million, to USIP.<br><br>Ex. 7, Moose Decl. ¶ 13. | | |
| 74 | The eleven USIP Board members who were duly appointed under 22 U.S.C. § 4605(b)(4) and who were purportedly removed by President Trump via email on March 14, 2025 were not notified about and were not given the opportunity to participate in board actions or decisionmaking concerning: whether to terminate Ambassador Moose and replace him with Defendant Jackson as Acting President; whether to respond to Defendant Jackson's firing of employees on March 21; whether to participate in board action that concerned whether it was in USIP's best interests to terminate virtually all of USIP's employees on March 28, including the Institute's CFO and COO; whether to replace Defendant Jackson with Defendant Cavanaugh as Acting President; whether to transfer the USIP headquarters building and all property in it to GSA for zero | Defendants do not dispute that the former Board members did not participate in the actions above; however, as explained throughout these filings, Defendants dispute that they would have had any authority to do so. The President of the United States removed the former Board members pursuant to his Article II removal powers. *See* Am. Compl. (ECF No. 12) ¶¶ 50, 52, ECF No. 12; Letters, ECF No. 21-1. | Defendants do not dispute, and therefore concede, SUMF 74. Defendants' response is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | dollars; and whether to replace all officers of the USIP Endowment and transfer all Endowment assets to USIP. *Id.* ¶ 14. | | |
| 75 | USIP's employees, individually and collectively, have deep institutional knowledge and expertise in a broad range of conflict resolution-related programs, activities, curriculum development, research, and training in which they have been engaged, both in the U.S. and around the world. *See id.* ¶ 15; Exs. 8-11, 27-36 (declarations of former USIP Staff). | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 75. Defendants' statement about materiality is legal argument. |
| 76 | Recent events have adversely impacted the commitment of USIP's donor base to the Institute. Many donors who donated funds for the construction and/or maintenance of the USIP headquarters building have contacted Ambassador Moose concerning the status of their contributions. These donors include individuals who have pledged millions of dollars to support the Institute. Ex. 7, Moose Decl. ¶ 16. | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 76. Defendants' statement about materiality is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| 77 | The USIP building is unique—its design intended to reflect and functionally aid the Institute's mission. *See* https://www.safdiearchitects.com/projects/united-states-institute-of-peace; *At U.S. Institute of Peace, building's provocative design doesn't entirely succeed*, Washington Post (Feb. 24, 2012) (*available at* https://www.washingtonpost.com/realestate/at-us-institute-of-peace-buildings-provocative-design-doesnt-entirely-succeed/2012/02/21/gIQADOxOYR_story.html). | This statement is immaterial to the pending cross-motions. | Defendants do not dispute, and therefore concede, SUMF 77. Defendants' statement about materiality is legal argument. |
| 78 | USIP's ability to fulfill its mission—including to engage in conflict resolution training, to be a trusted information resource for congressional and governmental bodies, and to convene and facilitate dialogue between groups in conflict—depends on its long-earned reputation as a nonpartisan, expert organization. It further depends on it not being part of, and being recognized as independent of | Disputed: as explained throughout these filings, Defendants dispute that the Institute is independent of the Executive Branch, and contrary to Plaintiffs' position, the United States government is harmed by not being able to promote the President's policy of dramatically reducing the size of the Federal Government, while increasing its accountability to the American people, among other purposes outlined in Executive Order 14,217. | Defendants do not dispute, and therefore concede, the first sentence of SUMF 78: that "USIP's ability to fulfill its mission—including to engage in conflict resolution training, to be a trusted information resource for congressional and governmental bodies, and to convene and facilitate dialogue between groups in conflict—depends on its long-earned reputation as a nonpartisan, expert organization." Nor do Defendants' dispute, and therefore concede, that their |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | the Executive Branch. Defendants' actions toward USIP since issuance of EO 14217 will adversely affect the Institute's standing and reputation as an "honest, good faith broker" in the field. Ex. 7, Moose Decl. ¶ 17. | | actions toward USIP since issuance of EO 14217 "will adversely affect the Institute's standing and reputation as an 'honest, good faith broker' in the field." Defendants' response is legal argument. |
| 79 | Actions to cancel contracts and grants, and deletion or alteration of information from USIP's computer system will cause severe and irreparable harm to USIP and its staff. Amended Compl. Ex. H, Decl. of Shira Lowinger ¶ 5 (ECF No. 12-8). | Disputed: the United States government is harmed by not being able to promote the President's policy of dramatically reducing the size of the Federal Government, while increasing its accountability to the American people, among other purposes outlined in Executive Order 14,217. | Defendants do not dispute, and therefore concede, SUMF 79. Defendants' response is legal argument. |
| 80 | USIP has contracts domestically with a variety of vendors. These include a facilities and engineering contract for building maintenance, catering contracts, and building security contracts. USIP is legally bound by these contracts, and the sudden cancellation of such contracts without cause will result in USIP breaching the contracts. Outside of the potential legal repercussions, USIP's relationship with these vendors will be harmed, | Disputed: the United States government is harmed by not being able to promote the President's policy of dramatically reducing the size of the Federal Government, while increasing its accountability to the American people, among other purposes outlined in Executive Order 14,217. | Defendants do not dispute, and therefore concede, SUMF 80. Defendants' response is legal argument. |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | rendering it difficult to reestablish such contracts in the future in order to restart work. Further, canceling the facilities and engineering contract will result in the loss of key personnel with pertinent and specialized knowledge about the USIP headquarters building and systems, rendering it difficult to safely maintain the building and restart work in the future. *Id.* ¶¶ 6- 7. | | |
| 81 | USIP's offices contain USIP assets, federal assets, and computers with sensitive information about USIP workers and operations. If such leases are terminated without guidance for how to shut down an office, especially in insecure areas, all of this information is at risk of being taken and used to harm USIP and its staff. *Id.* ¶¶ 8-9. | Disputed. This statement is purely speculative, and the cited materials fail to support the statement. | Defendants do not dispute, and therefore concede, SUMF 81. Defendants' response is legal argument. |
| 82 | USIP's computer systems contain sensitive, important, and legally necessary information. For example, this includes employee information, vendor information, all of USIP's research and educational materials, including those developed and used | This first sentence in this statement is immaterial to the pending cross-motions. The second sentence is disputed because it is purely speculative, and the cited materials fail to support the statement. | Defendants do not dispute, and therefore concede, the facts set out in the first two sentences of this SUMF 82. While Defendants appear to characterize the third sentence (not the second sentence) as "speculative," the statement is within a sworn declaration by a USIP employee |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | in USIP's online global academy, documentation for intellectual property purposes, and documentation to support Institutional Review Board standards for research using human subjects. Any release of employee information, which includes names, personal information, and banking information, would harm and even endanger USIP's staff, especially those located abroad in insecure areas, who may be targeted by terrorist groups or other bad actors. *Id.* ¶ 11. | | with personal knowledge of the information maintained in USIP's computer systems.<br><br>Defendants' statement about materiality is legal argument. |
| 83 | Further, the deletion of current and historical employee and vendor information would render it extremely difficult to restart work in the future, as all records are kept electronically. *Id.* ¶ 12. | Disputed. This statement is purely speculative, and the cited materials fail to support the statement. | Defendants' characterization of SUMF 83 does not create a genuine issue of material fact. The statement is within a sworn declaration by a USIP employee with personal knowledge of the information maintained in USIP's computer systems. |
| 84 | USIP's computer system contains decades of research and educational materials which are USIP's intellectual property and documentation supporting this claim of intellectual property, such as | This first two sentences in this statement are immaterial to the pending cross-motions. The third sentence is disputed because it is purely speculative, and the cited materials fail to support the statement. | Defendants do not dispute, and therefore concede, the facts set out in the first two sentences of SUMF 84. While Defendants appear to characterize the third sentence (not the second sentence) as "speculative," the statement is within |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | author agreements. This includes but is not limited to educational courses and other materials used in USIP's online global academy, and student lists. The loss of this intellectual property documentation would render USIP unable to use, distribute, or sell these texts in the future, which would harm USIP's ability to carry out part of its core mission, which is education and training. *Id.* ¶ 13. | | the sworn declaration of a USIP employee with personal knowledge of the information maintained in USIP's computer systems. |
| 85 | USIP maintains documentation regarding its operations and use of funds in its computer systems, which are required for audits of the organization. Loss of access to these materials, which are only kept electronically, would prevent USIP from fulfilling its tax reporting obligations as well as its statutorily mandated requirement to report its annual audits to Congress and the President of the United States. *Id.* ¶ 15. | This first sentence in this statement is immaterial to the pending cross-motions. The second sentence is disputed because it is purely speculative, and the cited materials fail to support the statement. | Defendants do not dispute, and therefore concede, the facts set out in the first two sentences of SUMF 85. While Defendants characterize the second sentence as "speculative," the statement is in a sworn declaration of a USIP employee with personal knowledge of the information maintained electronically by USIP. |
| 86 | The sudden termination of USIP employees and contractor staff risks significant harm to both USIP and | This first two sentences in this statement are immaterial to the pending cross-motions. The third sentence is disputed | Defendants do not dispute, and therefore concede, the facts set out in the first three sentences of SUMF 86. While |

| ¶ | Plaintiff's Statement of Undisputed Material Facts ("SUMF") | Defendants' Responses to SUMF | Plaintiff's Reply to Defendants' Responses to SUMF |
|---|---|---|---|
| | these personnel. Many of these personnel work in insecure areas of the world. Some are third-country nationals who were asked to leave their country of residence and relocate to a new country to perform work for USIP. If their contracts are canceled without proper notice or assistance, these staff could be stranded and trapped in that insecure country or kicked out or prosecuted for lack of proper work documentation. Id. ¶ 16. | because it is purely speculative, and the cited materials fail to support the statement. | Defendants appear to characterize the fourth sentence (not the third sentence) as "speculative," the statement is within a sworn declaration by a USIP employee with personal knowledge of the circumstances faced by USIP employees and contractors around the world. |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL FACTS

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| 1 | In 1984, Congress established the Institute through the Department of Defense Authorization Act of 1985, Act. Pub. L. No. 98-525, tit. XVII, § 1701, 98 Stat. 2492, 2649 (1984). See 22 U.S.C. §§ 4601–4611. | Undisputed |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| 2 | In the Institute's organic statute, Congress made several findings that prompted the Institute's creation, including the following:<br><br>(1)    a living institution embodying the heritage, ideals, and concerns of the American people for peace would be a significant response to the deep public need for the Nation to develop fully a range of effective options, in addition to armed capacity, that can leash international violence and manage international conflict;<br><br>. . .<br><br>(4)  there is a national need to examine the disciplines in the social, behavioral, and physical sciences and the arts and humanities with regard to the history, nature, elements, and future of peace processes, and to bring together and develop new and tested techniques to promote peaceful economic, political, social, and cultural relations in the world; . . .<br><br>(6)    there is a need for Federal leadership to expand and support the existing international peace and conflict resolution efforts of the Nation and to develop new comprehensive peace education and training programs, basic and applied research projects, and programs providing peace information;<br><br>(7)    the Commission on Proposals for the National Academy of Peace and Conflict Resolution, created by the | Disputed in part. Undisputed as to the quotations of some of the statements in § 4601 of the USIP Act. Disputed as to Defendants' characterization of those statements as the only or exclusive findings "that prompted the Institute's creation." *See* Pl. SUMF ¶¶ 4-5. Moreover, DSOF 2 omits the following subsections of § 4601(a):<br><br>• (2) people throughout the world are fearful of nuclear war, are divided by war and threats of war, are experiencing social and cultural hostilities from rapid international change and real and perceived conflicts over interests, and are diverted from peace by the lack of problem-solving skills for dealing with such conflicts;<br><br>• (3) many potentially destructive conflicts among nations and peoples have been resolved constructively and with cost efficiency at the international, national, and community levels through proper use of such techniques as negotiation, conciliation, mediation, and arbitration;<br><br>• (5) existing institutions providing programs in international affairs, diplomacy, conflict resolution, and peace studies are essential to further development of techniques to promote peaceful resolution of international conflict, and the peacemaking activities of people in such institutions, government, private enterprise, and voluntary associations can be strengthened by a national institution devoted to international peace research, education and training, and information services; |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | Education Amendments of 1978, recommended establishing an academy as a highly desirable investment to further the Nation's interest in promoting international peace;<br><br>(8)    an institute strengthening and symbolizing the fruitful relation between the world of learning and the world of public affairs, would be the most efficient and immediate means for the Nation to enlarge its capacity to promote the peaceful resolution of international conflicts; and<br><br>(9)    the establishment of such an institute is an appropriate investment by the people of this Nation to advance the history, science, art, and practice of international peace and the resolution of conflicts among nations without the use of violence.<br><br>22 U.S.C. § 4601(a). | |
| 3 | Congress created the Institute as an establishment of the United States. 22 U.S.C. § 4603(a). | Disputed in part. Undisputed that "Congress created the Institute." Disputed that the Institute is an "establishment of the United States," which is legal argument. |
| 4 | As to its form, the Institute is organized as a nonprofit corporation organized prohibited [sic] from having any owner other than its incorporator, the United States. *Id.* § 4603(b) ("The Institute is an independent nonprofit | Disputed. The statutory citation does not support the text of the statement, which is legal argument. The statute does not state or support the conclusion that the "United States" is the "owner" of USIP. |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | corporation . . . The Institute does not have the power to issue any shares of stock[.]"). | |
| 5 | Authority to run the Institute is vested in its board of directors. *Id.* § 4605(a). | Undisputed that the statute states: "The powers of the Institute shall be vested in a Board of Directors unless otherwise specified in this chapter." § 4605(a)(1). |
| 6 | The Institute's board consists of three voting ex officio members—the Secretary of State, the Secretary of Defense, and the president of the National Defense University—and twelve appointed members. *Id.* § 4605(b). | Disputed in part. Undisputed that there are 15 voting members of the Board as provided in § 4605(b). The president of the Institute is also a nonvoting ex officio member of the Board. § 4606(a). |
| 7 | The appointed members are "appointed by the President, by and with the advice and consent of the Senate." *Id.* § 4605(b)(4). | Undisputed |
| 8 | No more than eight total members can be from one political party, but by virtue of the ex officio members, the Institute's board is designed to be dominated by the political party of the President. *Id.* § 4605(c). | Disputed in part. Undisputed as to the first clause ("No more than eight total members can be from one political party"). Disputed as to the rest of the sentence. Defendants' statement of partisan "domination" is argument that is not supported by the cited provision, § 4605(c), or by other provisions governing the terms of Board service (§ 4605(e)) and the removal of (b)(4) Board members (§ 4605(f)). Nor is it supported by the legislative history of the statute, which shows that Congress expressly stated that the partisan-balance requirement was intended to *prevent* partisanship from influencing the work of the Institute, *see* Pl. SUMF ¶¶ 4-5.<br><br>The USIP biennial reports submitted to Congress and the President in the years after the Institute's creation underscore |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | Congress's purposeful efforts to avoid partisan influence and ensure the Institute's independence. In the 1987 report, the Institute noted:<br><br>Congress created the Institute as "an independent nonprofit corporation." Making that independence a reality has been one of the most important accomplishments of the Institute's first year of activity. It is a central legacy of the Institute's first Board of Directors.<br><br>Congress vested the Institute with a measure of intellectual freedom comparable in many respects to that enjoyed by institutions of higher education and, having protected the Institute as an educational entity divorced from the political pressures of the day, *wisely provided that the Institute should refrain from policymaking and dispute intervention*.<br><br>Pl. Opp. Ex. 1, USIP 1987 Biennial Report at 1 (emphasis added). The Institute noted the risk to its independence from "the politically ascendant forces of the day," and noted the structural features in the USIP Act designed to prevent that, including "[*b*]*eing an independent establishment of the federal government and not an agency of the Congress or the Executive Branch*." *Id.* at 2 (emphasis added). The Institute stressed that "Congress insisted that the Institute be independent of control by any particular discipline, methodology, belief, cause, region or group." *Id. See also* Pl. Opp. Ex. 2, USIP 1989 |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | Biennial Report at ix (noting that the independence provided in by Congress in the USIP Act "is an important element in building public confidence in the work of the Institute and has been stressed from the first meeting of the Board of Directors"); Pl. Opp. Ex. 3, USIP 1991 Biennial Report at 1 ("The Congress insulated the Institute from political pressures by granting it independent status as a federal institute and nonprofit corporate form with a bipartisan governing Board…"). |
| 9 | The Institute's board has the power to select a president of the Institute. *Id.* § 4606(a). | Undisputed |
| 10 | The president and other officers of the Institute "serve at the pleasure of the Board[,]" meaning they can be removed by the board at any time for any reason. *Id.* | Undisputed as to the first phrase. Disputed as to the phrase: "…meaning they can be removed by the board at any time for any reason," which characterization is legal argument. |
| 11 | The Institute receives congressional appropriations and is prohibited from receiving non-governmental funds except for two highly specific activities—the construction and maintenance of a suitable headquarters and program-related hospitality. *Id.* § 4605(h)(3). | Disputed. The text of DSOF 11 characterizes the statute as concerning two "highly specific activities," and incorrectly refers to § 4605(h)(3). Defendants presumably intended to cite to § 4604(h)(3), which states in full: Notwithstanding any other provision of this chapter, the Institute and the legal entity described in section 4603(c) of this title may not obtain any grant or contract or receive any gift or contribution from any private agency, organization, corporation or other legal entity, institution, or individual, except such Institute or legal entity may accept such a gift or contribution to- |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | (A) purchase, lease for purchase, or otherwise acquire, construct, improve, furnish, or maintain a suitable permanent headquarters, any related facility, or any site or sites for such facilities for the Institute and the legal entity described in section 4603(c) of this title; or<br><br>(B) provide program-related hospitality, including such hospitality connected with the presentation of the Spark M. Matsunaga Medal of Peace.<br><br>In addition, USIP can charge fees from its products, § 4605(i), and charge fees for participation in its directly authorized activities, § 4605(j). |
| 12 | The Institute, including through its president, is authorized to "receive and disburse public moneys, obtain and make grants, enter into contracts, [and] establish and collect fees," among other authorities. *Id.* § 4606(b). | Undisputed that the quoted portion appears in § 4606(b), which states in full: "Subject to the provisions of section 4604(h)(3) of this title, the Board shall authorize the president and any other officials or employees it designates to receive and disburse public moneys, obtain and make grants, enter into contracts, establish and collect fees, and undertake all other activities necessary for the efficient and proper functioning of the Institute." |
| 13 | The Institute's organic statute includes various other provisions, including:<br>a.      it is authorized to use the name and seal of the United States, id. § 4603;<br>b.      it is subject to the Freedom of Information Act, id. § 4607(i); | Disputed in part. Undisputed that the statutory cites are from the USIP Act. Except for DSOF 13(b), the text purporting to describe every one of the cited provisions is incorrect in whole or part, and/or incomplete.<br><br>• DSOF 13(a) is incorrect that the Institute can use the seal of the United States. Rather it can only use the terms "United |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | c.      it is required to publish notices of board meetings in the Federal Register, id. § 4605(h)(3); <br> d.      it can obtain services and support from GSA, id. § 4604(o); <br> e.      the compensation of its board members, president, and employees are set by federal statute, id. §§ 4605(i), 4606(a), 4606(c); <br> f.      reimbursement of its board's travel expenses is controlled by federal statute, id. § 4605(j); <br> g.      the Federal Tort Claims Act applies to it and its officers and employees, id. § 4606(f)(1); <br> h.      its employees receive federal government benefits (e.g., workers compensation, civil service retirement, federal life insurance, and federal health insurance), id. § 4606(f)(1); and <br> i.      upon liquidation, its asserts revert to the United States Treasury, id. § 4610. | States," "U.S.," or "any other reference to the United States Government or Nation" in the *Institute's* title or "corporate seal, emblem, badge, or other mark of recognition," and "in any fiscal year ***only*** if there is an authorization of appropriations for the Institute for such fiscal year provided by law." § 4603(e)(2) (emphasis added). <br><br> • Contrary to DSOF 13(c), under the USIP Act the Institute is not required to publish notices of board meetings in the Federal Register. Rather, Federal Register notice is sufficient but not necessary: Board meetings "shall be preceded by reasonable public notice. Notice in the Federal Register shall be deemed to be reasonable public notice for purposes of the preceding sentence." § 4605(h)(3). <br><br> • DSOF 13(d) omits that the Institute may obtain services from the GSA but only "on a reimbursable basis." § 4604(o). <br><br> • Contrary to DSOF 13(e), compensation of the USIP president is set "at rates determined by the Board," and the USIP president sets compensation for employees. A 1987 letter to the Director of Personnel in the Executive Office of the President from counsel for OPM confirms this, stating: "***the Institute is not an executive agency either under the definition in 5 U.S.C. 105 or in 5 U.S.C. Chapter 51.*** This is further apparent from certain provision within the enabling legislation indicating that the Institute was not to be considered an agency…. ***Section 4606(c) gives the*** |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | *president of the Institute specific authority to appoint, fix the compensation of, and remove employees without regard to Civil Service rules, and subject instead to the Institute's bylaws and the general policy established by its Board*….We interpret [4606(c)] as indicating that federal classification and pay rates serve as a guide and that the president should compensate the employees at an equivalent pay rate…. When read in conjunction with subsection (c), subsection (f) merely reiterates the premise that when fixing the rate of compensation, the president is to be guided by the provisions of Title 5 which relate to pay rates and classification…. Accordingly*, we conclude from our review that the Institute is not under the purview of OPM because it would not be directly subject to the classification and pay rules under the General Schedule but rather would be merely guided by these provisions*…[t]here would be no requirement to get OPM approval for compensation a step above the minimum. *The Institute therefore is free to designate its supergrade position under its separate authority*." <br><br> *See* Pl. Opp. Ex. 4, Letter from OPM Assoc. Gen. Counsel to Dir. of Personnel, Executive Office of the President (Oct. 2, 1987) (emphasis added). <br><br> • Contrary to DSOF 13(f), the federal expense allowance is a guide as to travel expenses. *See* Pl. Opp. Ex. 4 (1987 letter from OPM counsel quoted above). |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | • DSOF 13(g) incorrectly states that the Institute is itself covered by the Federal Tort Claims Act. By its plain terms, the cited provision applies only to USIP officers and employees. |
| | | Both DSOF 13(g) and (h) selectively characterize § 4606(f)(1), which states in full: |
| | | Federal employment status only for stated purposes: (1) ***Officers and employees of the Institute shall not be considered officers and employees of the Federal Government except*** for purposes of the provisions of title 28, which relate to Federal tort claims liability, and the provisions of title 5, which relate to compensation and benefits, including the following provisions: chapter 51 (relating to classification); subchapters I and III of chapter 53 (relating to pay rates); subchapter I of chapter 81 (relating to compensation for work injuries); chapter 83 (relating to civil service retirement); chapter 87 (relating to life insurance); and chapter 89 (relating to health insurance). The Institute shall make contributions at the same rates applicable to agencies of the Federal Government under the provisions of title 5 referred to in this section. (emphasis added). |
| | | *See also* Pl. Opp. Ex. 4 (1987 letter from OPM counsel) (section 4606(f) "enumerates the only circumstances under |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | which the employees of the Institute will be considered to be federal employees"). In addition, in a 1988 memo to the USIP General Counsel, the Executive Office of the President confirmed that Section 108 of P.L. 100-238, which concerned "benefits coverage for employees of a non-Government entity," barred "retirement, health benefits, and life insurance coverage" for all new USIP staff appointed on or after October 1, 1988. Pl. Opp. Ex. 5, Memo from Dir. of Personnel, Exec. Office of the President to USIP Gen. Counsel (Mar. 11, 1988). *See also* PAUF 13 and Pl. Opp. Ex. 9 ("USIP  provides private, commercially sourced retirement plans and health and life insurance to its eligible employees."). <br><br> • DSOF 13(i) is incomplete: § 4610 refers to "dissolution or final liquidation of the Institute." And Federal law requires a tax-exempt nonprofit corporation that is dissolving to distribute its remaining assets only to another tax-exempt organization as described in section 501(c)(3), or to the federal government, or to a state or local government. 26 C.F.R. § 1.501(c)(3)–1(4). <br><br> Plaintiffs contend that by firing virtually all USIP employees working in its Washington DC office, giving away all of its property and assets, and canceling its contracts, Defendants have and are attempting an effective dissolution of USIP pursuant to EO 14217's directive for a "termination" of USIP. *See* SUMF 35, 55-58, 73, 79-80. |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | Defendants have presented no facts that they have complied with their contractual and other obligations under D.C. Nonprofit Corporations Law. |
| 14 | On February 19, 2025, President Trump signed Executive Order 14,217. Exec. Order 14,217, 90 Fed. Reg. 10577 (Feb. 19, 2025). | Undisputed |
| 15 | That Order described the policy of President Trump's administration "to dramatically reduce the size of the Federal Government, while increasing its accountability to the American people." *Id.* § 1. | Undisputed that the quoted phrase appears in Exec. Order 14,217. The Order requires that any actions taken pursuant to the Order be done "consistent with applicable law." E.O. 14,217 § 3(b). |
| 16 | To fulfill that objective, the President directed that "[t]he non-statutory components and functions of [certain identified] governmental entities shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law[.]" *Id.* § 2(a). Among the identified entities was the Institute. *Id.* § 2(a)(iv). | Undisputed that the quoted phrase appears in Exec. Order 14,217. The Order requires that any actions taken pursuant to the Order be done "consistent with applicable law." E.O. 14,217 § 3(b). |
| 17 | To carry out that Executive Order, on or about March 14, 2025, the White House Presidential Personnel Office notified the Institute's board members, including the former board members who are Plaintiffs in this suit, informing them that they had been terminated from their positions with the Institute. Am. Compl. (ECF No. 12) ¶ 50; Pls. Stmt. of Undisp. Facts (ECF No. 19-1, "Pls. Stmt.") ¶ 38; Termination Notices, ECF No. 24-1. | Disputed in part. Undisputed that on March 14, 2025, Defendant Trent Morse emailed USIP's (b)(4) Board members and purported to remove them from their positions by email without reference to or compliance with the provision for removal of (b)(4) Board members in § 4605(f). Plaintiffs dispute that this was done "consistent with applicable law" as required by E.O. |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | | 14,217 and dispute the characterization of Plaintiff Board members as "former board members." |
| 18 | Thereafter, the remaining Institute board members (i.e., the ex officio members) issued a resolution of the board removing the then-acting Institute president, George E. Moose, and designating a new president, Kenneth Jackson. Am. Compl. (ECF No. 12) ¶¶ 52–53; Pls. Stmt. (ECF No. 19-1) ¶ 43; Bd. Resolution, ECF No. 12-6. | Disputed in part. Undisputed that on March 14, 2025, the three *ex officio* Board members purported to issue a resolution removing Ambassador Moose as acting president and appointing Defendant Jackson. Plaintiffs dispute the characterization of the *ex officio* members as the "remaining" Board members and of Defendant Jackson as the "new President" because the purported removal of the (b)(4) Board members was ultra vires and void ab initio, and thus the purported removal of Ambassador Moose and purported appointment of Defendant Jackson were likewise invalid. |
| 19 | By resolution effective March 25, 2025, the Institute's board issued another resolution, removing Jackson as the Institute's president and appointing Nate Cavanaugh as the Institute's acting president. Bd. Resolution, ECF No. 15-2. | Disputed in part. Undisputed that on or about March 25, 2025, two of the *ex officio* Board members purported to issue a resolution replacing Defendant Jackson with Defendant Cavanaugh as acting president of USIP. Plaintiffs dispute the characterization of two *ex officio* members as the "Institute's board," the characterization of Defendant Jackson as the "Institute's president" because the purported removal of the (b)(4) Board members was ultra vires and void ab initio, and thus the purported removal of Ambassador Moose, purported appointment of Defendant Jackson, and purported replacement of Jackson with Cavanaugh were likewise invalid. |
| 20 | The Institute is listed in the U.S. Government Manual as a federal government entity. U.S. Government Manual, U.S. | Disputed. The Institute is categorized in the U.S. Government Manual as a "Quasi-Official Agency," which is defined by the Manual as ***not*** an "agency" or an "executive agency" under the |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
|  | Institute of Peace, available at: https://perma.cc/DX7M-4XNH. | definition of 5 U.S.C. 105. *See* Pl. SUMF ¶ 72. *See also* Pl. Opp. Ex. 4 (1987 letter from OPM counsel stating that "the Institute is not an executive agency either under the definition in 5 U.S.C. 105 or in 5 U.S.C. Chapter 51."). |
| 21 | The Manual makes no attempt to identify which of the three branches houses the Institute. *Id.* | Disputed. The Manual describes itself as "the official handbook of the Federal Government." It classifies and categorizes entities within each of the three branches, and it has concluded that USIP does not fall within "agency activities and programs of the executive, judicial, and legislative branches of Government," but rather fits separately within "***activities and programs of quasi-official agencies***…" *See https://www.usgovernmentmanual.gov/.* *See also https://www.usgovernmentmanual.gov/About* ("This current edition of the Government Manual provides **comprehensive** information on the legislative, judicial, and executive branches. **It also includes information on quasi-official agencies**.") (emphasis added). |
| 22 | The U.S. Government Manual does not purport to be a legal document or a definitive expression of the Executive's view on the law. *See* U.S. Government Manual, About Us, available at: https://usgovernmentmanual.gov/About. | Disputed. Defendants' characterization of the Manual and what it "purports" to be is not supported by the citation. The Manual website states that "For over eight decades, *The United States Government Manual* has been the 'official handbook' of the Federal Government" and that the Manual "is a special edition of the *Federal Register*, issued under the authority of the Administrative Committee of the Federal Register (See 1 CFR part 9.)." *See https://www.usgovernmentmanual.gov/; https://www.usgovernmentmanual.gov/About* |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| 23 | The publishers of the Manual—the Office of the Federal Register, the National Archives and Records Administration, and the U.S. Government Publishing Office (not the Office of Legal Counsel, the Attorney General, or the President)—merely "review and edit the submissions to produce organized and concise descriptions of Federal agency programs and activities." *Id.* | Disputed because the selective quotation and characterization are incomplete. The quoted phrase omits: "Agency liaison officers are consulted to verify the currency of the *Government Manual's* content at least once a year. The OFR exercises final editorial control over all editions of the *Government Manual*. To keep pace with changes in Government programs and leadership, OFR editors may amend the current edition throughout the year, using information verified by them or by the liaison officers." *See also* Pl. Opp. Ex. 4 (1987 letter from OPM counsel stating that "the Institute is not an executive agency either under the definition in 5 U.S.C. 105 or in 5 U.S.C. Chapter 51."). |
| 24 | As the Manual makes clear, its contents reflect information "submitted to [the Office of the Federal Register] by Federal agencies and organizations[.]" *Id.* | *See* Response to Fact No. 23. |
| 25 | The information in the Manual about the Institute was submitted by the Institute's former leadership given the Institute's page on the Manual is outdated, reflecting Moose as the board's chairperson and Lisa Grande as its president, among other prior office holders. U.S. Government Manual, U.S. Institute of Peace, available at: https://perma.cc/DX7M-4XNH. | Undisputed that the cited information about USIP's leadership does not correctly identify USIP's current duly appointed, lawful leadership as it existed prior to the actions challenged as ultra vires and unlawful in this case. The statement is immaterial to the pending cross-motions. |
| 26 | USA.gov is a General Services Administration website that serves as "the official guide to government information and services." USA.gov, https://www.usa.gov/. | Undisputed that the quoted phrase appears at the bottom of the cited webpage. |
| 27 | The Institute is listed on USA.gov under its index of "government departments and agencies." USA.gov, USIP, | Undisputed that USIP is listed on USA.gov's directory of "U.S. federal government agencies, departments, corporations, instrumentalities, and government-sponsored enterprises." |

| ¶ | Defendants' Statement of Facts (DSOF) | Plaintiff's Responses to DSOF |
|---|---|---|
| | https://www.usa.gov/agencies/united-states-institute-of-peace. | |
| 28 | When President Reagan signed the Institute's organic statute, he issued a signing statement noting that the act "neither intended to, nor has the effect of, restricting the President's constitutional power to remove" the Institute's board members. Statement on Signing the Department of Defense Authorization Act, 1985 (Oct. 19, 1984), available at: https://www.reaganlibrary.gov/archives/speech/statement-signing-department-defense-authorization-act-1985. | Disputed in part. Undisputed that the quoted language was part of President Reagan's signing statement. Plaintiffs dispute that the statement is material because the USIP Act that Congress passed and President Reagan signed into law, by its explicit statutory text, restricted the President's authority to remove (b)(4) Board members. *See* 22 U.S.C. § 4605(f). |

**PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANTS' CROSS-MOTION**

| ¶ | Plaintiffs' Additional Undisputed Material Facts (PAUF) |
|---|---|
| PAUF 1 | In August 1987, the Institute issued its first Biennial Report to the Congress and the President. Pl. Opp. Ex. 1. The Report stated:<br><br>Congress created the Institute as "an independent nonprofit corporation." Making that independence a reality has been one of the most important accomplishments of the Institute's first year of activity. It is a central legacy of the Institute's first Board of Directors.<br><br>Congress vested the Institute with a measure of intellectual freedom comparable in many respects to that enjoyed by institutions of higher education and, having protected the Institute as an educational entity divorced from the |

| ¶ | Plaintiffs' Additional Undisputed Material Facts (PAUF) |
|---|---|
| | political pressures of the day, wisely provided that the Institute should refrain from policymaking and dispute intervention.<br><br>*Id.* at 1. The Report noted the risk to USIP's independence from "the politically ascendant forces of the day," and noted the structural features in the USIP Act designed to prevent that, including "[*b]eing an independent establishment of the federal government and not an agency of the Congress or the Executive Branch*." *Id.* at 2 (emphasis added). The Institute stated that "Congress insisted that the Institute be independent of control by any particular discipline, methodology, belief, cause, region or group." *Id.* |
| PAUF 2 | In December 1989, the Institute issued its second Biennial Report to the Congress and the President. Pl. Opp. Ex. 2. The Report stated that the independence provided by Congress in the USIP Act "is an important element in building public confidence in the work of the Institute and has been stressed from the first meeting of the Board of Directors." *Id.*  at ix. It further stated that the Institute "must not interfere with the conduct of foreign relations, which is the responsibility of Government agencies such as the Department of State," and that "the Institute can decide to undertake projects at the request or with the support of Governmental agencies, *if the projects are in accord with Institute priorities*." *Id.* (emphasis added). |
| PAUF 3 | In January 1992, the Institute issued its 1991 Biennial Report to the Congress and the President. Pl. Opp. Ex. 3. The Report stated: "The Congress insulated the Institute from political pressures by granting it independent status as a federal institute and nonprofit corporate form with a bipartisan governing Board…" *Id.* at 1. It also stated: "As intended by its enabling legislation, the institute functions as a nonideological educational resource for policymakers and officials and *does not intervene directly in formulation or conduct of US foreign policy*." *Id.* (emphasis added). |
| PAUF 4 | In 1987, the Associate General Counsel of OPM wrote a letter to the Director of Personnel in the Executive Office of the President concluding that federal compensation schedules did not apply to USIP. Among the statements in the letter were:<br><br>• "[T]he Institute is not an executive agency either under the definition in 5 U.S.C. 105 or in 5 U.S.C. Chapter 51. This is further apparent from certain provisions within the enabling legislation indicating that the Institute was not to be considered an agency." |

| ¶ | Plaintiffs' Additional Undisputed Material Facts (PAUF) |
|---|---|
|  | <ul><li>"Section 4606(c) gives the president of the Institute specific authority to appoint, fix the compensation of, and remove employees without regard to Civil Service rules, and subject instead to the Institute's bylaws and the general policy established by its Board."</li><li>"We interpret [4606(c)] as indicating that federal classification and pay rates serve as a guide and that the president should compensate the employees at an equivalent pay rate…. When read in conjunction with subsection (c), subsection (f) merely reiterates the premise that when fixing the rate of compensation, the president is to be guided by the provisions of Title 5 which relate to pay rates and classification."</li><li>"Employees of the Institute are not covered under the definition of "employee" in chapter 51 as chapter 51 coverage is limited to employees of an 'agency.'"\*\*</li><li>"Accordingly*,* we conclude from our review that the Institute is not under the purview of OPM because it would not be directly subject to the classification and pay rules under the General Schedule but rather would be merely guided by these provisions…[t]here would be no requirement to get OPM approval for compensation a step above the minimum. The Institute therefore is free to designate its supergrade position under its separate authority."</li></ul><br>*See* Pl. Opp. Ex. 4, Letter from OPM Assoc. Gen. Counsel to Dir. of Personnel, Executive Office of the President (Oct. 2, 1987).<br><br>\*\*Chapter 51 of Title 5 defines "agency," for purposes of that chapter, to mean "mean an Executive agency, the Library of Congress, the Botanic Garden, the Government Printing Office, the Office of the Architect of the Capitol, and the government of the District of Columbia. *See* 5 U.S.C. § 5102(a)(1). This definition is intended to include "corporations wholly owned by the United States." *See* Historical and Revision Notes to § 5102, available at https://uscode.house.gov/view.xhtml?path=/prelim@title5/part3/subpartD/chapter51&edition=prelim. |
| PAUF 5 | In a 1988 memo to the USIP General Counsel, the Executive Office of the President confirmed that all new USIP staff appointed on or after October 1, 1988 were barred from obtaining "retirement, health benefits, and life insurance coverage" because of Section 108 of P.L. 100-238, which prohibited "benefits coverage ***for employees of a non-*** |

| ¶ | Plaintiffs' Additional Undisputed Material Facts (PAUF) |
|---|---|
| | *Government entity*." Pl. Opp. Ex. 5, Memo from Dir. of Personnel, Exec. Office of the President to USIP Gen. Counsel (Mar. 11, 1988) (emphasis added). |
| PAUF 6 | In furtherance of Defendants' goal of shutting down all USIP programmatic activity, one of the DOGE representatives told USIP staff to assume that beginning in early April 2025, all USIP overseas programs would wind down. Pl. Opp. Ex. 8, Supplemental Decl. of George E. Moose ¶ 4 (Apr. 18, 2025). |
| PAUF 7 | The vast majority of the staff based in USIP's headquarters in Washington, DC were terminated on March 28, 2025, including all employees working on the Gandhi-King Global Academy program mandated by Congress. Three Vice Presidents whose programs included overseas operations received termination notices on April 12, 2025, with April 18, 2025 being their last employment date. As of Friday, April 18, 2025, only four headquarters employees (not counting DOGE representatives) have not received a termination notice – two of these individuals work in the IT department, one in human resources, and one in finance. All four individuals expect their last day at USIP to be no later than May 31, 2025. *Id.* ¶ 5. |
| PAUF 8 | As of April 18, 2025, all but four USIP employees and personal services contractors (PSCs) working overseas have received termination notices. None of the termination dates is later than May 31, 2025. The four individuals who have not received termination notices are not performing any work other than closing down USIP's operations and understand that they will be terminated in the near future. *Id.* ¶ 6. |
| PAUF 9 | The purported Acting President of USIP, Defendant Cavanaugh, does not appear to carry out any tasks for USIP. *Id.* ¶ 7. |
| PAUF 10 | On April 12, 2025, Defendant Cavanaugh, the purported USIP Acting President, stated in an email to the Vera Institute, a private nonprofit organization that works on incarceration issues (https://www.vera.org/), that he was "a member of the DOGE team working at the General Services Administration." Cavanaugh wrote that he wanted to discuss "getting a DOGE team assigned to the organization." Pl. Opp. Ex. 6, Cavanaugh email to Vera Inst. (Apr. 12, 2025). |
| PAUF 11 | On an April 15, 2025 call between Defendant Cavanaugh, another DOGE representative, and representatives of the Vera Institute, Defendant Cavanaugh was asked to explain "the basis for having a DOGE team assigned to an independent non-profit like Vera?" Cavanaugh replied: "There are other independent non-profits like USIP where we have a DOGE team |

| ¶ | Plaintiffs' Additional Undisputed Material Facts (PAUF) |
|---|---|
| | assigned. Our basis for asking to assign to the Institute is because we want to assign a DOGE team to every institute or agency that has congressional monies appropriated to it." Pl. Opp. Ex. 7, Vera Institute/DOGE Teams Call Notes (Apr. 15, 2025); *see also* Washington Post, *DOGE sought to assign a team to an independent nonprofit group* (Apr. 16, 2025), available at https://www.washingtonpost.com/national-security/2025/04/15/doge-musk-nonprofit-vera-institute/. |
| PAUF 12 | USIP uses a commercial payroll broker to disburse its biweekly payroll to employees. The funds are disbursed from a commercial bank account held by USIP. Pl. Opp. Ex. 9, Decl. of USIP CFO Allison Blotzer ¶ 3 (Apr. 16, 2025). |
| PAUF 13 | USIP provides private, commercially sourced retirement plans and health and life insurance to its eligible employees. *Id.* ¶ 4. |

Dated: April 18, 2025

Respectfully submitted,

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb (D.C. Bar No. 455751)
J. Benjamin Jernigan (D.C. Bar No. 9000865)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, D.C. 20037
Tel: (202) 778-1800

William J. Murphy (D.C. Bar No. 350371)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 332-0444

*Counsel for Plaintiffs*