UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE FOR PEACE, et al., <br><br>         Plaintiffs, <br><br>     v. <br><br> KENNETH JACKSON, <br> Assistant to the Administrator for <br> Management and Resources for USAID, et al., <br><br>         Defendants. | Civil Action No. 25-0804 (BAH) |

## MOTION TO STAY PENDING APPEAL

Defendants respectfully move to stay the Court's Order of May 19, 2025 (ECF No. 39, "Judgment"), until Defendants' appeal of the same is decided. Government counsel discussed this motion with counsel for Plaintiffs, and Plaintiffs oppose this motion. The grounds for this motion are as follows.

## INTRODUCTION

The Judgment rests on the resolution of novel legal questions that should be subjected to appellate review before the President is constrained in his removal of officers of an executive entity and required to unwind actions previously undertaken to reform the U.S. Institute of Peace (the "Institute"). Specifically, the Court concluded that, although the Institute is plainly part of the federal government, it also somehow exists as an independent entity outside of the three branches created by the Constitution. That is, the Court concluded that the Institute is part of the federal government, but "exercises largely nongovernmental power" and, while being a government entity, the Institute "is an external partner to, rather than an arm of, the Executive branch." Mem. Op. (ECF No. 40) at 76. But the fact that the Institute might have some "functional independence"

does not negate its "constitutional status;" "Congress may afford the officers of [certain] entities a measure of independence from other executive actors, but they remain Executive-Branch officers subject to presidential removal." *Kuretski v. Commissioner*, 755 F.3d 929, 943-44 (D.C. Cir. 2014).

The Court's conclusion that the Institute, a creation of statute, is also not part of any branch of the federal government is an unprecedented holding and one that appears to contradict the analytical underpinnings of several binding and persuasive precedents. *See, e.g.*, *Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 202–03 (1928)[1] ("Putting aside for the moment the question whether the duties devolved upon these members are vested by the Organic Act in the Governor General, it is clear that they are not legislative in character, and still more clear that they are not judicial. The fact that they do not fall within the authority of either of these two constitutes logical ground for concluding that they do fall within that of the remaining one of the three among which the powers of government are divided."); *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935) ("The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question."); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 872 (5th Cir. 2022) ("the Constitution vests federal power only in the three branches of the federal government"); *Commonwealth Edison Co. v. Nuclear Regul. Comm'n*, 830 F.2d 610, 619 (7th Cir. 1987) ("The scheme of the Constitution

---

[1]     In its Memorandum Opinion, the Court notes that "the great legal minds Justices Holmes and Brandeis both dissented from *Springer*." Mem. Op. (ECF No. 40) at 57 n.21. While true, the great legal minds of then-Chief Justice William H. Taft and subsequently Chief Justice Harlan F. Stone were among the six justices in the majority. Respectfully, the weight of a centuries-old holding of the Supreme Court does not turn on which luminaries of the then-legal profession may have disagreed with the Court's judgment. Since 1928, no panel of any appellate court has called into question the analytical framework of *Springer* that statutory creations of the federal government are organized into one of three branches.

envisions only three branches of government. Because the [commission] is not within the judicial branch, it must be a legislative or executive agency."); *Ameron, Inc. v. Army Corps of Eng'rs*, 787 F.2d 875, 896–97 (3d Cir. 1986) (Becker, J., concurring in part) ("I am certain [ ] that if some agency powers cannot fit within a government of three branches, or if certain legislation permitting one branch to affect the affairs of another cannot be countenanced within the three-branch framework, then those agency powers and that legislation must fall. The judiciary cannot invent a fourth branch to house them. Otherwise, we risk the very tyranny the Founding Fathers sought so ingeniously to avoid."); *Kuretski*, 755 F.3d at 943 ("We have explained that Tax Court judges do not exercise the 'judicial power of the United States' pursuant to Article III. We have also explained that Congress's establishment of the Tax Court as an Article I legislative court did not transfer the Tax Court to the Legislative Branch. It follows that the Tax Court exercises its authority as part of the Executive Branch.").

In assessing whether a federal entity is part of the Executive Branch for purposes of constitutional separation-of-powers analysis, this Court looks to the powers that the entity exercises. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012); *Kuretski*, 755 F.3d at 939-45. Here, the government is likely to succeed in arguing on appeal that this Court erred in concluding that the Institute's functions were not executive in nature. Among other holdings, the Court erroneously concluded: (1) that the Institute does not engage in executive functions in "meeting and conversing with foreign groups . . . without any indication that USIP is doing so on behalf of President" despite conducting those meetings as part of the federal government, Mem. Op. (ECF No. 40) at 74; (2) while the Institute is part of the government it "cannot be considered to conduct foreign diplomacy" because it does not formally "represent[ ] the U.S. government in its interactions abroad," *id.* at 72; and (3) the Institute's

"educational, scholarly, and research activities are *not* executive in nature," despite other Executive Branch components engaging in nearly the same types of activities (e.g., the Department of Education), *id.* at 76.  The Court itself acknowledged that these functions may "seem" to render the Institute executive in nature and overlap with executive functions, but it reasoned that looking like an Executive Branch component is insufficient.  *Id.*  The district court erred in deeming these functions to be superficially executive only.  To the contrary, the Institute exercises core executive functions.  Government actors "meeting and conversing with foreign groups" as part of their official duties, advance foreign relations on behalf of the President who is "the sole organ of the federal government in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936).  Similarly, government actors engaging in and publishing research and making grants of direct government appropriations are plainly executive functions— e.g., those are core functions of the Department of Education.  *See* 20 U.S.C. §§ 3401, 3402.  The Institute thus clearly possesses powers "generally associated in modern times with executive agencies." *Intercollegiate Broad. Sys.*, 684 F.3d at 1342.

Moreover, the government is likely to succeed on appeal in challenging this Court's holding that the Institute's Board cannot be removed by the President when the Institute exercises no quasi-legislative or quasi-judicial authorities.  Mem. Op. (ECF No. 40) at 76–89.  This holding appears to run contrary to recent Supreme Court precedents that have cabined the *Humphrey's Executor* exception in favor of the general rule that the authority of the President to appoint includes the authority to remove.  Indeed, these recent authorities have described that exception as applying only to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power.  *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 217 (2020).

Ultimately, the government respectfully believes the Judgment was entered in error, and to ensure compliance with Federal Rule of Appellate Procedure 8(a) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal."), Defendants respectfully move the Court to stay its Judgment pending an appeal.  In so doing, Defendants do not seek to stay that portion of the Judgment that preserves the status quo in this action—i.e., directives for the government to maintain and not dispose of the Institute's headquarters building and its personal property and to maintain funds from the Institute's endowment in the Institute's control.  A stay that incorporates these requirements will preserve the existing status quo while permitting appellate review of the Judgment.

## DISCUSSION

"[T]he factors regulating the issuance of a stay are . . . (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Here, these factors weigh in favor of a stay.

*First*, Defendants have a strong likelihood of success on the merits.  As discussed in the Government's prior briefing and above, the Institute is part of the federal government, a proposition with which the Court agrees.  As such, because it is a statutory creation of the federal government and constitutes part of the government, it must fall into one of the government's three branches—the Constitution does not allow for the political branches to create governmental entities unanswerable to the electorate or the Judiciary.  U.S. Const. art. I, II, III.  No court has ever held to the contrary.  *See, e.g.*, *VHS Acquisition Subsidiary No. 7 v. Nat'l Lab. Rels. Bd.*, Civ. A. No. 24-2577 (TNM), 2024 WL 5056358, at *7 (D.D.C. Dec. 10, 2024), *appeal pending*, No. 25-5021 (D.C. Cir.) (collecting cases; citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535

U.S. 743, 773 (2002) (Breyer, J., dissenting) ("Although Members of this Court have referred to agencies as a 'fourth branch' of Government, the agencies, even 'independent' agencies, are more appropriately considered to be part of the Executive Branch.")); *Nat'l Horsemen's*, 53 F.4th at 872 ("the Constitution vests federal power only in the three branches of the federal government"); *Commonwealth Edison*, 830 F.2d at 619 ("The scheme of the Constitution envisions only three branches of government. Because the [commission] is not within the judicial branch, it must be a legislative or executive agency."); *Ameron*, 787 F.2d at 896–97 (Becker, J., concurring in part) ("I am certain [ ] that if some agency powers cannot fit within a government of three branches, or if certain legislation permitting one branch to affect the affairs of another cannot be countenanced within the three-branch framework, then those agency powers and that legislation must fall. The judiciary cannot invent a fourth branch to house them. Otherwise, we risk the very tyranny the Founding Fathers sought so ingeniously to avoid."). And here the Institute's leadership is appointed by the President and subject to removal by the President, making it clear that Congress did not seek to break new constitutional ground by creating a free-floating statutory entity. Instead, it created a typical Executive Branch component, subject to Presidential oversight, with some independence from other agencies. *See generally Collins v. Yellen*, 594 U.S. 220, 249 (2021) ("the term 'independent' does not necessarily connote independence from Presidential control").

Additionally, as noted above, the Institute possesses powers "generally associated in modern times with executive agencies." *Intercollegiate Broad. Sys.*, 684 F.3d at 1342. That is, the Institute exercises executive power and performs executive functions. Government actors (i.e., those employed by a federal government component) undertaking peace negotiations and facilitating alternatives to war through informal channels is plainly an exercise of executive authority. That the Institute is independent from formal mechanisms of government power and

influence (i.e., the Departments of Defense and State) and instead performs these actions under the supervision of cabinet members as ex officio board members, does not change the executive nature of those functions. Because the Institute and its officers and employees are tasked with executive powers (promoting peace and alternatives to war, including by distributing directly appropriated funds to private entities) and perform executive functions (traveling to foreign countries and attempting to negotiate peace), the Institute is part of the Executive Branch and exercises core executive powers. As such, under any understanding of the Constitution and *Humphrey's Executor*, 295 U.S. at 629, the Institute's Board is removable at the President's will.

Moreover, the summary-judgment order issuing equitable relief that restored removed officers to their former positions exceeds the Court's authority. "[T]hese remedies have no historical basis and put the courts on a collision course with the President over his exercise of core executive power." *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (Rao, J. dissenting); *see also Bessent v. Dellinger*, 145 S. Ct. 515, 516-518 (2025) (Gorsuch, J., dissenting) (voting to stay district court's reinstatement of removed Special Counsel on the ground that the court exceeded its remedial authority); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *14-*15 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (same). The government respectfully submits that in ordering such relief, the Court's order violates Article II, lacks clear statutory authorization, exceeds federal courts' equitable powers, creates serious practical problems, and thus represents an abuse of discretion.

*Second*, the parties' competing harms and balance of equities and public interest favor a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge in cases involving the government). Absent a stay, the Court's Judgment would require the Executive Branch to undo months of work to further the President's electoral mandate to right-

size the federal government, including by reducing certain Cold-War-era creations to their statutory minimums. *See* Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 19, 2025). Unwinding those efforts before the Court's Judgment is tested in the crucible of an appellate court, would disrupt the existing status quo and require the government to expend taxpayer funds before this case reaches true finality—funds the government would have no prospect of recovering were an appellate court to reverse the Judgment. A stay of the Judgment will prevent these harms. Additionally, by continuing the government's obligations to maintain and not dispose of the Institute's headquarters building and its personal property and to maintain funds from the Institute's endowment in the Institute's control, a stay of the Judgment will prevent Plaintiffs from experiencing any irreparable harm. At bottom, a stay along these lines will protect the government from harms, prevent Plaintiffs from experiencing any irreparable harms, and preserve the status quo while the parties present their positions to an appellate tribunal.

*    *    *

## CONCLUSION

For these reasons, the Court should grant a stay of its Judgment pending resolution of Defendants' appeal. A proposed order is enclosed herewith.

Additionally, in the event the Court denies this motion to stay, Defendants respectfully request that the Court enter a two-business-day administrative stay to allow Defendants to seek a stay from the D.C. Circuit.

Dated: May 21, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Brian P. Hudak_____
     BRIAN P. HUDAK
     Chief, Civil Division
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2549

*Attorneys for the United States of America*