UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INSTITUTE FOR PEACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH JACKSON, *in his official capacity*, *et al.*, <br><br> Defendants. | Civil Action No. 25-cv-804 (BAH) <br><br> **Judge Beryl A. Howell** |

**ORDER**

Two days after this Court's order granting summary judgment to the United States Institute of Peace ("USIP" or "the Institute") and its Board members, Order, ECF No. 39, defendants President Donald J. Trump, various DOGE administrators, and the new purported presidents of USIP filed a motion to stay that judgment pending appeal.  *See* Defs.' Mot. to Stay ("Defs.' Mot."), ECF No. 42.  Plaintiffs oppose a stay.  *See* Pls.' Opp'n to Defs.' Mot. to Stay ("Pls.' Opp'n"), ECF No. 45.  This Court declared that President Trump's termination of USIP Board members violated the statutory removal protections in 22 U.S.C. § 4605(f), and because those protections posed no constitutional problem, the terminations were null and void.  *See* Order at 1.  This Court also declared null and void actions taken as a result of those improper removals, including the removal and replacement of USIP President Ambassador Moose, as well as the transfer of property and other actions taken by those illegitimately installed replacements.  *Id.* at 2-3.  This Court then ordered that plaintiff Board members and Ambassador Moose remain in their leadership positions for USIP and may not be treated as having been removed, among

1

other concomitant relief. *Id.* at 3.  For the reasons explained below, defendants' motion to stay this Court's Order is **DENIED**.

Whether a stay is appropriate depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the traditional standard are the most critical," *id.*, and the showing of likelihood of success must be "substantial," *Citizens for Resp. & Ethics in Washington* ("*CREW*") *v. Fed. Election Comm'n*, 904 F.3d 1014, 1018 (D.C. Cir. 2018).

For all of the reasons explained in this Court's Memorandum Opinion, defendants have not made the requisite showing that they are likely to succeed on the merits.  *See* Mem. Op., ECF No. 40; *United States Inst. of Peace v. Jackson*, -- F. Supp. 3d --, 2025 WL 1428641 (D.D.C. May 19, 2025).  President Trump removed the USIP Board members without complying with the statutory requirements in 22 U.S.C. § 4605(f).  *See USIP*, 2025 WL 1428641, at *7.  Defendants did not argue that the President met those requirements but rather challenged the constitutionality of the statutory removal restrictions, arguing that USIP is part of the Executive branch and its Board members are subject to at-will presidential removal under Article II of the Constitution. *See id.* at *12.  As the Court explained, however, while USIP may be considered part of the federal government, USIP does not exercise executive power and thus is not part of the Executive branch, so the President does not have absolute constitutional removal authority over USIP Board members but must comply with the statute in exercising his removal power.  *See id.* at 14-34.  Further, even if USIP *were* part of the Executive branch, Congress's restrictions on the

President's exercise of constitutional removal authority in 22 U.S.C. § 4605(f) would be permissible under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and its progeny, given USIP's Board's multimember structure and *de minimis*, if any, exercise of executive power. *See USIP*, 2025 WL 1428641, at *34-39. Thus, whether USIP is or is not part of the Executive branch, the President must comply with the various mechanisms at his disposal, as provided in the statute, 22 U.S.C. § 4605(f), to remove members of USIP's Board.

Contrary to defendants' suggestion, the Supreme Court's recent stay in *Trump v. Wilcox* has no bearing here. *See Trump v. Wilcox* ("*Wilcox* Stay Order"), No. 24A966, -- S. Ct. --, 2025 WL1464804 (May 22, 2025); *see* Defs.' Notice of Supp'l Auth, ECF No. 44; Pls.' Opp'n at 3. The Supreme Court there opined that the National Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB") "exercise considerable executive power" and thus invoked concerns about the President's Article II removal power. *Wilcox* Stay Order at *1. As explained in the Memorandum Opinion, USIP exercises considerably *less* executive power than such agencies. *See USIP*, 2025 WL 1428641, at *36. USIP is rather a "uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States,"—the kind the Supreme Court explicitly noted are not "implicate[d]" by its stay decision. *Wilcox* Stay Order at *1; *Lebron v. Nat'l R. R. Passenger Corp.*, 513 U.S. 374, 386-87 (in considering the quasi-private yet governmental character of Amtrak, "plac[ing] [it] within its proper context in the long history of corporations created and participated in by the United States for the achievement of governmental objectives," the "first" of which "was the Bank of the United States"); *USIP*, 2025 WL 1428641, at *20-22 (analogizing USIP to Amtrak when analyzing its hybrid characteristics).

Defendants insist that the Court erred in concluding that USIP could be part of the government while not falling within one of the three branches. *See* Defs.' Mot. at 5-6. Defendants' cited authorities do not, however, hold that every entity must fall squarely within one of the three branches, and as the Court has previously pointed out, other entities also fall outside of this tripartite structure. *See USIP*, 2025 WL 1428641, at *24-26.[1] Refraining from classifying USIP as squarely within a particular branch does not make it "unanswerable to the electorate or the Judiciary," as defendants contend. Defs.' Mot. at 5. To the contrary, the Institute is highly responsive to both Congress and the Executive branch through numerous oversight mechanisms (including mandatory biennial reporting to both branches), control of appropriations on which the organization is largely dependent, the President's ability to appoint all voting Board members (including two that are part of his Cabinet), and the President's broad—though not limitless—removal authority. *See USIP*, 2025 WL 1428641, at *38.[2]

Moreover, defendants' argument that USIP exercises "core executive powers" because the Institute "promot[es] peace and alternatives to war, including by distributing directly appropriated funds to private entities" and "travel[s] to foreign countries and attempt[s] to

---

[1] This Court's Memorandum Opinion addressed explicitly many of the cases cited by defendants in their Stay Motion. *See USIP*, 2025 WL 1428641, at *24-26; Defs.' Mot. at 5-6. Those not previously explicitly addressed likewise do not clearly hold that every governmental entity must fall within one of the three branches, nor are any of them binding on this Court. *See* Defs.' Mot. at 5-6; *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 24-cv-2577 (TNM), 2024 WL 5056358, at *7 (D.D.C. 2024) (explaining that regulatory agencies are generally considered part of the executive branch, even when performing adjudicatory functions); *Commonwealth Edison Co. v. U.S. Nuclear Regul. Comm'n*, 830 F.2d 610, 619 (7th Cir. 1987) (using process-of-elimination reasoning to hold only that the Nuclear Regulatory Commission is an "executive or legislative agency" for a particular statutory purpose); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 896-97 (3d Cir. 1986) (Becker, J., concurring in part) (opining, only in a concurrence in a case that was subsequently reheard after the Supreme Court's opinion in *Bowser v. Synar*, 478 U.S. 714 (1986), that agency powers must "fit within a government of three branches"); *see also* Pls.' Opp'n at 5-6 (distinguishing these cases).

[2] *See also* 22 U.S.C. § 4611 (biennial reporting to Congress and the President); *id.* § 4607(g)-(h) (requiring an annual audit that is reported to Congress); *id.* § 4606(d)(2) (allowing the Secretary of State, Secretary of Defense, and the CIA Director to assign their own officers to the Institute for certain projects); *id.* § 4605(b) (providing for presidential appointment of Board members); *id.* § 4605(f)(2)-(3) (describing how the President may remove Board members without cause upon recommendation of eight other voting Board members or upon recommendation of a majority of certain House and Senate committees).

4

negotiate peace" is both legally and factually wrong. Defs.' Mot. at 6-7. Those activities are not, as defendants suppose, inherently executive just because they involve foreign relations. As the Court explained, NGOs regularly engage in similar activities. *See USIP*, 2025 WL 1428641, at *33. What matters is whether the entity is doing so under the auspices of the President of the United States. *See id.* USIP neither represents nor acts on behalf of the Executive branch, and instead operates abroad as an independent think tank. *See id.* at *30-32. Further, defendants misrepresent the activities USIP undertakes abroad. USIP is a scholarly, research-oriented, educational institution or "think tank." While its focus on peace leads USIP to deliver workshops, conduct field research, and facilitate discussions on the subject of resolving conflicts, the Institute in no way occupies the same role as the Executive branch in formally negotiating foreign agreements. *See id.* at *29-32. Defendants' overly generic view of Executive power is perhaps convenient, one conducive to aggrandizing presidential authority, but this Court must take a more scrutinizing approach to the nature of executive power under the Constitution and the character of the authority USIP wields. *See Kuretski v. Comm'r of Internal Revenue*, 755 F.3d 929, 941 (D.C. Cir. 2014) (instructing courts, when resolving separation-of-powers disputes, to look not to the nature of a particular branch's power "in 'an enlarged sense'" but rather in the specific sense as meant by the Constitution (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 592 U.S. 272, 280 (1856))).

      Defendants next argue that the Court's issuance of injunctive relief was improper but cite only dissenting opinions in support of that point. *See* Defs.' Mot. at 7; *see also USIP*, 2025 WL 1428641, at *44 n.43 (noting that mandamus relief would be proper if injunctive relief were not). The questions before this Court were indeed "novel," Defs.' Mot. at 1, but novelty is no substitute for failure to demonstrate likelihood of success on the merits.

Indeed, defendants' failure to show likelihood of success is "an arguably fatal flaw for a stay application," *CREW*, 904 F.3d at 1019, but regardless, defendants also fail to satisfy the other factors. Defendants do not describe any cognizable harm they will experience without a stay, let alone an irreparable one. *See* Defs.' Mot. at 7-8 (describing only the harm of "unwinding" Executive branch efforts that were never lawful to take and spending of government funds that have been duly appropriated); *see also USIP*, 2025 WL 1428641, at *38-39 (describing other ways the President may remove USIP Board members or otherwise exert influence over the Institute in a lawful manner). Defendants point to the *Wilcox* Stay Order to suggest that the government faces a "risk of harm from an order allowing a removed officer" to remain. Defs.' Notice of Supp'l Auth. at 1 (quoting *Wilcox* Stay Order at *1). Yet, the Supreme Court specified that the risk of harm was that of allowing a removed officer to "continue exercising the *executive* power." *Id.* (emphasis added). Such a risk is not present in this case because, again, the Institute's Board members do not exercise any meaningful executive power under our Constitution. Plaintiffs and the public, on the other hand, experience harm every day that plaintiffs are not able to carry out their statutory tasks and operate USIP with independence and expertise. *See USIP*, 2025 WL 1428641, at *41-43; *cf. New Motor Vehicle Bd. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, C.J., in chambers) (describing irreparable harm to the government that occurs "any time" it is unable to "effectuat[e] statutes enacted by representatives of its people"). As plaintiffs explain, every day that goes by without the relief this Court ordered, "the job of putting [USIP] back together by rehiring employees and stemming the dissipation of USIP's goodwill and reputation for independence will become that much harder." Pls.' Opp'n at 11.[3]

---

[3] Plaintiffs also point out damage that occurred to the USIP headquarters building during the period where it was under GSA, rather than USIP, control. *See* Pls.' Opp'n, Ex. A, Decl. of Amb. George Moose, USIP president

In the alternative, defendants have requested a "two-business-day administrative stay to allow defendants to seek a stay from the D.C. Circuit." *See* Defs.' Mot. at 9.  Defendants do not provide any separate rationale to warrant such an administrative stay, and none is apparent in light of the equities and public interest just discussed.

Accordingly, it is hereby--

**ORDERED** that defendants' motion to stay the judgment pending appeal, ECF No. 42, is **DENIED**.

**SO ORDERED**.

Date:  May 23, 2025

*This is a final and appealable order.*

_____
**BERYL A. HOWELL**
United States District Judge

---

¶¶ 10-12, ECF No. 45-1 (describing evidence of rats and roaches, leaks, and external damage resulting from the building having been vacant and unmaintained for weeks).  Such damage is relevant to the weighing of the equities in considering the state of USIP's assets during the pendency of appellate litigation.